Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

BILLIE RODRIGUEZ, DANIEL ERWIN,
MICHAEL B. ACKERMAN, KYLE FOREMAN,
DREW SCRUGGS, MARY JANE MCQUEENY,
EMILY THORPE, JENNIFER TRITT and THE
BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF FORD, individually and on
behalf of all others similarly situated,

      Plaintiffs,

vs.

EXXON MOBIL CORPORATION, CHEVRON
USA INC., CHEVRON PHILLIPS CHEMICAL
CORPORATION, DUPONT de NEMOURS, INC.,
CELANESE CORPORATION, DOW INC.,
DOW CHEMICAL COMPANY, DUPONT
CORPORATION, EASTMAN CHEMICAL
COMPANY, LYONDELLBASELL INDUSTRIES
N.V., and AMERICAN CHEMISTRY COUNCIL,

      Defendants,

and

STATE OF KANSAS, *ex rel.*
KRIS W. KOBACH, Attorney General,

      Proposed Defendant-Intervenor.

Case No. 4:24-cv-00803-SRB

**ORAL ARGUMENT REQUESTED**

**[PROPOSED]**
**KANSAS'S MOTION TO DISMISS FORD COUNTY'S CLASS ALLEGATIONS**

COMES NOW, the Defendant-Intervenor State of Kansas, *ex rel*. Kris W. Kobach,

Attorney General (hereafter, "Kansas"), under Federal Rule of Civil Procedure 12(b)(1),

12(b)(3), and 12(b)(6), and respectfully moves the Court for an order dismissing Plaintiff The

Board of County Commissioners of the County of Ford's ("Ford County") class action

allegations for the reasons set forth in this motion and the accompanying supporting

1

suggestions.[1] In addition to its supporting suggestions, Kansas also attaches a proposed order granting its motion.

1.      Plaintiff Ford County, a political subdivision of the State of Kansas, joined a consumer class action lawsuit that alleges eleven Plastics Defendants engaged in a coordinated decades-long campaign to misrepresent the recyclability of plastics materials, which artificially raised public demand for plastics and indirect purchasers' costs. Ford County also alleges the rise in public demand for plastics hypothetically caused a statewide and nationwide public nuisance and increased waste management operations costs for counties, cities, and municipalities. Ford County seeks statewide and nationwide remedies on behalf of itself, the general public, and all States and their political subdivisions. (Doc. 48, at ¶ 161 ("All persons, governmental, and non-governmental entities in the United States and its territories"), at ¶ 162 ("All persons, governmental, and non-governmental entities in the Indirect Purchaser states"), at ¶ 161 ("All counties, cities, and municipalities located within the United States and its territories").)

2.      Ford County's class action allegations fail because it cannot assert *parens patriae* standing for "a national, 50-state solution" "to hold these plastics producers and manufacturers accountable[.]" (Doc. 48, ¶¶ 7-8.) Ford County lacks the inherent *parens patriae* authority of sovereign States to assert claims based on the public health, welfare, and safety of all citizens in general. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982);

---

[1] Kansas's motion is purposefully limited to the political subdivision plaintiff (*i.e.*, Ford County). But to the extent all or some of the political subdivision's dismissed claims would result in an alleged class of individual consumers representing governmental entities (it should not), Kansas would also argue individual consumers cannot usurp the State's sovereignty or the attorney general's authority and also lack standing to bring these claims. *See, e.g.*, 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust claims for the State); K.S.A. 50-162 (attorney general's exclusive authority to bring Kansas Restraint of Trade Act claims for the State and its political subdivisions); K.S.A. 75-702 (attorney general's sole authority to prosecute civil matters for the State); K.S.A. 60-908 (attorney general's exclusive authority to abate statewide nuisances); *see also Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800 (10th Cir. 2011) (recognizing "that in deciding whether a plaintiff qualifies for *parens patriae* standing, it is appropriate to look to state law" (citing *Hous. Auth. of the Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)).

*see also Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015) (Attorneys

General can invoke *parens patriae* doctrine); *Reynolds v. Sims*, 377 U.S. 533, 575 (1964)

(political subdivisions "never were and never have been considered as sovereign entities" thus

they cannot invoke *parens patriae* authority).

3.      Ford County's class action allegations fail because it cannot usurp the attorney

general's authority to bring statewide relief to the State or its political subdivisions. *See Illinois*

*v. Associated Milk Producers, Inc.*, 351 F. Supp. 436, 440 (N.D. Ill. 1972) ("the State through its

Attorney General is the proper and best representative of the political subdivision organized

under the authority of the State" because "[j]ustice and judicial economy is best served by having

the largest governmental unit sue on behalf of all its parts rather than having multiple suits

brought by various political subdivisions within the State"); *Twp. of Lyndhurst v. Priceline.com*

*Inc.*, 657 F.3d 148 (3d Cir. 2011) (political subdivision lacked prudential standing where state

statute authorizes a state officer to bring enforcement action on behalf of the State); 15 U.S.C.

§ 15c (attorney general's sole authority to bring federal antitrust claims for the State); K.S.A. 75-

702(a) (attorney general's duty to represent the State in all courts); K.S.A. 75-703 (attorney

general's authority to prosecute all State contract claims); K.S.A. 60-908 (attorney general's

*exclusive* authority to prosecute statewide public nuisances).

4.      This Court lacks subject matter jurisdiction over Ford County's class allegations,

under Fed. R. Civ. P. 12(b)(1), because Ford County lacks the legal authority and standing to

assert claims on behalf of "all persons" and "all governmental entities."

5.      Ford County has failed to state a claim upon which relief can be granted, under

Fed. R. Civ. P. 12(b)(6), because Ford County lacks the legal authority and standing to assert

claims on behalf of "all persons" and "all governmental entities."

6.      This Court is the improper venue, under Fed. R. Civ. P. 12(b)(3), because no substantial part of the alleged events or omissions giving rise to Ford County's claims occurred in this District.

Pursuant to L.R. 7.0(f), Kansas files supporting suggestions of relevant fact and applicable law in support of this Motion to Dismiss.

THEREFORE, the Defendant-Intervenor State of Kansas, *ex rel*. Kris W. Kobach, Attorney General, respectfully requests its motion be GRANTED and Ford County's class allegations in this action be DISMISSED without prejudice.[2]

Dated: [DATE]                                    Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/ Nicholas C. Smith*
Melanie S. Jack, W.D. Mo. No. KS-001292
  *First Assistant Attorney General*
Nicholas C. Smith, W.D. Mo. No. KS-001290
  *Assistant Attorney General*
Adam T. Steinhilber, Mo. Bar No. 73959
  *Assistant Solicitor General*
**OFFICE OF ATTORNEY GENERAL**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-3751
Fax: (785) 291-3699
Email: Melanie.Jack@ag.ks.gov
        Nicholas.Smith@ag.ks.gov
        Adam.Steinhilber@ag.ks.gov

***Attorneys for State of Kansas***

---

[2] And, to the extent dismissal of Ford County's class allegations would result in an alleged class of individual consumers representing governmental entities, Kansas respectfully requests dismissal of the governmental entities class allegations for the same reasons discussed in this motion and supporting suggestions.

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on this     day of      2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance, and I otherwise caused all parties to be served with the foregoing document as required by Federal Rule of Civil Procedure 24(c).

*/s/ Nicholas C. Smith*
Nicholas C. Smith

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

BILLIE RODRIGUEZ, DANIEL ERWIN,
MICHAEL B. ACKERMAN, KYLE FOREMAN,
DREW SCRUGGS, MARY JANE MCQUEENY,
EMILY THORPE, JENNIFER TRITT and THE
BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF FORD, individually and on
behalf of all others similarly situated,

       Plaintiffs,

vs.

EXXON MOBIL CORPORATION, CHEVRON
USA INC., CHEVRON PHILLIPS CHEMICAL
CORPORATION, DUPONT de NEMOURS, INC.,
CELANESE CORPORATION, DOW INC.,
DOW CHEMICAL COMPANY, DUPONT
CORPORATION, EASTMAN CHEMICAL
COMPANY, LYONDELLBASELL INDUSTRIES
N.V., and AMERICAN CHEMISTRY COUNCIL,

       Defendants,

and

STATE OF KANSAS, *ex rel.*
KRIS W. KOBACH, Attorney General,

       Proposed Defendant-Intervenor.

Case No. 4:24-cv-00803-SRB

**ORAL ARGUMENT REQUESTED**

**[PROPOSED]**
**SUGGESTIONS IN SUPPORT OF**
**KANSAS'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

BACKGROUND ................................................................................................... 1

LEGAL STANDARD FOR MOTION TO DISMISS ...................................... 3

ARGUMENT ......................................................................................................... 4

    I.     FORD COUNTY'S *PARENS PATRIAE* CLAIMS ARE AN ULTRA VIRES ACT THREATENING STATE SOVEREIGNTY........................................................... 5

        a.    Political subdivisions—like Ford County—lack the sovereign power necessary to assert any *parens patriae* claims. ...................................... 7

        b.    Political subdivisions—like Ford County—lack standing to assert any quasi-sovereign interests. ................................................................................ 9

        c.    Political subdivisions—like Ford County—are not the real party in interest to assert *parens patriae* claims................................................................ 10

    II.    FORD COUNTY LACKS STANDING UNDER ARTICLE III TO ASSERT AN INJURY IN FACT TO THE HEALTH, SAFETY, AND WELFARE FOR ALL CITIZENS. ........................................................................................................ 14

        a.    Ford County is not the proper plaintiff to assert an injury in fact for *all* citizens................................................................................................... 15

        b.    Ford County's failure to plead specific facts to support its purported injury warrants dismissal and reinforces that Ford County is not the proper party to represent all governmental entities in the country. ...................................... 16

    III.    FORD COUNTY LACKS PRUDENTIAL STANDING BECAUSE FORD COUNTY IS NOT "BEST SUITED" TO BRING THESE CLAIMS. ................................ 17

        a.    Ford County is not the "best suited" litigant to assert statewide—and nationwide—claims.............................................................................. 17

    IV.    FORD COUNTY "seek[s] a more favorable forum" and lacks any legitimate basis for venue in this district. ................................................................................ 18

    V.    FORD COUNTY'S CLASS ACTION ALLEGATIONS DIRECTLY ATTACK STATES' SOVEREIGNTY. ................................................................................ 20

        a.    Ford County seeks to usurp clear State power. ................................... 21

        b.    Ford County's class allegations have "issues [that] are plain enough from the pleadings" warranting dismissal before the class certification stage. .................. 23

    VI.    DISMISSAL OF FORD COUNTY'S CLASS ALLEGATIONS IS THE MOST APPROPRIATE REMEDY.......................................................................... 25

CONCLUSION .................................................................................................. 26

## **TABLE OF AUTHORITIES**

**Cases**

*Abrams Shell v. Shell Oil Co.*, 343 F.3d 482 (5th Cir. 2003) ....................................... 19

*Alden v. Maine*, 527 U.S. 706 (1999) ................................................................. 20, 21

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982)........ 3, 5, 6, 9, 12

*Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991 (8th Cir. 2012)...................................................................................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 4

*Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188 (D. Kan.) ................ 12

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ...................... 4

*Barber v. Simpson*, No. 95-4210, 1996 WL 477005 (8th Cir. Aug. 23, 1996)............ 20

*Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181 (D. Colo. 2007)........................................................................ 9

*Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*, 718 P.2d 235 (Colo. 1986)..................................................................................... 21

*Bd. of Cty. Comm'rs v. Lewis*, 203 Kan. 188 (1969)................................................. 21

*Bd. of Cty. Comm'rs v. Nielander*, 275 Kan. 257 (2003) ......................................... 22

*Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775 (1991) ................... 20

*Bozic v. United States Dist. Court*, 888 F.3d 1048 (9th Cir. 2018) ............................ 19

*Bredberg v. Long*, 778 F.2d 1285 (8th Cir. 1985) ..................................................... 19

*Brown v. Home Ins. Co.*, 176 F.3d 1102 (8th Cir. 1999)............................................ 10

*Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) .................................. 3, 4, 14

*City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389 (1978) ................................ 7

*Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40 (1982) ...................................... 7

*Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561 (D.S.C. 2019) ................... 24

*Cunningham v. Blythe*, 127 P.2d 489 (1942) ............................................................... 9

*Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080 (8th Cir. 2021) ................... 25

*Dorman v. Emerson Elec. Co.*, 23 F.3d 1354 (8th Cir. 1994) ..................................... 12

*Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468 (8th Cir. 1993) .............. 3

*Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir. 1966).......... 10

*Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004) ........................................ 14

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)................... 17

*Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006)..................................................... 24

*Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004).............................. 15, 16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................. 23

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ...................................... 18

*Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876 (8th Cir. 2015) ...................... 3

*Greater Heights Acad. v. Zelman*, 522 F.3d 678 (6th Cir. 2008) .................................. 21

*Gross v. Town of Cicero*, 619 F.3d 697 (7th Cir. 2010) ........................................... 16

*Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99 (1945) ............................................. 16

*Higdon v. Lincoln Nat. Ins. Co.*, No. CIV.A. ELH-13-2152, 2014 WL 6951290
   (D. Md. Dec. 8, 2014) .......................................................................... 15

*Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183
   (10th Cir. 1991)................................................................................ 9

*Illinois v. Associated Milk Producers, Inc.*, 351 F. Supp. 436 (N.D. Ill. 1972)............... 13, 18, 21

*Kan. City Breweries Co. v. Kansas City*, 153 P. 523 (1915) ...................................... 13

*Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. 1969)..................................................... 12

*Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*,
   136 U.S. 1 (1890).............................................................................. 5

*Louisiana v. Texas*, 176 U.S. 1 (1900)........................................................... 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................... 14, 16

*Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868 (8th Cir. 2015)......................... 6

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ................................................... 5

*Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79 (D. Kan. 2024) ............................... 24

*Missouri v. Nat'l Org. for Women, Inc.*, 467 F. Supp. 289 (W.D. Mo. 1979)....................... 12

*Mo. Coal. for Env't Found. v. Wheeler*, No. 2:19-CV-4215-NKL, 2020 WL
   2331201 (W.D. Mo. May 11, 2020) ............................................................... 7

*Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) ........................... 13

*New Jersey v. New York*, 345 U.S. 369 (1953)................................................ 7, 8, 15

*Off. of the People's Couns. for the D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d
   579 (D.C. 2024)................................................................................ 13

*Pfeiffer v. Int'l Acad. of Biomagnetic Med.*, 521 F. Supp. 1331 (W.D. Mo. 1981) ............... 19

*Puerto Rico v. Cordeco Dev. Corp.*, 534 F. Supp. 612 (D.P.R. 1982) ............................. 13

*Rare Breed Triggers, LLC v. Garland*, 639 F. Supp. 3d 903 (D.N.D. 2022) ........................ 4

*Reynolds v. Sims*, 377 U.S. 533 (1964).......................................................... 7, 9

*Roane Cnty. v. Jacobs Eng'g Grp., Inc.*, 429 F. Supp. 3d 494 (E.D. Tenn. 2019)................... 7

*Safelite Grp., Inc. v. Rothman*, 229 F. Supp. 3d 859 (D. Minn. 2017) ........................... 17

*South Carolina v. North Carolina*, 558 U.S. 256 (2010) ............................................... 11

*St. Charles Tower, Inc. v. Cnty. of Franklin*, No. 4:09CV987-DJS, 2010 WL 743594 (E.D. Mo. Feb. 25, 2010) ......................................................... 7

*Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) ...................................................... 20

*Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267 (4th Cir. 1980) ................................... 24

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ......................................... 3

*Stubbs v. McDonald's Corp.*, 224 F.R.D. 668 (D. Kan. 2004) ...................................... 23

*Suda v. Weiler Corp.*, 250 F.R.D. 437 (D.N.D. 2008) .................................................. 14

*Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212 (8th Cir. 2011) ............................ 20

*Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795 (10th Cir. 2011) ........................... 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...................................... 14, 15, 17

*Twp. of Lyndhurst v. Priceline.com Inc.*, 657 F.3d 148 (3d Cir. 2011) ......................... 18

*United Pac. Ins. Co. v. Montana ex rel. Dep't of Agric.*, 658 F. Supp. 335 (D. Mont. 1986) ............................................................... 10

*Warren Cnty. v. North Carolina*, 528 F. Supp. 276 (E.D.N.C. 1981) ........................... 9

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................ 3, 17

*Wisland v. Admiral Beverage Corp.*, 119 F.3d 733 (8th Cir. 1997) .............................. 20

**Constitutional Provisions**

U.S. Const. art. III., § 2 ....................................................................................... 3

**Statutes**

15 U.S.C. § 15c ................................................................................................. 22

28 U.S.C. § 1391(b) ..................................................................................... 4, 19

K.S.A. 18-129 ................................................................................................. 17

K.S.A. 19-101 ........................................................................................... 22, 24

K.S.A. 19-101a ...................................................................................... 9, 11, 22

K.S.A. 19-101c ............................................................................................... 21

K.S.A. 19-212 ................................................................................................. 10

K.S.A. 19-247 ................................................................................................. 24

K.S.A. 19-702 ................................................................................................. 24

K.S.A. 19-703 ................................................................................................. 24

K.S.A. 19-723 ................................................................................................. 24

K.S.A. 50-109 ................................................................................................. 12

K.S.A. 50-628 ................................................................................................. 12

K.S.A. 60-908 ........................................................................................ 10, 12, 22

K.S.A. 75-702 .............................................................................................. 12, 22

K.S.A. 75-703 ..................................................................................................... 22

K.S.A. 75-766 ..................................................................................................... 22

K.S.A. 75-777 ..................................................................................................... 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 23

Fed. R. Civ. P. 12(f) ..................................................................................... 23, 25

Fed. R. Civ. P. 17(a) .................................................................................. 4, 10, 14

Fed. R. Civ. P. 23(d) ......................................................................................... 23

Fed. R. Civ. Pro. 8(a)(1) ...................................................................................... 3

Fed. R. Civ. Pro. 8(a)(2) ...................................................................................... 4

**Other Authorities**

6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1555.............................................................................................................. 14

Nora Freeman Engstrom & Robert L. Rabin, *Pursuing Public Health Through
    Litigation: Lessons from Tobacco and Opioids*, 73 Stan. L. Rev. 285 (2021) ....................... 2

*Restatement (Second) of Conflicts of Laws* § 145 ..................................................... 10

*Restatement (Second) of Conflicts of Laws* § 6 ....................................................... 11

*Restatement (Second) of Torts* § 821C ................................................................ 13

Defendant State of Kansas, *ex rel*. Kris W. Kobach, Attorney General ("Kansas"), respectfully submits this Suggestions in Support of Kansas's Motion to Dismiss Ford County's Class Allegations from the First Amended Class Action Complaint (Doc. 48) ("First Amended Complaint") as to Plaintiff The Board of County Commissioners of the County of Ford ("Ford County").

## INTRODUCTION

Ford County's purported representation of a nationwide class of States and governmental entities in this action presents a fundamental challenge to State sovereignty and established legal principles. While cloaked in the guise of a class action, the suit is, in essence, an unauthorized attempt by a political subdivision to exercise *parens patriae* authority—a power exclusively reserved for sovereign States. Ford County's overreach disregards Kansas law, which vests the attorney general with the sole authority to litigate statewide claims impacting public health and welfare. Therefore, the Kansas Attorney General intervened to protect Kansas's sovereign interests and prevent foreclosure of Kansas's possible claims against the Plastics Defendants.

Kansas's motion seeks dismissal on three grounds: (1) Ford County's lack of *parens patriae*, constitutional, and prudential standing and improper venue; (2) the need for judicial efficiency, best served by state-led actions to address statewide harms; and (3) the imperative to protect State sovereignty within our federalist system. As such, this Court should dismiss Ford County's class allegations from this litigation.

## BACKGROUND

The First Amended Complaint in *Rodriguez et al. v. Exxon Mobil Corporation et al.*[1] alleges that the Plastics Defendants, the major players in the plastics industry, engaged in a

---

[1] The plaintiffs bring this action against eleven defendants, specifically Exxon Mobil Corporation, Chevron USA Inc., Chevron Phillips Chemical Corporation, DuPont De Nemours, Inc., DuPont Corporation, Celanese

decades-long campaign of deception about the recyclability of plastic products. (Doc. 48, ¶ 5.) The plaintiffs (*i.e.*, individual consumers and Ford County) allege the Plastics Defendants' purported misinformation about plastics recyclability increased plastic production, consumption, and waste, caused unspecified environmental harms and a public nuisance, artificially raised plastics costs, and imposed significant (but unspecified) costs on governmental entities for waste management.

Specifically, Ford County raises class allegations on behalf of all persons and governmental entities in the United States and its territories essentially seeking (1) an injunction against the Plastics Defendants for alleged deceptive, unlawful, and anticompetitive conduct, (2) abatement and remediation of the alleged public nuisance, and (3) compensatory, treble, and punitive damages. (Doc. 48, ¶¶ 161-64, d-m.) Or, put differently, Ford County seeks "a national, 50-state solution" "to hold these plastic producers and manufacturers accountable where government enforcement has not (at least not yet)." (Doc. 48, ¶¶ 7-8.) In the vein of successful litigation holding Big Tobacco and opioid manufactures accountable (which was *successfully* brought by States' Attorneys General),[2] Ford County seeks to "stamp out" the Plastics Defendants "nationwide scheme" by holding them "accountable for their campaign of deception[.]" (Doc. 48, ¶¶ 7, 9.)

With Ford County as a named plaintiff in a class action purportedly on behalf of sovereign States and their subdivisions, the First Amended Complaint introduces complex issues of standing, *parens patriae* authority, and the appropriate balance of power between States and

---

Corporation, Dow Inc., The Dow Chemical Company, Eastman Chemical Company, LyondellBasell Industries N.V., and The American Chemistry Council (collectively, the "Plastics Defendants").

[2] *See generally*, Nora Freeman Engstrom & Robert L. Rabin, *Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids*, 73 Stan. L. Rev. 285 (2021).

their political subdivisions in nationwide litigation. Ultimately, the Court should dismiss Ford County's class allegations to protect State sovereignty from usurpation by Ford County.

## LEGAL STANDARD FOR MOTION TO DISMISS

Under Rule 12(b)(1), motions to dismiss for lack of subject matter jurisdiction may challenge a complaint on its face or its facts. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (cleaned up). But, the "district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction." *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468, 470 (8th Cir. 1993). A complaint must contain "a short and plain statement of the grounds for the court's jurisdiction[.]" Fed. R. Civ. Pro. 8(a)(1). The federal courts are constitutionally restricted to exercising jurisdiction over cases and controversies. *Carlsen*, 833 F.3d at 908; U.S. Const. art. III., § 2; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (internal quotations omitted)).

The fundamental question of standing is whether the plaintiff is entitled to have a court decide the merits of its cause, which involves an inquiry into the "constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Uniquely, a sovereign entity may satisfy its standing burden under Article III as *parens patriae* when its action relates to a "quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982). Regardless of the standing Ford

County fails to establish, the court "cannot proceed at all" in this cause and must dismiss under Rule 12(b)(1).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Carlsen*, 833 F.3d at 910 (cleaned up); *see also* Fed. R. Civ. Pro. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Carlsen,* 833 F.3d at 910 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Importantly, the claims "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).

Under Rule 12(b)(3), all civil actions in federal district courts must be brought under one of three categories in 28 U.S.C. § 1391(b), unless otherwise permitted by law. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). If the case falls within a § 1391(b) category, "venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred[.]" *Atl. Marine Const. Co.*, 571 U.S. at 56. "Venue is a threshold, nonjurisdictional issue that involves a determination of whether the merits should be adjudicated elsewhere." *Rare Breed Triggers, LLC v. Garland*, 639 F. Supp. 3d 903, 906 (D.N.D. 2022) (cleaned up).

## **ARGUMENT**

Ford County joins this action in the First Amended Complaint and holds itself out to the Court as the best representative of *every* single State, county, and municipality in the country (except California). This is absurd and false. Ford County cannot be permitted to continue in this action because its presence here is a frontal attack to the sovereignty of every State in our Union.

The Court should dismiss Ford County from this action because Ford County neglects to show its standing or authority to bring a class action suit on behalf of all State sovereigns and their instrumentalities. Although cloaked as a class action, Ford County asks this Court to invoke its jurisdiction to commandeer claims exclusively reserved to sovereign states—the end result of which would gravely disrupt the sacred balance of a State's position in the federal system. And further, venue is improper in this Court because Ford County is not located in Missouri and none of the alleged misconduct occurred against Ford County in this District. Instead, Ford County is solely in search for a more favorable forum. Dismissal of Ford County's class allegations from this action is necessary to preserve fundamental principles of American jurisprudence.

## I.     FORD COUNTY'S *PARENS PATRIAE* CLAIMS ARE AN ULTRA VIRES ACT THREATENING STATE SOVEREIGNTY.

The common law doctrine of *parens patriae* (literally, "parent of the country") is derived from the English tradition of the "royal prerogative" to protect those who are legally unable to protect themselves. *Snapp*, 458 U.S. at 600. American courts recognize this common law concept as "inherent in the supreme power of every State." *Id.* (internal quotations omitted); *see also Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 57 (1890) ("When this country achieved its independence, the prerogatives of the crown devolved upon the people of the states. And this power still remains with them, except so far as they have delegated a portion of it to the federal government. The sovereign will is made known to us by legislative enactment. The state, as a sovereign, is the *parens patriae*." (internal citations omitted)). The Supreme Court reasons, "When a State enters the Union, it surrenders certain sovereign prerogatives[,]" which entitles the State to "special solicitude in our standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. 497, 519 (2007). In other words, States must assert a "quasi-sovereign" interest to establish its standing. *Snapp*, 458 U.S. at 600-01.

5

Although the Court acknowledges a quasi-sovereign interest "is a judicial construct that does not lend itself to a simple or exact definition[,]" the Court describes a quasi-sovereign interest in two historical categories. *Snapp*, 458 U.S. at 601. "First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Snapp*, 458 U.S. at 607; *see also Louisiana v. Texas*, 176 U.S. 1 (1900) (first recognizing States' standing to sue to protect the health, safety, and welfare of their citizens). The *Snapp* Court discussed the historical trends of *parens patriae* actions revealing a trend of public nuisance abatement actions to protect a State's economic well-being. *See Snapp*, 458 U.S. at 602-06 (collecting cases). But, the *Snapp* Court also explicitly noted that "*parens patriae* interests extend well beyond the prevention of such traditional public nuisances." *Id*. at 605.

Ultimately, States' *parens patriae* authority has been consistently reaffirmed and recognized. *See Lynch v. Nat'l Prescription Adm'rs, Inc.*, 787 F.3d 868, 872 (8th Cir. 2015) ("To invoke the doctrine, *the Attorney General* must prove a quasi-sovereign interest distinct from that of a particular party and injury to a substantial segment of the state's population." (cleaned up)). As Justice Brennan succinctly recognized in his *Snapp* concurrence:

> [A] State is no ordinary litigant. As a sovereign entity, a State is entitled to assess its needs, and decide which concerns of its citizens warrant its protection and intervention. I know of nothing—except the Constitution or overriding federal law—that might lead a federal court to superimpose its judgment for that of a State with respect to the substantiality or legitimacy of a State's assertion of sovereign interest.

*Snapp*, 458 U.S. at 612 (Brennen, J., concurring).

a. **Political subdivisions—like Ford County—lack the sovereign power necessary to assert any** *parens patriae* **claims.**

Unlike States, political subdivisions are not afforded the same sovereign deference. *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964) (political subdivisions "never were and never have been considered as sovereign entities" and instead are "subordinate governmental instrumentalities created by the State"). Because counties are subordinate governmental entities, counties do not enjoy *parens patriae* authority. *See City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412 (1978) ("Cities are not themselves sovereign; they do not receive all the federal deference of the States that create them. . . . States' subdivisions generally have not been treated as equivalents of the States themselves."); *New Jersey v. New York*, 345 U.S. 369, 373 (1953) (limiting an intervening political subdivision's standing to "only a part of the citizens of [the State] who reside" in a specific area); *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 54 (1982) ("We are a nation not of city-states but of States." (internal quotations and citation omitted)); *Mo. Coal. for Env't Found. v. Wheeler*, No. 2:19-CV-4215-NKL, 2020 WL 2331201, at *9 (W.D. Mo. May 11, 2020) (recognizing political subdivisions are not sovereigns and cannot invoke *parens patriae*); *Roane Cnty. v. Jacobs Eng'g Grp., Inc.*, 429 F. Supp. 3d 494, 495 & n.1 (E.D. Tenn. 2019) (collecting cases) (recognizing case law confirming that municipalities do not have *parens patriae* authority is "nearly innumerable"); *St. Charles Tower, Inc. v. Cnty. of Franklin*, No. 4:09CV987-DJS, 2010 WL 743594 (E.D. Mo. Feb. 25, 2010) (recognizing counties are not sovereigns and cannot invoke *parens patriae*). Because political subdivisions, like Ford County, are not sovereigns, they lack standing to sue as *parens patriae*.

The Supreme Court in *New Jersey* recognized "the principle that the state, when a party to a suit involving a matter of sovereign interest, must be deemed to represent all its citizens." *New Jersey*, 345 U.S. at 372-73 (internal quotations and citations omitted). The Court explained,

7

"[t]he principle is a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration." *Id.* (internal quotations and citations omitted). Without recognizing the State's exclusive authority to bring *parens patriae* actions, the Court reasoned, "a state might be judicially impeached on matters of policy by its own subjects[.]" *Id.* (internal quotations and citations omitted).

In this present action, Ford County is seeking "a national, 50-state solution, to stamp out [the Plastics Defendants'] scheme." (Doc. 48, at ¶ 7.) To accomplish its "50-state solution," Ford County "bring[s] this suit on their own behalf and on behalf of a proposed class of" *all governmental entities* and their citizens in the United States and its territories.[3] (Doc. 48, at ¶¶ 161-64.) Ford County's First Amended Complaint has all the markings of a suit by a political subdivision attempting to sue as *parens patriae*. *See, e.g.,* (Doc. 48, at ¶ 207) (discussing a public nuisance harm to "the general public, including the public health, welfare, safety, peace, comfort, and convenience of Plaintiffs' communities"). Contrary to Ford County's fundamental lack of sovereignty and in contravention to all precedent, Ford County holds itself in this action as the rightful party to represent *every* sovereign State in this country (except California). By this action, Ford County seeks to "judicially impeach" every State in the Union. The court should dismiss Ford County because it fundamentally lacks sovereignty to bring this action. If the court declines to dismiss Ford County, "[every] state [will] be judicially impeached on matters of policy by [one of Kansas's] subjects." *See New Jersey*, 345 U.S. at 372-73 (internal quotations and citations omitted).

---

[3] Excluding the "State of California and all cities, counties, and municipalities within." *See, e.g.,* (Doc. 48, at ¶ 161.d.)

**b. Political subdivisions—like Ford County—lack standing to assert any quasi-sovereign interests.**

States have Article III standing to bring an action involving its "quasi-sovereign" interests, which generally are "a set of interests that the State has in the well-being of its populace," *Snapp*, 458 U.S. at 601-02, but to do so, "[t]he State must express a quasi-sovereign interest," *Id.* at 607. In other words, sovereignty is a prerequisite to invoke standing to assert *parens patriae* standing. Where a political subdivision lacks the ability to assert quasi-sovereign interests, the political subdivision cannot assert an interest in the health and well-being of its residents in general. *See id.* at 607.

Therefore, Ford County—as a creature of the state—must be specifically authorized by statute to bring this suit. *See Reynolds*, 377 U.S. at 575 ("the number, nature, and duration of powers conferred upon [political subdivisions] and the territory over which they shall be exercised rests in the absolute discretion of the state" (cleaned up)); *Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1192-93 (10th Cir. 1991) (examining state law to determine political subdivision's ability to sue); *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800-01 (10th Cir. 2011) (recognizing and applying same); *Warren Cnty. v. North Carolina*, 528 F. Supp. 276, 282-83 (E.D.N.C. 1981) (rejecting argument that counties can invoke *parens patriae* because, "as political subdivisions," they "have only those powers necessary to the accomplishment of their declared objectives"); *Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181, 1185-86 (D. Colo. 2007) (concluding county lacked standing to sue when action was not authorized by state law).

Kansas law does not empower Ford County to bring this suit. *See Cunningham v. Blythe*, 127 P.2d 489, 490 (1942) ("County commissioners have only such powers as are conferred upon them by statute."); *see also* K.S.A. 19-101a (county home rule powers and limitations); K.S.A.

9

19-212 (powers of board of commissioners); K.S.A. 60-908 (granting the county attorney—not the board of commissioners—the authority to abate a nuisance). To the contrary, as discussed more thoroughly in the following subsection, Kansas law vests the attorney general exclusively with this authority. *See* Section 1(c), *infra*. Ford County is not authorized to bring these claims by statute and is not authorized to assert this "quasi-sovereign" interest as *parens patriae*.

### c. Political subdivisions—like Ford County—are not the real party in interest to assert *parens patriae* claims.

Kansas—*not Ford County*—is the real party in interest for this suit. All actions in federal court "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). State substantive law is used to determine the real party in interest under Rule 17(a) in diversity cases. *Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718, 723 (8th Cir. 1966); *see also United Pac. Ins. Co. v. Montana ex rel. Dep't of Agric.*, 658 F. Supp. 335, 338 (D. Mont. 1986) ("Whether the State is a real party in interest under Rule 17(a) is dependent upon whether it would be the proper party to maintain such an action under applicable state law."). Kansas law necessarily governs Ford County's Kansas statutory claims. And to the extent there is any question about its public nuisance (or any other) claim, Kansas law also applies.

This Court applies Missouri's choice-of-law rules. *See Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999). "Missouri follows the 'most significant relationship' test from the *Restatement (Second) of Conflicts of Laws* § 145." *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012). Accordingly, this Court considers (1) "where the injury occurred," (2) "where the conduct causing the injury occurred, (3) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.* And it evaluates these factors under the principles in Section 6(2) of the Restatement. *Id.*

*First*, Ford County's alleged injury occurred in Kansas. *See* (Doc. 48, ¶ 23 (claiming Ford County "purchased plastic products in the State of Kansas, and operated a landfill in the State of Kansas").) *Second*, the defendants' conduct occurred throughout the country, so this factor is neutral. *Third*, Ford County is "a duly organized county located in Kansas," (Doc. 48 ¶ 23), while the defendants are spread throughout the country, (Doc. 48 ¶¶ 24-33). *Finally*, any relationship between Ford County and the defendants existed in Kansas because Ford County's authority is limited to "county" and "local" matters. *See* K.S.A. 19-101a(a).

The relevant principles further support that Kansas law governs. Only Kansas (via its attorney general) has an interest in redressing harms incurred by its subdivisions and residents. Missouri has no interest facilitating a suit by Kansas county for an injury that allegedly occurred in Kansas. *See Restatement (Second) of Conflicts of Laws* § 6(2)(b)-(c) (Oct. 2024 update); *South Carolina v. North Carolina*, 558 U.S. 256, 275 (2010) (recognizing State interest in supporting political subdivisions). Additionally, it is readily ascertainable that Ford County's alleged injuries occurred in Kansas and public policy generally supports applying the law where the alleged public nuisance occurred, which promotes certainty and predictability. *See Restatement (Second) of Conflicts of Laws* § 6(2)(e)-(g) (Oct. 2024 update). Similarly, the defendants almost certainly and justifiably expected that if they committed a public nuisance against a county, *then they would be sued under the law of the State in which the county was organized* (because that is where the public nuisance would occur). *Restatement (Second) of Conflicts of Laws* § 6(2)(d) (Oct. 2024 update). In sum, Kansas has the most significant relationship.

If there is any doubt, this Court "should apply the *lex loci delicti* rule; that is, it should apply the substantive law of the place where the injury occurred." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994) (citing *Kennedy v. Dixon*, 439 S.W.2d 173, 188 (Mo. 1969)).

And as previously noted, Ford County's alleged injury occurred in Kansas. Thus, Kansas law determines its rights.

"Under Kansas law, the real party in interest is the one who, by virtue of the substantive law, holds the right sought to be enforced." *Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188, 1201 (D. Kan.), *aff'd*, 635 F. App'x 483 (10th Cir. 2015). Kansas law vests only the State—through its Attorney General—with the right to sue over statewide nuisances, statewide violations of the Sherman Act, statewide violations of the Kansas Restraint of Trade Act, and statewide unjust enrichment. Accordingly, the State is the real party in interest.

The inherent sovereign and statutory authority to sue over statewide public nuisances, restraints of trade, unjust enrichment, and otherwise protect its residents' health and wellbeing is reserved to Kansas as a quasi-sovereign interest. *See Snapp*, 458 U.S. at 605-07; *Missouri v. Nat'l Org. for Women, Inc.*, 467 F. Supp. 289, 301 (W.D. Mo. 1979), *aff'd*, 620 F.2d 1301 (8th Cir. 1980) (concluding the State had standing to sue as *parens patriae* to seek injunctive relief under antitrust laws); K.S.A. 50-109 (authorizing the attorney general to bring statewide restraint of trade claims); K.S.A. 60-908 (authorizing the attorney general to bring statewide public nuisance claims); K.S.A. 75-702 (authorizing the attorney general to represent the State in all actions, including the federal courts); *see also* K.S.A. 50-628 (authorizing the attorney general to enforce state consumer protection laws statewide). Indeed, abating public nuisances—as Ford County seeks to do—is a bedrock *parens patriae* interest. *See Snapp*, 458 U.S. at 605-07.

The Kansas legislature has codified its intent to designate the attorney general as the representative for the State in statewide litigation. K.S.A. 75-702 ("The attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in

which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense."); *see also Off. of the People's Couns. for the D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 587 (D.C. 2024) (contrasting agency's "limited" litigation authority "with the D.C. Attorney General's plenary authority to litigate"). For example, while a county attorney may only seek to abate a public nuisance "within" the county, the statute places no similar limitation on the attorney general, whose authority extends statewide. *Cf. Kan. City Breweries Co. v. Kansas City*, 153 P. 523, 524 (1915) (strictly construing public-nuisance statute); *Restatement (Second) of Torts* § 821C cmt. J (1979) ("A public official who is authorized to represent the state or an appropriate subdivision in an action to abate or enjoin a public nuisance may of course maintain the action.").

Ford County's suit is effectively a statewide suit to resolve statewide consumer protection and public nuisance claims. *Cf. Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 496 (4th Cir. 1981) ("[C]ommon sense dictates that when an alleged wrong affects governmental units on a state-wide basis, the state should seek redress on their behalf as well as on its own rather than parcel[]ing  out the actions among local agencies."); *see also Illinois v. Associated Milk Producers, Inc.*, 351 F. Supp. 436 (N.D. Ill. 1972) (holding the State—through its attorney general—was the real party in interest to bring statewide antitrust claims on behalf of itself and its political subdivisions).

Because Kansas law *only* vests the State with the authority to bring statewide claims, the State is the real party in interest. *See, e.g.*, *Puerto Rico v. Cordeco Dev. Corp.*, 534 F. Supp. 612, 614-16 (D.P.R. 1982) (concluding Puerto Rico was the real party in interest because it had inherent and statutory authority to condemn property). Accordingly, Kansas is afforded "a reasonable time . . . to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

Because Ford County's voluminous allegations are complex, technical, and span decades, Kansas believes it needs a *significant* period of time to properly evaluate them and determine whether to proceed with this suit. Kansas does not believe it can properly join the suit in place of Ford County within a reasonable time so as to not unduly delay the individual plaintiffs' claims, so this Court should dismiss Ford County's claims.[4]

## II.  FORD COUNTY LACKS STANDING UNDER ARTICLE III TO ASSERT AN INJURY IN FACT TO THE HEALTH, SAFETY, AND WELFARE FOR ALL CITIZENS.

Ford County fails to reach the constitutional minimum to establish its standing to bring this suit on behalf of the general welfare of, *essentially*, all Americans. "The irreducible constitutional minimum of standing is that a plaintiff show (1) an injury-in-fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision in court." *Carlsen*, 833 F.3d at 908 (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff must show an injury that is real, concrete, and not abstract or hypothetical. *TransUnion*, 594 U.S. at 424 (collecting cases). The plaintiff's alleged injury must be closely related to a harm traditionally serving as the basis of a lawsuit, *i.e.*, physical, monetary, and intangible harms. *TransUnion*, 594 U.S. at 424-25.

---

[4] This Court may also dispense with the "reasonable time" requirement because of Ford County's bad-faith conduct. *See Suda v. Weiler Corp.*, 250 F.R.D. 437, 440 (D.N.D. 2008) (citing *Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004)). Ford County's action (*i.e.*, trying to usurp Kansas' authority) was done in bad faith because it knowingly overstepped its statutory authorization; its previous suit in the District of Kansas on behalf of all Kansas counties made its intentions clear. And allowing time in this case to facilitate a substitution would prejudice the Plastics Defendants because Kansas would require a lengthy period of time to review the allegations, thereby delaying the ultimate resolution. Kansas would also be prejudiced by having to try to quickly determine whether to "take over" the claims without thorough review. Accordingly, this Court may dismiss on this basis. *See* 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1555 (3d ed. June 2024 update) ("[I]t has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed.").

In a case premised on diversity, courts "must consult state law to determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004). A litigant "can have no greater ability to assert legal rights created under state law than it would have in the state forum." *Id.* Ultimately, "where state-created interests are at issue, state law certainly plays a part in the determination of federal standing" because "federal courts look to state law to aid in the definition of the 'injury' a plaintiff may assert to meet Article III requirements." *Higdon v. Lincoln Nat. Ins. Co.*, No. CIV.A. ELH-13-2152, 2014 WL 6951290, at *7 (D. Md. Dec. 8, 2014) (collecting cases).

a. **Ford County is not the proper plaintiff to assert an injury in fact for *all* citizens.**

By alleging an injury to the public health, welfare, and safety on behalf of all communities, Ford County alleges it is the proper plaintiff to bring this injury in fact. *See* (Doc. 48, ¶ 207.) But, Ford County cannot establish its heavy burden. As the *New Jersey* court clearly articulated, a political subdivision's standing is limited *only* to the part of a state's citizens it can represent. *New Jersey*, 345 U.S. at 373. In fact, the *New Jersey* Court reasoned *the State* was the best plaintiff because to reason otherwise would draw it into a dispute with the State to evaluate *all* the separate interests. *Id*. Fundamentally, Ford County can only represent its narrow interests permitted by law—not the vast interests of all U.S. States, territories, and their respective subdivisions. Finding otherwise expands Ford County's county boundaries and render States meaningless.

And allowing Ford County to proceed would give it more rights than it enjoys under Kansas law. *See* Section I.c, *supra*. But this Court should not afford Ford County more rights and authority simply because it sued in federal court. *See Gen. Tech. Applications*, 388 F.3d at 118;

*Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945) (recognizing a federal court "cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State"). Because Ford County's alleged injury is not cognizable under state law, it lacks standing here.

Ford County is not the proper plaintiff to make this claim, which is fundamentally an effort to expand its state-law rights.

> **b. Ford County's failure to plead specific facts to support its purported injury warrants dismissal and reinforces that Ford County is not the proper party to represent all governmental entities in the country.**

Ford County neglects to sufficiently identify its alleged injury it claims the Plastics Defendants caused. Instead, the vast majority of Ford County's complaint focuses on the Plastic Defendants' alleged "decades-long coordinated campaign of fraud and deception," *not* Ford County's purported public nuisance. (Doc. 48, ¶ 5.) While Ford County does allege their county faces a public nuisance, Ford County fails to allege any Ford County-specific—*or Kansas-specific*—facts to support its claims. (Doc. 1, ¶¶ 205-16.) The mere fact that Ford County operates a landfill does not mean that Ford County itself is experiencing any plastics-specific harms, such as increased operational expenses or soil or water contamination. *See Lujan*, 504 U.S. at 561 (plaintiffs must allege "specific facts" at pleadings stage); *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record") (internal quotations omitted)).

To be sure, Ford County *may* have observed hypothetical harms to its landfill, operations costs, and environment. But, Ford County has *yet* to allege *it* has experienced specific harms, and the pleadings stage requires specific facts that are not abstract or hypothetical. *See TransUnion*, 594 U.S. at 424. In fact, beyond a general assertion that "plastic waste and pollution is one of the

most serious environmental crises confronting Missouri and the planet today," (Doc. 48, at ¶

142), the First Amended Complaint is troublingly silent as to Ford County's specific, real, and

concrete facts.[5] If Ford County cannot even identify the injuries that occurred in or to itself (*or*

*Kansas*), Ford County cannot establish the Plastics Defendants had a "substantial likelihood" of

causing its purportedly "real" and "concrete" (*but* non-specific) injuries. *See Food & Drug*

*Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024) ("plaintiff must show a

predictable chain of events leading from the [defendant's] action to the asserted injury").

### III.    FORD COUNTY LACKS PRUDENTIAL STANDING BECAUSE FORD COUNTY IS NOT "BEST SUITED" TO BRING THESE CLAIMS.

Ford County bears the burden of showing prudential standing. *Warth v. Seldin*, 422 U.S.

490, 499 (1975). "Prudential standing acts as a limitation on constitutional standing and consists

of the general prohibition on a litigant's raising another person's legal rights, the rule barring

adjudication of generalized grievances more appropriately addressed in the representative

branches, and the requirement that a plaintiff's complaint fall within the zone of interests

protected by the law invoked." *Safelite Grp., Inc. v. Rothman*, 229 F. Supp. 3d 859, 874 (D.

Minn. 2017). Put differently, the Court's prudential principles are used "to limit access to the

federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v.*

*Vill. of Bellwood*, 441 U.S. 91, 99-100 (1979). Ford County lacks prudential standing because

Ford County is *not* "best suited" to assert these claims.

### a.    Ford County is not the "best suited" litigant to assert statewide—and nationwide—claims.

---

[5] Ford County is located in Kansas, *not* Missouri. (Doc. 48, ¶ 23); K.S.A. 18-129. And even though the Court may exercise supplemental jurisdiction in class actions, it does not relieve plaintiffs of their burden to establish Article III standing. *See TransUnion*, 594 U.S. at 431 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." (internal quotations and citations omitted)).

As discussed exhaustively above, Ford County is not the best suited litigant to bring statewide and national *parens patriae* claims. To succeed, Ford County "must assert an injury that is peculiar to [itself] or to a distinct group of which [it] is a part, rather than one 'shared in substantially equal measure by all or a large class of citizens.'" *Gladstone Realtors*, 441 U.S. at 100 (internal citations omitted). By Ford County's own pleadings, it seeks a "50-state solution" to "the most serious environmental [crisis]" confronting "the planet today." (Doc. 48, ¶¶ 7, 142.) Ford County cannot assert to this Court with a straight face it incurred a injury peculiar to itself and "a distinct group of which it is a part" whenever it calls for a 50-state solution to a global injury. *See* (Doc. 48, ¶ 164.) Ford County's claims are best described as "shared in substantially equal measure by all of a large class of citizens," which reinforces the certainty that Ford County's claims are *parens patriae* claims "best suited" to the States. *See Illinois*, 351 F. Supp. at 440 ("the State through its Attorney General is the proper and best representative of the political subdivision organized under the authority of the State" because "[j]ustice and judicial economy is best served by having the largest governmental unit sue on behalf of all its parts rather than having multiple suits brought by various political subdivisions within the State"); *Twp. of Lyndhurst v. Priceline.com Inc.*, 657 F.3d 148 (3d Cir. 2011) (political subdivision lacked prudential standing where statute authorizes a state officer to bring enforcement action on behalf of the State). To extend federal jurisdiction to Ford County's claims "would be gratuitous and thus inconsistent with the Art. III limitation." *Gladstone Realtors*, 441 U.S. at 99 (internal citations omitted).

## IV.     FORD COUNTY "SEEK[S] A MORE FAVORABLE FORUM" AND LACKS ANY LEGITIMATE BASIS FOR VENUE IN THIS DISTRICT.

Ford County asserts venue is proper in the Western District of Missouri primarily because "a substantial part of the events or omissions giving rise to [its] claims" occurred in the

Western District of Missouri. (Doc. 48, ¶ 14); *see* 28 U.S.C. § 1391(b). As a diversity action with federal and state law claims, the Western District of Missouri must be the proper venue for *each* of Ford County's claims. *Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir. 1985). Consistent with other Rule 12(b) motions, Ford County bears the burden of showing it has chosen the proper venue as plaintiff for each of its claims. *Pfeiffer v. Int'l Acad. of Biomagnetic Med.*, 521 F. Supp. 1331, 1336 (W.D. Mo. 1981) ("once defendant has raised the defense of improper venue" under Rule 12(b)(3), "and the Court is therefore reviewing the allegations in plaintiff's complaint alone," then "the plaintiff bears the burden of providing proper venue").

As a named plaintiff, the only misconduct in question for Ford County is the alleged misconduct occurring *in Kansas*. *See Bozic v. U.S. Dist. Court*, 888 F.3d 1048, 1053 (9th Cir. 2018) ("Whether before or after class certification, the claims of unnamed class members can never make permissible an otherwise impermissible venue. Rather, in a class action, the 'events' in question are only those involving the named plaintiffs."); *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 489 (5th Cir. 2003) ("Notwithstanding the relaxation of venue and personal jurisdiction requirements as to unnamed members of a plaintiff class, it is by now well settled that these requirements to suit must be satisfied for each and every named plaintiff for the suit to go forward.") Ford County's alleged injuries and the Plastics Defendants' alleged misconduct all center on an alleged public nuisance at Ford County's landfill *in Kansas* or its purchase of plastic products *in Kansas*. (Doc. 48, ¶ 23.) Ford County knows venue is improper here because this District was not its first choice.[6]

---

[6] Ford County voluntarily dismissed its District of Kansas suit after the Defendant Exxon Mobil Corp. moved to transfer venue of this case. *See* (Docs. 3-4, 47, 55); *see also* Class Action Complaint, *Ford County, Kansas v. Exxon Mobil Corp., et al.*, No. 2:24-cv-02547-KHV-GEB (D. Kan. Nov. 27, 2024).

The Court should discourage Ford County's forum shopping and dismiss Ford County's class allegations for lack of venue because no substantial part of the alleged misconduct occurred in this District. *See Barber v. Simpson*, No. 95-4210, 1996 WL 477005, at *1 (8th Cir. Aug. 23, 1996) (per curiam) (venue is improper when the defendant's specific misconduct occurred elsewhere); *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 (8th Cir. 1997) (disfavoring forum shopping); *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011) (cleaned up) (disfavoring amended complaints to join unconnected parties; "a party is not permitted to dismiss merely to escape an adverse action nor to seek a more favorable forum"); *see also Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009) (dismissal viewed favorably when "the plaintiff's attorney reasonably could have foreseen that the forum…was improper").

## V.     FORD COUNTY'S CLASS ACTION ALLEGATIONS DIRECTLY ATTACK STATES' SOVEREIGNTY.

Fundamentally, Ford County, a political subdivision of Kansas bringing a class action on behalf of the State and all of its subdivisions, threatens core tenants of American legal principals. Our Constitution grants the federal government broad authorities, but "the founding document specifically recognizes the States as sovereign entities." *Alden v. Maine*, 527 U.S. 706, 713 (1999) (cleaned up). "[T]he States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty. *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) (cleaned up). As the *Alden* Court explained:

> Any doubt regarding the constitutional role of the States as sovereign entities is removed by the Tenth Amendment, which, like the other provisions of the Bill of Rights, was enacted to allay lingering concerns about the extent of the national power. The Amendment confirms the promise implicit in the original document: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

*Alden*, 527 U.S. at 713-14 (cleaned up).

Through this class action, Ford County tries to usurp the States' sovereignty and powers while ignoring Kansas law and Rule 23.

**a. Ford County seeks to usurp clear State power.**

As a sovereign entity, the State—through its Attorney General—is the sole proper representative of the State and all of its political subdivisions for these claims. *See, e.g.*, *Illinois*, 351 F. Supp. at 440; *Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986) ("counties, unlike states, are not independent governmental entities existing by reason of any inherent sovereign authority of their residents"). Ignoring Kansas's sovereignty, Ford County proceeds with a class action claims on behalf of all States and political subdivisions. The States should not be subject to this fundamental intrusion by a political subdivision (*i.e.*, a creature *of the State*) through a class action subverting State sovereignty. *See Greater Heights Acad. v. Zelman*, 522 F.3d 678, 680 (6th Cir. 2008) ("Being a subdivision of the state, the State may withhold, grant or withdraw powers and privileges from [a political subdivision] as it sees fit." (cleaned up)); *Bd. of Cnty. Comm'rs v. Lewis*, 203 Kan. 188, 191 (1969) ("[Counties] are mere instrumentalities of the state in the exercise of its governmental functions, and are given corporate power only so far as may be necessary to aid those functions.").

Although Kansas law grants counties "home rule power," which is the broadest authority of self-governance (*but* subject to Kansas's uniform limitations), Ford County's class action asks the Court to expand "home rule power" to Kansas's sovereign powers. K.S.A. 19-101c; *Bd. of Cnty. Comm'rs v. Nielander*, 275 Kan. 257, 264 (2003) ("Home rule powers are those granted by the Constitution or by legislative act to units of local government to transact local business and perform such local and administrative duties as these local units may deem appropriate, subject

21

to certain limitations imposed upon such grant of power.") Even under Kansas's home rule, counties are restricted from acting inconsistently with state law. *See* K.S.A. 19-101a(b) (counties permitted to adopt *local* legislation not inconsistent with uniform State law). In fact, Kansas counties are restricted to exercising powers "especially conferred by law." K.S.A. 19-101.

Under Kansas law, the attorney general is specifically designated as the representative of the State to "prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense." K.S.A. 75-702(a); *see also* K.S.A. 75-703 (designating the attorney general as the proper party to "prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with [the State's] departments," at a department head's request); K.S.A. 60-908 (authorizing the attorney general alone to seek relief for statewide nuisances); K.S.A. 75-766 (declaring state policy that criminal actions brought in the name of the State are subject to the jurisdiction of the attorney general to promote efficiency); K.S.A. 75-777 (disposition of recoveries from opioids litigation; supporting the principal that the attorney general is responsible for statewide abatement and recoveries); 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust claims for the State). The Kansas legislature, in exercising Kansas's sovereign powers, has been unambiguous that the attorney general represents Kansas for statewide civil prosecutions, nuisance abatement, and recovery administration.

Notwithstanding, the Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (cleaned up). In other words, for Ford County to successfully be the class representative of all governmental entities in the United States, Ford County *must* necessarily impersonate and usurp Kansas's sovereignty. It cannot.

Ford County, *a political subdivision*, is not a part of "the class," does not possess the same interests, and has not suffered the same injury as any State. If the Court permits Ford County to move forward with its class allegations, the Court will substitute the broad interests over local affairs of all Kansas's counties, for example, for *one* county's—*Ford County's*—*sole* interest. This would necessarily expand Ford County's home rule power to Kansas's sovereign power. It unavoidably does not possess sovereignty, and the Court should dismiss Ford County to prevent its further usurpation.

> **b. Ford County's class allegations have "issues [that] are plain enough from the pleadings" warranting dismissal before the class certification stage.**

Because Ford County raises its claims as a class action, the Court should exercise its authority to examine the class allegations to determine whether the absent parties' interests are fairly represented by Ford County. *Gen. Tel. Co.*, 457 U.S. at 160 ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); *see also* Fed. R. Civ. P. 12(b)(6), 12(f), 23(d); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) ("Federal courts have used motions to strike to test the viability of a class at the earliest pleading stage of the litigation."). Allowing Ford County's proposed class to move beyond the pleading stage requires the Court to disregard precedent and operate as if a class of sovereign governmental entities and their subdivisions are indistinguishable from a class of private individuals.

Ford County's class action allegations are incompatible with Kansas's home rule law, which permits counties to "sue and be sued" and "determine their *local* affairs". K.S.A. 19-101 (emphasis added); K.S.A. 19-702 (describing the county attorney's duty to prosecute or defend

the county's civil or criminal interests "within the county"); K.S.A. 19-703 (limiting instances where county attorney may appear on behalf of the state to requests made by "judge of the district court of the county"); K.S.A. 19-723 (limiting when county board of commissioners can hire counsel for matters only "involving the duties of said county attorney"); K.S.A. 19-247 (limiting the duties of the county counselor to, in part, "commence, prosecute or defend, as the case requires, all civil suits or actions in which the county is interested and represent the county generally in matters of civil law"). Ford County's class allegations cannot proceed beyond the pleadings stage because the proposed class impedes on the independence of other counties and the sovereignty of the State, as designed by Kansas law. *See Cnty. of Dorchester v. AT&T Corp.*, 407 F. Supp. 3d 561, 568 (D.S.C. 2019) (finding that proposed class of counties could not proceed because it impedes on other counties and the State, contrary to state law).

Ford County's class allegations fail to adequately address foreseeable issues stemming from a proposed class of individualized sovereigns and political subdivisions. Each State, county, city, and other political subdivision possess highly individualized and localized interests, and each of these interests must be evaluated individually by the court. *See, e.g., Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 279 (4th Cir. 1980) (district court abused its discretion permitting class of "great number" of "geographic spread of the decisionmakers" with "almost complete local autonomy"); *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (class allegations are unsuccessful where "multiple decisionmakers with significant local autonomy exist"); *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 109 (D. Kan. 2024) (finding no superiority of a class where adjudicating claims on a class-wide basis necessitate individualized

factual and legal inquiries). At this "earliest pleading stage," the Court should dismiss Ford County's class allegations.[7]

## VI.    DISMISSAL OF FORD COUNTY'S CLASS ALLEGATIONS IS THE MOST APPROPRIATE REMEDY.

Ford County's claims suffer from a fatal flaw: an absence of *parens patriae*, constitutional, and prudential standing. *Parens patriae* authority, reserved for sovereign entities, is not inherently possessed by political subdivisions like Ford County. This authority, to represent the interests of the state as a whole, resides with the State (through the attorney general). Moreover, Ford County cannot demonstrate Article III standing. It fails to articulate a concrete injury specific to the county directly caused by the Plastics Defendants' actions. Instead, Ford County offers generalized harm, shared by numerous municipalities, further undermining the county's standing. Ford County also lacks prudential standing because it improperly seeks to assert claims on behalf of the State—the *real* party in interest. And, Ford County is ultimately in this District forum shopping rather than following proper channels to redress legitimate local harms or statewide nuisances.

Dismissing Ford County's claims promotes judicial efficiency by reaffirming the established principle of State-led actions to remedy statewide injuries. History demonstrates that the States' attorneys general, armed with broader authority and resources, are better equipped to handle complex public health litigation. Prior successful attorneys general actions in the opioid and tobacco settlements illustrate the effectiveness and superiority of state-led efforts in

---

[7] If the Court does not wish to dismiss on this basis, the Court should alternatively strike the class allegations under Rule 12(f). Fed. R. Civ. P. 12(f). *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (cleaned up) ("[A] district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification. It is sensible to permit class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained.")

achieving statewide and nationwide resolutions and maximizing remediation funds. Allowing an individual political subdivision to pursue statewide and nationwide claims creates an inefficient and unwieldy litigation landscape, risking duplicative efforts, conflicting judgments, and ultimately, less effective remedies. Centralizing these actions under States' *parens patriae* authority streamlines the process and ensures a more coherent and impactful outcome.

Finally, dismissal is paramount to safeguarding the sovereignty of States within our federal system. Allowing a political subdivision to usurp Kansas's *parens patriae* authority sets a dangerous precedent, potentially inviting a flood of fragmented litigation by political subdivisions across the country. This undermines Kansas's exclusive right to represent *all* of its citizens' interests in matters of public health and welfare. Preserving this balance of power is essential to the proper functioning of our federalist system.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Ford County's class allegations from the First Amended Complaint without prejudice.

**Dated:** [DATE]                          Respectfully submitted,

                                          **KRIS W. KOBACH**
                                          **Attorney General of Kansas**

                                          */s/ Nicholas C. Smith*
                                          Melanie S. Jack, W.D. Mo. No. KS-001292
                                            *First Assistant Attorney General*
                                          Nicholas C. Smith, W.D. Mo. No. KS-001290
                                            *Assistant Attorney General*
                                          Adam T. Steinhilber, Mo. Bar No. 73959
                                            *Assistant Solicitor General*
                                          OFFICE OF ATTORNEY GENERAL
                                          120 SW 10th Avenue, 2nd Floor
                                          Topeka, Kansas 66612
                                          Phone: (785) 296-3751
                                          Fax: (785) 291-3699
                                          Email: Melanie.Jack@ag.ks.gov
                                                  Nicholas.Smith@ag.ks.gov
                                                  Adam.Steinhilber@ag.ks.gov

                                          *Attorneys for State of Kansas*


## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____ 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance, and I otherwise caused all parties to be served with the foregoing document as required by Federal Rule of Civil Procedure 24(c).

                                          */s/ Nicholas C. Smith*
                                          Nicholas C. Smith