## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BILLIE RODRIGUEZ, DANIEL ERWIN, MICHAEL B. ACKERMAN, KYLE FOREMAN, DREW SCRUGGS, MARY JANE MCQUEENY, EMILY THORPE, JENNIFER TRITT, and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, individually and on behalf of all others similarly situated, | |
| *Plaintiffs,* | |
| v. | Case No. 25-cv-02195-TC-TJJ |
| EXXON MOBIL CORPORATION, CHEVRON USA, INC., CHEVRON PHILLIPS CHEMICAL COMPANY LP, DUPONT de NEMOURS INC., CELANESE CORPORATION, DOW INC., DOW CHEMICAL COMPANY, EASTMAN CHEMICAL COMPANY, LYONDELLBASELL INDUSTRIES N.V., and AMERICAN CHEMISTRY COUNCIL, | |
| *Defendants,* | |
| and | |
| STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General, | |
| *Defendant-Intervenor.* | |

---

### MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF OF
### THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA
### IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

Pursuant to Local Rule 15.1(a), the Chamber of Commerce of the United States of America

(the "Chamber") respectfully files this motion for leave to file an amicus curiae brief in support of

Defendants' motions to dismiss.  Undersigned counsel conferred with counsel for each of the

parties.  Defendants consent; Intervenor-Defendant consents; Plaintiffs are opposed.  A copy of the proposed amicus curiae brief is attached as **Exhibit 1.**

The Chamber is the world's largest business federation.  It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has a strong interest in this case because Plaintiffs' lawsuit would chill expression protected by the First Amendment and impede constructive dialogue on issues of public concern.  The Chamber also has a strong interest in ensuring that America's tort system is predictable and does not punish businesses for harms for which they are not responsible.  The Chamber supports Defendants' arguments in full and submits this brief to apprise the Court of additional background on both the First Amendment and public-nuisance doctrine.  This motion is timely filed as it is filed before the parties have fully briefed Defendants' motions to dismiss and before the Court has scheduled a hearing for the motions.

"Whether to permit a nonparty to submit a brief, as amicus curiae, is a matter within the sound discretion of the court."  *Hammond v. City of Junction City*, No. 00-cv-2146, 2001 WL 1665374, at *1 (D. Kan. Dec. 17, 2011); *N.M Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 116, 1175 (10th Cir. 2021) ("Federal courts have discretion in allowing participation as amicus curiae.").  As then-Judge Alito explained, courts should "err on the side of granting leave."  *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128,

133 (3d Cir. 2002).  "If an amicus brief that turns out to be unhelpful is filed, the [Court], after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief.  On the other hand, if a good brief is rejected, the [Court] will be deprived of a resource that might have been of assistance."  *Id.*

For these reasons, the Court should grant the Motion and allow the Chamber to file the attached brief in this matter.

September 10, 2025                            Respectfully Submitted,

                                             Jeremy J. Broggi (DC Bar No. 1029427)
                                             (*pro hac vice* pending)
                                             WILEY REIN LLP
                                             2050 M Street, NW
                                             Washington, D.C.  20036
                                             Tel: (202) 719-7000
                                             Fax: (202) 719-7049
                                             JBroggi@wiley.law

                                             /s/ *Stephen R. McAllister*
                                             Stephen R. McAllister (KS Bar No. 15845)
                                             DENTONS US LLP
                                             4520 Main St., Ste. 1100
                                             Kansas City, MO 64111
                                             Tel: (816) 460-2400
                                             Fax: (816) 531-7545
                                             Stephen.McAllister@dentons.com

                                             *Counsel for the Chamber*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, a true and correct copy of this motion was filed and served electronically upon counsel of record registered with the Court's CM/ECF system.

/s/ *Stephen R. McAllister*
Stephen R. McAllister (KS Bar No. 15845)

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

BILLIE RODRIGUEZ, DANIEL ERWIN,
MICHAEL B. ACKERMAN, KYLE
FOREMAN, DREW SCRUGGS, MARY
JANE MCQUEENY, EMILY THORPE,
JENNIFER TRITT, and THE BOARD OF
COUNTY COMMISSIONERS OF THE
COUNTY OF FORD, individually and on
behalf of all others similarly situated,

       *Plaintiffs,*

    v.

EXXON MOBIL CORPORATION,
CHEVRON USA, INC., CHEVRON
PHILLIPS CHEMICAL COMPANY LP,
DUPONT de NEMOURS INC., CELANESE
CORPORATION, DOW INC., DOW
CHEMICAL COMPANY, EASTMAN
CHEMICAL COMPANY,
LYONDELLBASELL INDUSTRIES N.V.,
and AMERICAN CHEMISTRY COUNCIL,

       *Defendants,*

and

STATE OF KANSAS, *ex rel.* KRIS W.
KOBACH, Attorney General,

       *Defendant-Intervenor.*

Case No. 25-cv-02195-TC-TJJ

## EXHIBIT 1

—

## BRIEF OF AMICUS CURIAE
## THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA
## IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| BILLIE RODRIGUEZ, DANIEL ERWIN, MICHAEL B. ACKERMAN, KYLE FOREMAN, DREW SCRUGGS, MARY JANE MCQUEENY, EMILY THORPE, JENNIFER TRITT, and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, individually and on behalf of all others similarly situated, | |
| *Plaintiffs,* | |
| v. | Case No. 25-cv-02195-TC-TJJ |
| EXXON MOBIL CORPORATION, CHEVRON USA, INC., CHEVRON PHILLIPS CHEMICAL COMPANY LP, DUPONT de NEMOURS INC., CELANESE CORPORATION, DOW INC., DOW CHEMICAL COMPANY, EASTMAN CHEMICAL COMPANY, LYONDELLBASELL INDUSTRIES N.V., and AMERICAN CHEMISTRY COUNCIL, | |
| *Defendants,* | |
| and | |
| STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General, | |
| *Defendant-Intervenor.* | |

# BRIEF OF AMICUS CURIAE
# THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA
# IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... ii

INTEREST OF AMICUS CURIAE ........................................................................... 1

INTRODUCTION ......................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.     The First Amendment Protects Industry's Right To Discuss Issues Of
Public Concern ...................................................................................................... 3

     A.    The Alleged Speech Pertains To Matters Of Public Concern, And
Is Not Commercial Speech ........................................................................ 3

     B.    The First Amendment Prohibits Government From Censoring
Industry Advocacy About Recycling ....................................................... 5

     C.    Plaintiffs' Theory Would Be Disastrous For The Speech Of All
Americans ..................................................................................................... 8

II.    Public-Nuisance Law Does Not Permit Plaintiffs' Baseless And
Dangerous Claim ................................................................................................... 9

     A.    Plaintiffs Are Following A Playbook Designed To Reinvent The
Public Nuisance Tort As An Unbounded Super Tort .............................. 9

     B.    The Complaint Alleges Sale Of A Lawful Product And Fails To
Plead Proximate Causation ...................................................................... 12

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023)...................................................................................................4

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)...................................................................................................7

*Ashcroft v. ACLU*,
  535 U.S. 564 (2002)...................................................................................................4

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020)...................................................................................................3

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)...............................................................................................7, 8

*Citizens for Odor Nuisance Abatement v. City of San Diego*,
  8 Cal. App. 5th 350 (2017) .....................................................................................15

*Citizens United v. FEC*,
  558 U.S. 310 (2010)...............................................................................................3, 8

*City of Bloomington v. Westinghouse Elec. Corp.*,
  891 F.2d 611 (7th Cir. 1990) ..................................................................................11

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993).................................................................................................4

*City of Huntington v. AmerisourceBergen Drug Corp.*,
  609 F. Supp. 3d 408 (S.D. W. Va. 2022) ...............................................................15

*City of Norwalk v. City of Cerritos*,
  99 Cal. App. 5th 977 (2024) ...................................................................................13

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 530 (1980).................................................................................................3

*Detroit Bd. of Educ. v. Celotex Corp.*,
  493 N.W.2d 513 (Mich. Ct. App. 1992) .................................................................14

*Diamond v. General Motors Corp.*,
  20 Cal. App. 3d 374 (1971) ....................................................................................11

*First Nat. Bank of Bos. v. Bellotti*,
    435 U.S. 765 (1978) ........................................................................................4

*People ex rel. Gallo v. Acuna*,
    14 Cal. 4th 1090 (1997) ................................................................................14

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ........................................................................................1

*Ginzburg v. United States*,
    383 U.S. 463 (1966) ........................................................................................4

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ......................................................................................14

*State ex rel. Hunter v. Johnson & Johnson*,
    499 P.3d 719 (Okla. 2021) .....................................................................10, 15

*State ex rel. Jennings v. Purdue Pharma L.P.*,
    C.A. No. N18C-01-223 MMJ CCLD, 2019 WL 446382
    (Del. Ch. Feb. 4, 2019) ................................................................................10

*Johnson County, by and through Bd. of Educ. of Tenn. v. U.S. Gypsum Co.*,
    580 F. Supp. 284 (E.D. Tenn. 1984) ...........................................................11

*Kansas v. Nebraska*,
    574 U.S. 445 (2015) ......................................................................................12

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007) .............................................................................10

*Lowe v. SEC*,
    472 U.S. 181 (1985) ........................................................................................5

*Matal v. Tam*,
    582 U.S. 218 (2017) ........................................................................................6

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) ........................................................................................6

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .....................................................................................3, 7

*NRA v. Vullo*,
    602 U.S. 175 (2024) ........................................................................................6

*People by James v. PepsiCo, Inc.*,
    222 N.Y.S.3d 907 (N.Y. 2024) ..........................................................9, 13, 14, 15

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) .................................................................................................6

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .................................................................................................6

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
   487 U.S. 781 (1988) .................................................................................................8

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ..............................................................................................2, 5

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) .................................................................................................3

*State v. Am. Tobacco Co.*,
   14 F. Supp. 2d 956 (E.D. Tex. 1997) ...................................................................12

*State v. Lead Indus. Ass'n*,
   951 A.2d 428 (R.I. 2008) ...............................................................................10, 13

*SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*,
   578 F. Supp. 3d 511 (S.D.N.Y. 2022) ..................................................................14

*Thornhill v. Alabama*,
   310 U.S. 88 (1940) ...................................................................................................5

*Tioga Pub. Sch. Dist. No. 15 of Williams County, N.D. v. U.S. Gypsum Co.*,
   984 F.2d 915 (8th Cir. 1993) ...........................................................................12, 14

*Turner Broad. Sys., Inc. v. FCC*,
   507 U.S. 1301 (1993) ...............................................................................................3

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) .................................................................................................5

*United States v. Alvarez*,
   567 U.S. 709 (2012) .................................................................................................8

**Constitutional Provisions**

U.S. Const. amend. I ....................................................................................................3

U.S. Const. amend. XIV ..............................................................................................3

**Statutes**

Cal. Pub. Res. Code, § 42355.51 ...............................................................................13

iv

**Other Authorities**

Denise E. Antolini, *Modernizing Public Nuisance: Solving the Paradox of the
  Special Injury Rule*, 28 Ecol. L.Q. 755 (2001) ......................................................................11

Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*,
  71 U. Cin. L. Rev. 741 (2003) ......................................................................................9, 11

EPA, *How Do I Recycle Common Recyclables* (Nov. 23, 2024),
  tinyurl.com/fke289h3........................................................................................................7

FTC, *Guides for the Use of Environmental Marketing Claims* (Oct. 1, 2012),
  tinyurl.com/563t9nkh........................................................................................................7

New York City, *Mayor Bloomberg Launches New "Recycle Everything" Ads And
  Announces Expansion Of The Organic Food Waste Recycling Program*
  (July 29, 2013), tinyurl.com/c2ydtssu...............................................................................7

Restatement (Third) of Torts § 8 (2020).....................................................................................12

Victor E. Schwartz & Phil Goldberg, *The Law of Public Nuisance: Maintaining
  Rational Boundaries on a Rational Tort*, 45 Washburn L.J. 541 (2006) ...............................10

## INTEREST OF AMICUS CURIAE[1]

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has a strong interest in this case because Plaintiffs' lawsuit would chill expression protected by the First Amendment and impede constructive dialogue on issues of public concern. The Chamber also has a strong interest in ensuring that America's tort system is predictable and does not punish businesses for harms for which they are not responsible. The Chamber supports Defendants' arguments in full and submits this brief to apprise the Court of additional background on both the First Amendment and public-nuisance doctrine.

## INTRODUCTION

This lawsuit is premised on Plaintiffs' disagreement with Defendants' "decision to promote [an] idea." Am. Compl. ¶ 1, Dkt. 48 ("Compl."). "Under the First Amendment," "there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). Our Constitution does not allow "the conscience of judges and juries" to resolve disagreement about ideas, "[h]owever pernicious" the plaintiff considers the defendant's ideas. *Id.* at 339–40. Those disagreements are resolved in the marketplace of ideas and at the ballot box. *Id.*

---

[1] Amicus curiae states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

Indeed, this suit goes to the core of the First Amendment's protection. Plaintiffs oppose Defendants' speech about plastics and the merits of recycling, but the policy debate surrounding those topics is a matter of intense public concern. As the Supreme Court has explained, such speech "occupies the highest rung of the hierarchy of First Amendment values." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (cleaned). Yet Plaintiffs seek the suppression of Defendants' speech on the basis of viewpoint; Plaintiffs' overt objective is to silence one side of the debate. The First Amendment bars that effort.

The lawsuit also fails on its merits. Plaintiffs claim to be disappointed by the lack of "legislative or regulatory action" in the political branches, Compl. ¶ 6, and now ask the judiciary to legislate. But because the judiciary is not a legislature, the courts have no tools fit for that task. Plaintiffs try to shoehorn their policy goal into the centuries-old cause of action for public nuisance. But since the Founding, public nuisance has played only a limited role in American jurisprudence. It originated as a property-based tort for remedying invasions of public lands or shared resources like highways and waterways.

Plaintiffs' theory, by contrast, would create a novel super-tort that exposes businesses to unlimited liability for virtually every perceived societal ill, all outside the legislative process. Local governments could leverage this super-tort to sue fast-food restaurants for an obesity epidemic or smartphone manufacturers for harms caused by distracted drivers. It is not the judiciary's role to create a new tort to address alleged broad social problems. That job belongs to the legislature, which can weigh competing policy factors and study the possible consequences of expanding traditional nuisance law as compared with other options, including the option of imposing schemes of taxation or regulation to be administered by the Executive Branch.

**ARGUMENT**

**I.     The First Amendment Protects Industry's Right To Discuss Issues Of Public Concern**

The First Amendment prohibits laws that "abridg[e] the freedom of speech."  U.S. Const. amend. I; *see also id.* amend. XIV (protecting Americans' speech rights against state governments).  That includes unwritten tort law and statutes enforced by the judiciary in litigation between private parties.  *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (defamation liability violated defendants' free-speech rights).

"Above all else, the First Amendment means that government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020) (plurality) (cleaned).  The First Amendment is designed to "preserve an uninhibited marketplace of ideas." *Turner Broad. Sys., Inc. v. FCC*, 507 U.S. 1301, 1301 (1993).  If that marketplace "is to remain free and open, governments must not be allowed to choose 'which issues are worth discussing or debating.'" *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 537–38 (1980).  The general rule is that "the speaker and the audience, not the government, assess the value of the information presented." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 579 (2011).

As the Supreme Court has repeatedly held, free-speech protection "extends to corporations," *Citizens United v. FEC*, 558 U.S. 310, 342 (2010) (collecting cases), which "contribute to the 'discussion, debate, and the dissemination of information and ideas' that the First Amendment seeks to foster," *id.* at 343.

**A.     The Alleged Speech Pertains To Matters Of Public Concern, And Is Not Commercial Speech**

These principles apply with full force to the alleged statements at issue here because they express certain Defendants' goals, views, and values on topics of public concern.  The First

3

Amendment "means that government has no power to restrict expression" because of its "message" or its "ideas." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002). But that goal is precisely what Plaintiffs are attempting to secure—indeed, they use those very words. *See* Compl. ¶¶ 1, 154 (attacking Defendants' "messaging" and "idea[s]").

The speech alleged here pertains to matters of public concern, and is not commercial speech. "[P]roposal of a commercial transaction" is "*the test* for identifying commercial speech." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993). The mere fact that speech occurs in a commercial context does not make it commercial speech: "the First Amendment extends to all persons engaged in expressive conduct, including those who seek profit." *303 Creative LLC v. Elenis*, 600 U.S. 570, 600 (2023); *see also, e.g.*, *Ginzburg v. United States*, 383 U.S. 463, 474 (1966) ("commercial activity … is no justification for narrowing the protection of expression secured by the First Amendment"); *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 784 (1978) ("no support … for the proposition that speech … within the protection of the First Amendment loses that protection simply because its source is a corporation").

The alleged speech here does not propose a commercial transaction. The Complaint concerns alleged "public education campaigns," Compl. ¶ 6, an alleged "false narrative," *id.* ¶¶ 75, 76, "argu[ments]" made, *id.* ¶ 74, a "promise[]" about a Defendant's motivation, *id.* ¶ 94, purported facts a trade association allegedly "avoid[ed] emphasizing," *id.* ¶ 109, the opinion that "[p]lastics recycling is here," *id.* ¶ 113, and Defendants' "messaging," *id.* ¶ 154. The Complaint attacks speech by trade associations to "policymakers." *Id.* ¶ 112. In short, the Complaint challenges statements of opinion, narratives, and framing—speech made "in hopes to change public perception." *Id.* ¶ 93. Another term for such speech is political speech. The issues involved—whether plastic can and should be recycled, and whether government should "ban

Plastics," *id.* ¶ 208—are "broad issues of interest to society at large," *Snyder*, 562 U.S. at 454.

Indeed, the Complaint does not allege that the trade-association Defendant has ever even sold a product.  The trade association has engaged in advocacy, according to the Complaint, aimed at "consumers and policymakers."  Compl. ¶ 112.  That speech cannot plausibly be conceptualized as commercial speech, and the Complaint's inclusion of it underscores that Plaintiffs' lawsuit targets political advocacy.  The statements Plaintiffs challenge are core "expression[s]" of Defendants' "ideas and beliefs" on matters of public concern.  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994).  That consumers might rely on such statements when making purchasing decisions does not make commentary on that topic commercial speech.  *Cf. Lowe v. SEC*, 472 U.S. 181, 210 (1985) ("no doubt" that "commentary on general market conditions" is constitutionally "protected").

### B.    The First Amendment Prohibits Government From Censoring Industry Advocacy About Recycling

The First Amendment does not allow the government to dictate what Americans' education campaigns may say, what their narratives may say, what arguments they may make, what they may say about their motivations, or what they must emphasize.  When it comes to a company's efforts to "change public perception" on matters of public concern through speech, Compl. ¶ 93, government has no ability to interfere.  Indeed, that speech lands at the First Amendment's core.

"Speech on 'matters of public concern'" "is at the heart of the First Amendment's protection."  *Snyder*, 562 U.S. at 451–52 (cleaned).  Under the First Amendment, "debate on public issues" must be "uninhibited, robust, and wide-open."  *Id.* (quoting *New York Times*, 376 U.S. at 270).  "Those who won our independence," the Supreme Court has long emphasized, "had confidence in the power of free and fearless reasoning and communication of ideas to discover and spread political and economic truth."  *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940).

But this lawsuit seeks to skew the debate by silencing one side. Indeed, the liability Plaintiffs seek would discriminate on the basis of viewpoint by targeting those who advocate for plastics recycling. "At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *NRA v. Vullo*, 602 U.S. 175, 187 (2024). Except in the most extraordinary circumstances, viewpoint discrimination simply is not allowed. *See Reed v. Town of Gilbert*, 576 U.S. 155, 165, 168 (2015).

"At its most basic, the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., joined by Ginsburg, J., Sotomayor, J., and Kagan, J., concurring in part and concurring in the judgment). That is exactly what the Complaint seeks. Plaintiffs and Defendants have opposing views about important issues relating to recycling. The Complaint makes clear that Plaintiffs feel strongly that they are right and Defendants are wrong. But under the First Amendment, hostility toward Defendants' views does not enable the courts to unconstitutionally chill Defendants' speech. By seeking to silence Defendants' "idea[s]," "narrative," and "messaging," Compl. ¶¶ 1, 75, 154, Plaintiffs propose that this Court "rejigger the expressive realm," *Moody v. NetChoice, LLC*, 603 U.S. 707, 733 (2024), by singling out Defendants' views for disfavored treatment. The Supreme Court has held "in case after case" that this is constitutionally impermissible. *Id.* Government may not "license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992).

Adorning their hostility toward Defendants' views with the word "false" does not help Plaintiffs. As an initial matter, what the Complaint alleges is a difference of opinion about the effectiveness of recycling plastics, not actual falsity. *See* Defs. Mot. Dismiss 44–47, Dkt. 248

("Defs. Mot."). Whether a government agrees with speech is beside the point, but the federal government's alignment with Defendants' alleged views highlights the Complaint's contrived nature. The EPA, for example, lists plastics as a "common recyclable[ ]." EPA, *How Do I Recycle Common Recyclables* (Nov. 23, 2024), tinyurl.com/fke289h3. The FTC Green Guides permit marketing a product as recyclable when it "can be" "collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." FTC, *Guides for the Use of Environmental Marketing Claims* (Oct. 1, 2012), tinyurl.com/563t9nkh. And many states and municipalities have long promoted recycling of plastics in the same ways Plaintiffs say Defendants have. *Compare* Compl. ¶ 93 (attacking industry statements exhorting recycling), *with, e.g.*, New York City, *Mayor Bloomberg Launches New "Recycle Everything" Ads And Announces Expansion Of The Organic Food Waste Recycling Program* (July 29, 2013), tinyurl.com/c2ydtssu (describing New York City's "public information campaign" to "promote recycling" of "everything").

Even if the Complaint had alleged falsity, moreover, the Supreme Court has emphasized that "some error is inevitable" in "the forum of robust debate" that the First Amendment protects. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984). Because some "erroneous statement is inevitable in free debate," it "must be protected if the freedoms of expression are to have the breathing space that they need to survive." *New York Times*, 376 U.S. at 271–72 (1964) (cleaned); *see also Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 609 (2021) ("First Amendment freedoms need breathing space to survive." (cleaned)).

If the government could pierce First Amendment protections anytime it disagrees with a statement or thinks someone has said something misleading or untrue, those protections would be meaningless. Under our Constitution, the government does not stand as the arbiter of whether an

"idea" or "narrative" or "message" is "false." The "broad censorial power" the federal and state governments would hold under Plaintiffs' approach is "unprecedented in [the Supreme Court's] cases or in our constitutional tradition." *United States v. Alvarez*, 567 U.S. 709, 723 (2012) (plurality). Because "[o]ur constitutional tradition stands against the idea that we need [a] Ministry of Truth," *id.*, "[u]nder our Constitution there is no such thing as a false idea." *Bose Corp.*, 466 U.S. at 504 (cleaned). That is particularly true in "areas in which any attempt by the state to penalize purportedly false speech would present a grave and unacceptable danger of suppressing truthful speech," including "science." *Alvarez*, 567 U.S. at 751–52 (Alito, J., dissenting).

Indeed, there is not even a "general exception" to the First Amendment for "false statements" of fact. *Alvarez*, 567 U.S. at 718 (plurality). "The remedy for speech that is false is speech that is true." *Id.* at 727. "The response to the unreasoned is the rational; to the uninformed, the enlightened; to the straightout lie, the simple truth." *Id.* The values of "open, dynamic, rational discourse" "are not well served" when the government seeks to "orchestrate public discussion" by restricting speech that it considers untrue. *Id.* at 728. Even had the Complaint alleged false statements of fact (and it does not), the proper recourse for disagreement would be to express the disagreement—not to suppress Defendants' expression.

### C.    Plaintiffs' Theory Would Be Disastrous For The Speech Of All Americans

Ruling for Plaintiffs would have deleterious consequences, including consequences for the environmental values that Plaintiffs claim to be advancing. Foremost, the free marketplace of ideas would suffer because the resulting uncertainty would necessarily chill protected speech. *See, e.g.*, *Citizens United*, 558 U.S. at 335 (identifying "chilling effect" from enforcement risk); *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 794 (1988) (explaining that "the costs of litigation and the risk of a mistaken adverse finding by the factfinder" in state enforcement actions "necessarily chill speech").

8

Furthermore, there would be fewer companies willing to promote sustainability or discuss other important issues. If anything a business says about the policy implications of their product is unprotected, the safer course will be to say nothing at all. And, perversely, by dissuading businesses from publicly declaring their goals and values concerning environmental issues, a ruling for Plaintiffs could stymie progress on those very issues.

## II.    Public-Nuisance Law Does Not Permit Plaintiffs' Baseless And Dangerous Claim

The consensus view in this country is that the public-nuisance tort does not extend to the sale of lawful products. *See, e.g.*, *People by James v. PepsiCo, Inc.*, 222 N.Y.S.3d 907, 914 (N.Y. 2024) ("Essential to demonstrating the viability of a public nuisance claim is to show that the product in question is defective or unlawful."). Plaintiffs' revolutionary theory represents a new and dangerous species of super tort that is not limited to abating invasions of the public's use of shared resources like highways and waterways. It bears no resemblance to the public nuisances that courts have recognized in the centuries since the claim emerged at common law and ignores fundamental legal requirements like statutes of limitations and causation principles. It would do great damage not only to the law but also to the country's businesses, consumers, and economy.

### A.    Plaintiffs Are Following A Playbook Designed To Reinvent The Public Nuisance Tort As An Unbounded Super Tort

Plaintiffs' attempt to recast the tort of public nuisance is a radical departure from traditional public-nuisance law in this country. Going back more than 250 years of American jurisprudence— and all the way to English common law—public-nuisance law has enabled governments to force people to stop and abate unreasonable interferences with the public's rights to use public land, communal property, and waterways. *See* Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 743–47 (2003). Courts across the country have explained that nuisance cases concern the use or condition of the defendant's *property*, not products. *See,*

*e.g.*, *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 724, 730 (Okla. 2021) (public nuisance "has historically been linked to the use of land by the one creating the nuisance" and the "clear national trend to limit public nuisance to land or property use"); *In re Lead Paint Litig.*, 924 A.2d 484, 495 (N.J. 2007) ("essential to the concept of a public nuisance tort … is the fact that it has historically been linked to the use of land by the one creating the nuisance"); *State v. Lead Indus. Ass'n*, 951 A.2d 428, 456 (R.I. 2008) ("[p]ublic nuisance focuses on the abatement of annoying or bothersome activities," and "never before has been applied to products, however harmful"); *State ex rel. Jennings v. Purdue Pharma L.P.*, C.A. No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *12 (Del. Ch. Feb. 4, 2019) ("[P]ublic nuisance claims have not been recognized for products."). Allowing plaintiffs to pursue public-nuisance claims based on the promotion or sale of lawful products would vitiate the carefully crafted rules governing products-liability law.

But since the 1970s, aggressive advocates have tried—unsuccessfully but repeatedly—to transform public nuisance into a tool for requiring large businesses in general, rather than individual wrongdoers or society as a whole, to pay for downstream social harms associated with certain categories of products. *See* Victor E. Schwartz & Phil Goldberg, *The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort*, 45 Washburn L.J. 541, 547–48 (2006). Advocates have done so irrespective of whether third parties directly caused the harm or whether the business controlled the product when the harm occurred. Proponents of this effort believe that suing the actual individual wrongdoers that caused the harm would be inefficient, and that presumed deep-pocketed sellers can address societal ills on a macro scale, effectively functioning as insurers of society with regard to those ills. In these cases, the four elements of the public-nuisance tort cannot be satisfied with respect to companies that sell products. So, those

10

seeking to transform public nuisance have tried to change the tort's requirements.

The first act of this failed effort was trying to change the public-nuisance chapters of the Restatement (Second) when it was being drafted in hopes of breaking "the bounds of traditional public nuisance."  Denise E. Antolini, *Modernizing Public Nuisance: Solving the Paradox of the Special Injury Rule*, 28 Ecol. L.Q. 755, 838 (2001).  Among other points, nuisance advocates sought to change the notion of a public right to anything in the public interest, and to remove the wrongful conduct requirement entirely.  *Id*.  If successful, this would have been as radical as removing duty and breach from negligence.  The Restatement's authors rejected those transformational changes.

The advocates' first test in court also failed.  In *Diamond v. General Motors Corp*., 20 Cal. App. 3d 374 (1971), plaintiffs pursued businesses that sold products or engaged in activities that allegedly contributed to smog.  An appellate court dismissed the claims as inconsistent with the purpose and terms of nuisance law.  *See id*. at 645.  The court determined that the plaintiffs were improperly "asking the court to do what the elected representatives of the people have not done: adopt stricter standards over the discharge of air contaminants in this country, and enforce them with the contempt power of court."  *Id*.

The strategy of using public-nuisance law to try to circumvent products-liability and marketing laws intensified in the 1980s and 1990s.  *See* Gifford, 71 U. Cin. L. Rev. at 809 (observing changes sought by environmentalists "invite[d] mischief in other areas—such as products liability").  These cases targeted manufacturers of products that had inherent risks or could be used or misused in ways that created harm, including widespread harm.  *See, e.g., Johnson County, by and through Bd. of Educ. of Tenn. v. U.S. Gypsum Co*., 580 F. Supp. 284 (E.D. Tenn. 1984) (set aside on other grounds) (asbestos); *City of Bloomington v. Westinghouse Elec. Corp*.,

891 F.2d 611 (7th Cir. 1990) (PCBs); *State v. Am. Tobacco Co.*, 14 F. Supp. 2d 956 (E.D. Tex. 1997) (tobacco). Again, judges applied traditional public-nuisance principles and rejected this strategy. *See, e.g.*, *Tioga Pub. Sch. Dist. No. 15 of Williams County, N.D. v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) ("All of the courts" that considered the issue in the asbestos context "rejected nuisance as a theory of recovery.").

Reflecting the consensus trend, the Third Restatement rejected including product-related claims within nuisance law "because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue." Restatement (Third) of Torts § 8, cmt. G (2020). "Mass harms caused by dangerous products," the Third Restatement continued, "are better addressed through products liability, which has been developed and refined with sensitivity to the various policies at stake." *Id.* This is significant: even the modern Restatement—one of several Restatements that some have criticized as too reflective of its writers' policy preferences rather than the current state of the law, *see, e.g.*, *Kansas v. Nebraska*, 574 U.S. 445, 475–76 (2015) (Scalia, J., concurring in part)—recognizes that expanding public-nuisance law to lawful product sellers is "inapt."

In sum, in response to over 50 years of efforts to expand public nuisance to cover claims against product sellers, the nation's courts and leading commentators have largely spoken with clarity and uniformity: public nuisance does not extend to the lawful sale of products.

## B.    The Complaint Alleges Sale Of A Lawful Product And Fails To Plead Proximate Causation

This lawsuit is the latest testing ground for plaintiffs seeking to dodge legal standards and push public-nuisance liability beyond its historical bounds with meritless claims. The Complaint fails to plead public nuisance for at least two reasons.

*First*, the Complaint relies on the sale and promotion of lawful products. *See* Defs.' Mot. 33–36. Even if products could cause a nuisance (and they cannot), the Complaint does not cite

"any law or rule that imposes specific restrictions on reducing the use of plastics." *PepsiCo*, 222 N.Y.S.3d at 914. And "show[ing] that the product in question is defective or unlawful" is "[e]ssential to demonstrating the viability of a public nuisance claim." *Id.*

In many states, "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." *City of Norwalk v. City of Cerritos*, 99 Cal. App. 5th 977, 986 (2024) (quoting Cal. Civ. Code § 3482). This safe harbor recognizes that governments often manage public risks associated with products and services and that individuals, businesses, and other parties must not be deterred from following these government risk-avoidance measures. Therefore, when governments authorize, permit, or require certain conduct, that conduct—by definition—cannot be unreasonable for purposes of public-nuisance liability. Someone putting up jersey barriers to block a public road in protest may be causing a public nuisance, but if that same person puts up the same jersey barriers to repair the road under a government contract, the person cannot be liable. The same is true when companies follow government guidance on social, environmental, and other public matters.

In managing public risks associated with plastic packaging, federal and state governments have provided the guidelines under which manufacturer Defendants labeled their products as "recyclable" and promoted recycling to consumers. *See, e.g.*, Cal. Pub. Res. Code, § 42355.51(b), (c), (e). Such governments' pervasive involvement in regulating and indeed promoting recycling strongly supports the conclusion that the very actions targeted by Plaintiffs in this litigation are reasonable for purposes of public-nuisance liability.

*Second*, public nuisance requires proximate causation and does not allow plaintiffs to rely on the intervening acts of third parties. *See, e.g.*, *Lead Indus.*, 951 A.2d at 450–51 ("Causation is a basic requirement in any public nuisance action. … In addition to proving that [the] defendant is

the cause-in-fact of an injury, a plaintiff must demonstrate proximate caus[e].”); *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co*., 578 F. Supp. 3d 511, 546 (S.D.N.Y. 2022) (applying “what appears to be an … absolute rule”: if a product contributes to a nuisance after being sold, the seller is not liable unless it “controls or directs” the public-nuisance causing activity). Causation requirements “limit a person’s responsibility [to] the consequences of that person’s own acts.” *Holmes v. Sec. Inv. Prot. Corp*., 503 U.S. 258, 268 (1992).

Here, the Complaint relies on the intervening acts of third parties—consumers who break the law by littering. *See* Defs. Mot. 38–39. As one judge recently observed, “people continue to litter” even when there are “recycling bins everywhere.” *PepsiCo*, 222 N.Y.S.3d at 914. It is “the acts of others” who “buy [the manufacturers’] products and then, throw them in a nearby body of water” that cause the alleged nuisance. *Id*. And “[i]mposing civil liability on a manufacturer for the acts of a third party seems contrary to every norm of established jurisprudence.” *Id*. “It is not difficult to imagine the lengths prosecuting agencies would take this theory, if adopted.” *Id*.

Removing wrongful conduct and causation from public-nuisance doctrine would be as extreme as eliminating breach and causation from negligence doctrine. Doing so would lead to rudderless, potentially unlimited liability. Courts have accordingly recognized that there must be “a brake on any tendency in the courts to enjoin conduct and punish it with the contempt power under a standardless notion of what constitutes a ‘public nuisance.’” *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1107 (1997). As the Eighth Circuit explained, without those traditional limits, “[n]uisance … would become a monster that would devour in one gulp the entire law of tort.” *Tioga Pub. Sch. Dist.*, 984 F.2d at 921; *see also Detroit Bd. of Educ. v. Celotex Corp*., 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (allowing a nuisance claim in asbestos cases “would significantly expand, with unpredictable consequences, the remedies already available to persons injured by

products, and not merely asbestos products"); *Johnson & Johnson*, 499 P.3d at 727 ("[A] public right to be free from the threat that others may misuse or abuse prescription opioids—a lawful product—would hold manufacturers, distributors, and prescribers potentially liable for all types of use and misuse of prescription medications."). While "[t]he phrase 'opening the floodgates of litigation' is a canard often ridiculed with good cause," "here, it is applicable." *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 474 (S.D. W. Va. 2022).

Plaintiffs seek to use liability to impose policy preferences outside the checks and balances of the legislative process. If Plaintiffs want different recycling standards, funds to remediate packaging that is not recycled, or even a ban on various forms of plastic, they should direct these grievances to state legislatures or appropriate regulatory agencies. *See Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 366 (2017).

Plaintiffs' "theory has never been adopted by [any] court." *PepsiCo*, 222 N.Y.S.3d at 914. Plaintiffs' effort to rewrite public-nuisance law should be rejected, just like previous attempts.

## CONCLUSION

The Chamber respectfully requests that the Court grant Defendants' motions to dismiss.

September 10, 2025                              Respectfully Submitted,

                                               Jeremy J. Broggi (DC Bar. No. 1029427)
                                               (*pro hac vice* pending)
                                               WILEY REIN LLP
                                               2050 M Street, NW
                                               Washington, D.C.  20036
                                               Tel: (202) 719-7000
                                               Fax: (202) 719-7049
                                               JBroggi@wiley.law

                                               /s/ *Stephen R. McAllister*
                                               Stephen R. McAllister (KS Bar No. 15845)
                                               DENTONS US LLP
                                               4520 Main St., Ste. 1100
                                               Kansas City, MO 64111

Tel: (816) 460-2400
Fax: (816) 531-7525
Stephen.McAllister@dentons.com

*Counsel for the Chamber*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2025, a true and correct copy of this brief was filed and served electronically upon counsel of record registered with the Court's CM/ECF system.

/s/ *Stephen R. McAllister*
Stephen R. McAllister (KS Bar No. 15845)