UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BILLIE RODRIGUEZ, et al.

     Plaintiffs,

     v.                                        Case No. 2:25-cv-02195-TC-TJJ

EXXON MOBIL CORPORATION, et al.

     Defendants,

and

STATE OF KANSAS, *ex rel.*
KRIS W. KOBACH, Attorney General,

     Defendant-Intervenor

**PLAINTIFFS' RESPONSE TO BRIEF OF AMICUS CURIAE THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF <u>DEFENDANTS' MOTION TO DISMISS (Doc. 253)</u>**

## TABLE OF CONTENTS

ARGUMENT AND AUTHORITIES .................................................................................2

    I.    The First Amendment does not protect competitors in an industry
discussing "issues of concern" that artificially raise prices by collectively
lying to the public. .........................................................................................2

        A.    The false commercial speech about plastic recycling is not
protected.......................................................................................2

        B.    While the First Amendment prohibits government censoring, there
was no censoring here (as the speech was allowed and, because it
was a lie, is actionable) ................................................................4

    II.    Public Nuisance law permits product claims that proximately cause
damage to public property. ...........................................................................5

    III.    Proximate Cause is a fact issue. ..................................................................13

CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800-411-Pain Referral Service, LLC v. Otto,*
   744 F3.d 1045 (8th Cir. 2014) ................................................................................................. 4

*44 Liquormart, Inc. v. Rhode Island,*
   517 U.S. 484 (1996) .............................................................................................................. 5

*Arkansas v. Purdue Pharma,*
   2019 WL 1590064 (Ark. Cir. Ct. Apr. 5, 2019) ................................................................... 9

*Ashley County v. Pfizer, Inc.,*
   552 F.3d 659 (8th Cir. 2009) ............................................................................................... 8

*Boelter v. Hearst Comm., Inc.,*
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................................................ 3

*Central Hudson Gas & Elec. Co. v. Pub. Serv. Comm. Of New York,*
   447 U.S. 557 (1980) .............................................................................................................. 1

*City of Bloomington v. Westinghouse Elec. Corp.,*
   891 F.2d 611 (7th Cir. 1990) (applying Indiana law) ....................................................... 10

*City of Boston v. Purdue Pharma,*
   2020 WL 416406 (Mass. Super. Ct. Jan. 3, 2020) ............................................................. 9

*City of Cincinnati v. Beretta U.S.A. Corp.,*
   768 N.E.2d 1136 (Ohio 2002) ............................................................................................. 8

*City of Huntington v. AmerisourceBergen Drug Corp.,*
   609 F. Supp. 3d, 408 ................................................................................................... 13, 14

*City of Huntington v. AmerisourceBergen Drug Corp.,*
   915 S.E.2d 828 (W. Va. 2025) ............................................................................................ 7

*City of Huntington, W.Va. v. AmerisourceBergen Drug Corp.,*
   2025 WL 3009526 (4th Cir. Oct. 28, 2025) ........................................................... 6, 8, 13, 14

*Commonwealth v. Monsanto Co.,*
   269 A.3d 623 (Pa. Dec. 30, 2021) .................................................................................... 10

*ConAgra Grocery Prods. Co.,*
   227 Cal. Rptr. 3d 499 (Cal. Ct. App. 2017) ....................................................................... 9

*Fed. Trade Comm'n v. Affiliate Strategies, Inc.*,
  2010 WL 11470103 (D. Kan. June 8, 2010) ..........................................................3-4

*Hunt v. City of Los Angeles*,
  638 F.3d 703 (9th Cir. 2011) ................................................................................ 3

*In re National Prescription Opiate Litig.*,
  452 F. Supp. 3d 745 (N.D. Ohio 2020) ................................................................. 9

*In re Opioid Litig.*,
  2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) ................................................ 9

*Louderback v. Orkin Exterm, Co.*,
  26 F. Supp. 2d 1298 (D. Kan. 1998) (applying Kansas law)................................. 9

*Minnesota v. Purdue Pharma*,
  2019 WL 11729023 (Minn. Dist. Ct. Jan. 4, 2019) .............................................. 9

*New Hampshire v. Purdue Pharma*,
  2018 WL 4566129 (N.H. Super. Ct. Sept. 18, 2018) ............................................ 9

*New Mexico v. Purdue Pharma*,
  2022 WL 6822694 (N.M. Dist. Ct. June 15, 2022) ............................................... 9

*People v. Purdue Pharma L.P.*,
  2021 WL 7186146 (Cal. Super. Dec. 14, 2021) ................................................... 6

*Rhode Island v. Purdue Pharma*,
  No. PC-2018-4555, 2019 WL 3991963 (R.I. Super. Ct. Aug. 16, 2019)................... 9

*Rhode Island v. Purdue Pharma*,
  No. PC-2018-4555, 2022 WL 577874 (R.I. Super. Feb. 18, 2022)........................... 9

*San Francisco v. Purdue Pharma*,
  2022 WL 3224463 (N.D. Cal. Aug. 10, 2022) ...................................................... 9

*State ex rel. Hunter v. Johnson & Johnson*,
  499 P.3d 719 (Okla. 2021)................................................................................. 11

*State ex rel. Jennings v. Monsanto Co.*,
  299 A.3d 372 (Pa. 2023)................................................................................10-11

*United States v. Philip Morris USA Inc.*,
  449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part & vacated in part*,
  566 F.3d 1095 (D.C. Cir. 2009) (per curiam), *cert. denied*, 561 U.S. 1025 (2010) ................... 5

*United States v. United Foods, Inc.*,
  533 U.S. 405 (2001) ........................................................................................... 3

*Washington v. Purdue Pharma,*
    2018 WL 7892618 (Wash. Super. Ct. May 14. 2018) ................................................. 8

**Statutes**

15 U.S.C. §§ 7901-03 ......................................................................................................... 8

Cal. Pub. Res. Code § 42355.51 ................................................................................. 11-12

**Other Authorities**

W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen,
    *Prosser and Keaton on the Law of Torts*, § 86 (5th ed. 1984) .............................. 6, 7

Restatement (Second) of Torts, § 821B ............................................................... 7, 9, 11

Restatement (Third) of Torts, § 8 ...................................................................... 12-13

*The Perils and Promise of Public Nuisance,*
    132 Yale L.J. 702 (2023) ............................................................................................. 7

The Chamber offers inapplicable arguments that plainly have no basis here and should be ignored. The First Amendment is only used to prevent *government* restrictions on speech. Here, all consumer Plaintiffs are not government actors. That leaves only one Plaintiff, Ford County, which did not legislate any restrictions on speech at all. Rather, it seeks to hold defendants accountable for plastic pollution that defendants falsely claimed was recyclable. It is axiomatic that false advertising can both be regulated by the government (which is not sought here) and is actionable (which is sought here). The Chamber's First Amendment foray, though twisted and convoluted, has no application to this public nuisance pollution fraud case. Simply put, the First Amendment does not protect commercial speech (here advertising) that is false. *Central Hudson Gas & Elec. Co. v. Pub. Serv. Comm. Of New York*, 447 U.S. 557, 563-64 (1980) ("there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity"). 45 years later, that is still the law. Contrary to the Chamber's assertion, preventing Plaintiffs here and in similar public nuisance cases from the relief requested would chill the function of the legal system and allow unfettered corporate pollution.

Beyond the free speech arguments, the Chamber's public nuisance contentions fair no better against Ford County. "But for" Defendants conspiring to falsely claim that plastic was recyclable, there would have been less plastic sold that found its way into public landfills. The plastic recycling lie started at the top of the distribution chain with Defendants, so they are liable for its natural and foreseeable consequences. And all but one state applies public nuisance law to product marketing claims. As such, the Chamber's amicus brief is not persuasive and should not be considered by the Court when evaluating the Motion to Dismiss.

## ARGUMENT AND AUTHORITIES

I.    **The First Amendment does not protect competitors in an industry discussing "issues of concern" that artificially raise prices by collectively lying to the public.**

The Chamber begins with distortion. It selectively quotes the opening paragraph of the Amended Complaint to say that the case is about a "decision to promote [an] idea." Doc. 253 at 12. With that false premise, the Chamber launches into its tirade that "[u]nder the First Amendment, there is no such thing as a false idea." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)). But the first paragraph of the Amended Complaint really says: "This case is about Defendants' profit driven decision to promote the idea to the American consumer that plastics are recyclable and better for the environment, when in reality only a tiny fraction of plastics are ever recycled." In short, the case is not about an idea, it is about a lie. Specifically, falsely advertising that plastic can be recycled, when it can't.

The Chamber distorts again on page 2 of its brief; "Plaintiffs oppose . . . the merits of recycling." Doc. 253 at 13. Nope. Plaintiffs support the merits of recycling, just not lying about it. So, again, built on this false premise, the Chamber claims "Plaintiffs seek suppression of Defendants' speech on the bases of viewpoint." *Id.* Again, wrong, as Plaintiffs don't seek to suppress Defendants' speech, only hold Defendants accountable after they lied for decades.

A.    **The false commercial speech about plastic recycling is not protected.**

Defendants have not been sued for their "goals, views, and values on topics of public concern," Doc. 253 at 14, but for lying about plastic recycling. Defendants are not sued for setting goals on plastic recycling, their views (pro or con) on plastic recycling, or their values on plastic recycling—just lying about that plastic could be recycled when Defendants knew better. So, instead, the Chamber returns to its selective distortion that the case is about "ideas," of the Complaint again, and adding the word "messaging." Doc. 253 (citing Doc. 48 at ¶¶ 1, 154). But again, it is the lying and fraud that is at issue here as the First Amended Complaint plainly states:

> The Plastics Industry Association, with Exxon Mobil at the helm, seemingly continues to play an integral role in pushing the messaging that plastics are recyclable, as indicated by its website and companion site, recyclingisreal.com.

> Defendants, working in conjunction with these trade groups, have successfully worked for over 60 years to drive the demand for single-use plastics by misleading and defrauding the American public with the unfounded notion that plastics are recyclable.

Doc. 48 at ¶¶ 154-55 (footnote omitted). Contrary to the Chamber's selective distortions, almost too numerous to count, Plaintiffs are not attacking political speech, only what Defendants, and its mouthpiece association, lied about plastic recycling in order to sell more plastic at a higher price.

**What is commercial speech?** The Chamber hopes to blur the distinction between public concern speech and commercial speech. Commercial speech is "speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). Here the question is not close. All factors point to commercial speech:

> Where the facts present a close question, "strong support" that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation.

*Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983)) (brackets added).

Here, even though not all three factors need be met for commercial speech, all three *Bolger* factors are met and confirm the plastic recyclable lie was commercial speech. In short, "commercial speech does not become non-commercial—and thus less subject to regulation—because it may implicate matters of public concern." *Boelter v. Hearst Comm., Inc.*, 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016).

**Is commercial speech protected when it is misleading or a lie?** No. "It is well established that false or misleading commercial speech receives no protection under the First Amendment and may be regulated." *Fed. Trade Comm'n v. Affiliate Strategies, Inc.*, 2010 WL 11470103, at \*9 (D.

Kan. June 8, 2010); *see also 1-800-411-Pain Referral Service, LLC v. Otto*, 744 F3.d 1045, 1056

(8th Cir. 2014) (citing numerous Supreme Court cases); *Proctor & Gamble Co. v. Amway Corp*.,

242 F.3d 539, 557 (5th Cir. 2001) ("*Central Hudson, Bolger,* and *Zauderer*, combined with the

Court's plain statements that false commercial speech receives no protection") (citations omitted).

### B.     While the First Amendment prohibits government censoring, there was no censoring here (as the speech was allowed and, because it was a lie, is actionable)

The Chamber writes ad nauseum about censorship. But government censorship is not

involved here. Censorship is suppressing speech. Had Defendants' speech been suppressed, the

case would not exist. It is because the commercial speech was not suppressed *and* was a lie, that

the case even exists.

So, here again, the Chamber leads with some whoppers: "[T]his lawsuit seeks to skew the

debate by silencing one side." Doc. 253 at 17. Again, just the opposite. Plaintiffs do not seek to

skew the debate on plastic recycling or silence Defendants from participating—just do so without

lying to try to sell more plastic products.

Finally, in this censorship section, the Chamber tries to suggest that plastic recycling is *not*

false because (a) the EPA says plastic is a common recyclable; (b) the 2012 FTC Green Guides

supposedly permit marketing a product as recyclable if it "can be"; and (c) former NYC Mayor

Bloomberg promoted recycling "everything" in 2013. Plaintiffs dispute these assertions, especially

considering the EPA website says: "More than 35 million tons of plastics were generated in the

United States in 2018 and only 8.7 percent was recycled."[1] The FTC Green Guides § 260.12

Recyclable Claims would essentially preclude what Defendants did here.[2] And former NYC

---

[1] EPA, *How Do I Recycle Common Recyclables: Plastics*, available at
https://www.epa.gov/recycle/how-do-i-recycle-common-recyclables (accessed Nov. 4, 2025).
[2] § 260.12 (c) ("Marketers can make unqualified recyclable claims for a product or package if the
entire product or package, excluding minor incidental components, is recyclable.").

Mayor Bloomberg promoted recycling everything, but did not say plastic could in fact be recycled. In short, this would be a fact issue. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501 (1996) (the distinction between "truthful, nonmisleading commercial messages" and "misleading, deceptive, or aggressive practices" is not clear-cut). Here, the distinction is clear-cut enough for the litigation to continue, and it is unlikely the fact finder will have difficulty as well. Plaintiffs' theory (don't lie to increase sales and prices) would be the opposite of disastrous for the speech of all Americans.

Commercial speech happens every day, and is not chilled by requiring it to be true—or at least not demonstrably false. What would be disastrous is to allow Big Tobacco to conspire with its various associations to lie to the American public that smoking does not cause adverse health effects and is not addictive—when the opposite is true. *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part & vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009) (per curiam), *cert. denied*, 561 U.S. 1025 (2010). For Big Plastic to conspire with its associations to claim that plastic could be recycled—when the opposite is true, also cannot be allowed. Neither conspiracy, nor litigation to prove it, is immunized by the First Amendment.

## II.    Public Nuisance law permits product claims that proximately cause damage to public property.

The Amended Complaint does allege the sale of a lawful product (plastic) in an unlawful way (lying about its recyclability) which proximately causes a public nuisance. Doc. 48 at ¶¶ 205-16. Thus, it is actionable.

---

§ 260.12 (d) (If any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable.").

The Chamber's heading calls the public nuisance "dangerous." Doc. 253 at 20. But the rest of the amicus brief never uses the work "danger" to describe Plaintiffs' claims. The Chamber does, however, claim that the sky is falling if a public nuisance is allowed here by allowing the "opening the floodgates." Doc. 253 at 26 (citing *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d, 408. 474 (S.D. W. Va. 2022)). That case was unanimously reversed recently by the Fourth Circuit Court of Appeals. *See generally City of Huntington v. AmerisourceBergen Drug Corp.,* 2025 WL 3009526 (4th Cir. Oct. 28, 2025) (joining overwhelming majority of courts permitting opioid public nuisance claims).

By cutting snippets of law out of inapplicable cases and old defense-oriented law review articles,[3] the Chamber hopes to weave together a story about product liability and mass torts run amok. But this case is not about product liability. It does not allege plastic is illegal or defective. It is about false marketing,[4] and worse yet, a conspiracy to do so. Such false marketing, especially that resulting in environmental harm to public property, has long been upheld as a public nuisance. Nor is this case about mass torts, which are personal injury in nature. The public nuisance claim here is a garden variety type where defendants have adversely polluted public land and improperly filled public landfills with plastic that defendants jointly claimed were recyclable, but were not.

Public nuisance is a common law doctrine that has been around for centuries and evolves to protect public interests. W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, *Prosser and Keaton on the Law of Torts*, § 86, at 617-18, § 90 at 645 (5th ed. 1984); *see also* Leslie

---

[3] Doc. 253 at 9, 10, 22. (citing Denise E. Antolini, *Modernizing Public Nuisance: Solving the Paradox of the Special Injury Rule*, 28 Ecol. L.Q. 755 (2001); Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741 (2003); Victor E. Schwartz & Phil Goldberg, *The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort*, 45 Washburn L.J. 541 (2006)).

[4] *See People v. Purdue Pharma L.P.*, 2021 WL 7186146, at *11 (Cal. Super. Dec. 14, 2021) ("Nothing stated herein is intended to suggest that false or misleading marketing and promotion that results in medically inappropriate prescriptions being written may not constitute an actionable public nuisance. But that is not the evidence before this Court.").

Kendrick, *The Perils and Promise of Public Nuisance*, 132 YALE L.J. 702, 716-19 (2023) *and id.* at 702 ("Historically, public nuisance has long addressed problems such as harmful products."). Public nuisance protects public rights in public land, health, safety, and comfort; or, as set forth in the widely followed Second Restatement of Torts, published way back in 1979, § 821B(1) broadly defines a public nuisance as "an unreasonable interference with a right common to the general public." There are three recognized tests for determining whether "an interference with a public right is unreasonable" so as to constitute a public nuisance:

> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>
> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>
> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

*Id.* §§ 821B(2)(a)-(c). Since (b) is not applicable here, it is plausibly alleged that falsely claiming plastic was recyclable, to sell more than would ordinarily be sold, so plastic fills up more of a public landfill and causes environmental pollution as it degrades, is: (a) a significant interference with the public health or convenience; and/or (c) continuing in nature and defendants had reason to know it had a significant effect on a public right. Reasonableness for public nuisance is akin to determining negligence—it is a fact question. *City of Huntington v. AmerisourceBergen Drug Corp.*, 915 S.E.2d 828, 836 (W. Va. 2025) ("whether a nuisance exists is a factual issue").

Contrary to the Chamber's argument, public nuisance is not limited to defendant's use of its own land, rather it has long been held to reach activities that begin on defendant's land (bordellos, casinos, diseased animals, drug making and selling) that then go off of defendant's land and substantially interfere with a public interest. *Prosser and Keaton on the Law of Torts* § 86, at 617-18, § 90, at 645. This is such a case, plastic made on defendant's land or factory goes off

7

defendant's land and ends up in county landfills across the country. Defendants know it and develop contracts with downstream distributors so it is foreseeable. Defendants' goods have historically been the culprit of a public nuisance claim. This case is no different.

In the 1990s and early 2000s, public nuisance was applied to the sale and marketing of guns which naturally found their way to criminals and adversely impacted public safety. *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1141-42, ¶¶ 2-3 (Ohio 2002) (holding that a public nuisance claim against a gun manufacturer is a viable cause of action). Of course, guns and the sale of guns have a federal constitutional dimension that plastic does not have, so no surprise Congress in 2005 ended this by providing immunity. 15 U.S.C. §§ 7901-03. Plastic manufacturers have no such immunity.

Next up were suits against over-the-counter cold and allergy medications that could be cooked into meth. A group of Arkansas counties brought a viable public nuisance claim against the manufacturers. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009). Despite the Chamber lamenting that selling plastic is legal, so was selling cold and allergy medications over the counter. But the foreseeable economic externality adversely impacting the public was a proper lawsuit for abatement of the public nuisance. *Id*. at 670. However, the court found that proximate cause was lacking, *id*. at 671-72, which as shown below, is not here.

More recently, opioid manufacturers, middlemen, and pharmacies have been held liable for selling opioids. The most recent case to do so is *City of Huntington, W.Va. v. AmerisourceBergen Drug Corp.*, 2025 WL 3009526 (4th Cir. Oct. 28, 2025). West Virginia joined 24 other states holding that public nuisance law reaches opioid sales.[5] And 13 (now 14) of these

---

[5] Plaintiffs attach the orders and opinions addressing these conclusions as **Addendum.** *See Alabama v. Purdue Pharma*, slip op. 11-12 (Ala. Cir. Ct. 2019) (Add.1); *Alaska v. McKesson,* slip op. 4-7 (Alaska Super. Ct. 2019) (Add.26); *City of Surprise v. Allergan*, slip op. 34-36 (Ariz. Super. Ct. 2020) (Add.42); *Arkansas v. Purdue Pharma*, 2019 WL 1590064, at *3-4 (Ark. Cir. Ct. Apr. 5, 2019); *San Francisco v. Purdue Pharma*, 2022 WL 3224463, at *50 (N.D. Cal. 10, 2022);

25 states did so favorably citing Restatement (Second).[6] The Restatement (Second)[7] expressly

recognizes public nuisance law applies to the sale of products.[8]

Instead of discussing this overwhelming majority rule that applies public nuisance law to

product-based, especially product-based marketing, claims, the Chamber dwells on only seven

cases that it claims did not. Doc. 253 at 20-23 (citing *State ex rel. Hunter v. Johnson & Johnson*,

499 P.3d 719, 724, 730 (Okla. 2021); *In re Lead Paint Litig.*, 924 A.2d. 484, 495 (N.J. 2007); *State*

---

*Florida v. Purdue Pharma*, slip op. 3 (Fla. Cir. Ct. 2022) (Add.90) (denying summary judgment on nuisance); *In re National Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 773-75 (N.D. Ohio 2020) (Florida law); *Kentucky v. Walgreens Boots All.*, slip op. 2-4 (Ky. Cir. Ct. 2019) (Add.95); *City of Boston v. Purdue Pharma*, 2020 WL 416406, at *8 (Mass. Super. Ct. Jan. 3, 2020); *Michigan v. Cardinal Health*, slip op. 2 (Mich. Cir. Ct. 2021) (Add.114), *rev'g on recons.* (Mich. Cir. Ct. Nov. 17, 2020); *Minnesota v. Purdue Pharma*, 2019 WL 11729023, at *4 (Minn. Dist. Ct. Jan. 4, 2019); *Mississippi v. Cardinal Health*, slip op. 2-3 (Miss. Cir. Ct. 2021) (Add.117); *Missouri v. Purdue Pharma*, slip op. 6-8 (Mo. Cir. Ct. 2020) (Add.124); *Nevada v. McKesson*, slip order (Nev. Dist. Ct. 2020) (Add.141); *New Hampshire v. Purdue Pharma*, 2018 WL 4566129, at *13 (N.H. Super. Ct. Sept. 18, 2018); *New Mexico v. Purdue Pharma*, 2022 WL 6822694, at *1-2 (N.M. Dist. Ct. June 15, 2022) (summary judgment); *In re Opioid Litig.*, 2018 WL 3115102, at *27-28 (N.Y. Sup. Ct. June 18, 2018) ("New York Opioids"); *Cnty. of Delaware v. Purdue Pharma* (Pa. Ct. Com. Pl. Oct. 25, 2019, Dec. 4, 2019, and Mar. 13, 2020) (Add.149-183); *Rhode Island v. Purdue Pharma*, 2019 WL 3991963, at *7-9 (R.I. Super. Ct.), nuisance decision aff'd on summary judgment, 2022 WL 577874 (R.I. Super. Ct.); *South Carolina v. Purdue Pharma* (S.C. Ct. Com. Pl. 2018) (Add.184); *Tennessee v. AmerisourceBergen*, slip op. 7-9 (Tenn. Cir. Ct. 2020) (Add.187-197); *In re Texas Opioid Litig.* (Cnty. of Dallas) (Tex. Dist. Ct. 2019) (Add.198); *Vermont v. Cardinal Health*, slip op. 5-10 (Vt. Super. Ct. 2020) (Add.199); *Washington v. Purdue Pharma*, 2018 WL 7892618, at *2 (Wash. Super. Ct. May 14, 2018).

[6] *See Alabama*, supra, at 11-12; *Alaska, supra*, at 4 n.10; *Arizona, supra*, at 34-35; *Arkansas*, 2019 WL 1590064, at *3; *National Prescription Opiate Litig.*, 452 F. Supp. 2d at 773-74 (Florida law); *Kentucky, supra*, at 3; *Mississippi, supra*, at 2-3; *New Hampshire*, 2018 WL 4566129, at *13; *New Mexico*, 2022 WL 6822694, at *2; *New York Opioids*, 2018 WL 3115102, at *27; *Rhode Island*, 2019 WL 3991963, at *9; *Tennessee, supra*, at 7; *Vermont, supra*, at 5-8; *West Virginia* at 2025 WL 3009526 at *14 (citing Restatement (Second)).

[7] Although Kansas state courts have not specifically addressed the Restatement's application of public nuisance, District of Kansas cases have made such applications. *Louderback v. Orkin Exterm, Co.*, 26 F. Supp. 2d 1298, 1309-10 (D. Kan. 1998) (applying Kansas law) (citing Restatement (Second) of Torts, § 821B).

[8] *See* Restatement (Second) § 821B reporter's note (citing *Ileto v. Glock Inc.*, 349 F.3d 1191, 1209-12, 1214, 1224 (9th Cir. 2003) (guns); *City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d at 669, 672 (N.D. Cal. 2020) (opioids); *In re StarLink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 844, 848 (N.D. Ill. 2002) (genetically modified corn); *California v. ConAgra Grocery Prods. Co.*, 227 Cal. Rptr. 3d 499, 593, 594 (Cal. Ct. App. 2017) (lead paint).

*v. Lead Indus. Ass'n.*, 951 A.2d 428, 456 (R.I. 2008); *State ex rel. Jennings v. Purdue Pharma.*
L.P., C.A. No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *12 (Del. Ch. Feb 4, 2019);
*Johnson Co., by Bd. of Educ. Of Tenn v. U.S. Gypsum Co.*, 580 F. Supp. 284 (E.D. Tenn. 1984);
*City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611 (7th Cir. 1990) (applying Indiana
law); and *State v. Am. Tobacco Co.*, 14 F. Supp. 2d 956 (E.D. Tex. 1997)). All are easily
distinguished.

Tennessee and Texas state courts have subsequently affirmed the opioids public nuisance
theory rendering the old federal cases a nullity. *See supra* n.5. Likewise, Rhode Island has
subsequently recognized opioid public nuisance law. *Id.*

The Indiana federal case did not bar public nuisance claims for products entirely, instead
there was no showing that the manufacturer Monsanto had participated to any substantial extent
in the wrongdoing, only the downstream buyer, Westinghouse, had. Thus, Monsanto escaped the
case, and Westinghouse did not. *Bloomington*, 891 F.2d at 614. Here, however, Defendants had a
substantial hand in the recycling lie which led to the problem. *E.g.,* Doc. 48 at ¶¶ 70-75, 76-77,
84-86, 89-93, 96-97, 99-103, 150-54; *see also Commonwealth v. Monsanto Co.*, 269 A.3d 623,
650-53 (Pa. Dec. 30, 2021) (allowing public nuisance claim against Monsanto for PCBs when
properly pled that Monsanto had responsibility). And Delaware is the same as later case law shows:

> After reviewing the Restatement and the Delaware cases, we conclude that the State
> has stated a claim for public nuisance. At the outset, we are not persuaded, as the
> Superior Court found, that "product claims are not encompassed within the public
> nuisance doctrine." The most that can be gleaned from *Sills* and *Purdue Pharma* is
> that the statement in both cases about a "hesitancy" to recognize product-based
> public nuisance claims was unsupported. In *Patton*, the court specifically recog-
> nized that those who assist in carrying on a nuisance can be liable for nuisance. Fur-
> ther, historical examples abound of products that were held to create a public nui-
> sance. Those same cases do not support the notion that a defendant must have "con-
> trol of its product at the time of the alleged nuisance."
>
> The issue, therefore, is not whether a product is involved or whether the defendant
> exercised control of the product at the time of the alleged nuisance. Instead, the
> crux of the issue is: can a product manufacturer be held liable after a product it

> manufactures is sold to third parties whose activities release the product into the environment and cause a public nuisance? For the environmental-based public nuisance claim before us, Monsanto can be held liable when it substantially contributed to a public nuisance by misleading the public and selling a product it knew would eventually cause a safety hazard and end up contaminating the environment for generations when used by industry and consumers.

*State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 383 (Pa. 2023) (cleaned up).

That leaves just Oklahoma. The Oklahoma Supreme Court limited Oklahoma public nuisance law to either defendants committing a crime constituting a nuisance (not alleged here) or "causing physical injury to property" 499 P.3d at 724.[9] The latter is alleged here.

The Chamber wants to view this a regulation by litigation, but in a real sense, all torts are that when the actor has to pay for the actor's conduct that injures another or property of another. If there is not broad legislation or regulation which seeks to define the liability of the actor for his conduct, then it must be done by the courts until Congress steps in (as it did with gun liability).[10]

---

[9] The Oklahoma Supreme Court may have conflated private and public nuisance. Restatement (Second) § 821B cmt. h ("unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land"). No matter, as this case does involve public land.

[10] Notably, implied immunity or preemption is highly unlikely. That there are some plastic regulations in some states is not the same as immunity to lie about recyclability. Incredibly, the Chamber misleadingly cites Cal. Pub. Res. Code § 42355.51(b), (c), and (e). Doc. 253 at 24. But the Chamber does not cite the salient provision: "(a) A person shall not offer for sale, sell, distribute, or import into the state any product or packaging for which a deceptive or misleading claim about the recyclability of the product or packaging is made." And (d)(3) spells it out clearly, indicating well known problems with plastic recycling, and that plastic must be between 60-75% recyclable for it to be marketed as recyclable:

> (3) A product or packaging shall not be considered recyclable in the state unless the product or packaging meets all of the following criteria, as applicable:
>
> (A) For plastic packaging, the plastic packaging is designed to not include any components, inks, adhesives, or labels that prevent the recyclability of the packaging according to the APR Design® Guide published by the Association of Plastic Recyclers.

Industry, such as the Chamber, has multi-million dollar lobbyists to do exactly that—having failed, it cannot now come to this Court and insist that this Court refuse to do its job to hold the plastic industry accountable for the injury it has cause to consumers and to public entities. Until the Chamber or the plastic industry obtains Congressional immunity or a statutory safe harbor for marketing falsely (which is highly unlikely), it has to stand in court like all other persons whose actions cause harm.

The Chamber seeks solace in Restatement (Third) of Torts § 8, cmt G. that suggests that public nuisance may be "an inapt vehicle for addressing" harms related to products.[11] The Fourth Circuit rejected that argument:

---

(B) For plastic products and non-plastic products and packaging, the product or packaging is designed to ensure recyclability and does not include any components, inks, adhesives, or labels that prevent the recyclability of the product or packaging.

(C) The product or packaging does not contain an intentionally added chemical identified pursuant to the regulations implementing subparagraph (4) of subdivision (g) of Section 42370.2.

(D) The product or packaging is not made from plastic or fiber that contains perfluoroalkyl or polyfluoroalkyl substances or PFAS that meets either of the following criteria:

. . .

(4) Notwithstanding paragraphs (2) and (3), a product or packaging is recyclable in the state if the product or packaging has a demonstrated recycling rate of at least 75 percent, meaning that not less than 75 percent of the product or packaging sorted and aggregated in the state is reprocessed into new products or packaging.

[11] Little thought is given to this commentary. This is the sum total in the Restatement (Third) of Torts § 8, cmt. G: "Tort suits seeking to recover for public nuisance have occasionally been brought against the makers of products that have caused harm, such as tobacco, firearms, and lead paint. These cases vary in the theory of damages on which they seek recovery, but often involve claims for economic losses the plaintiffs have suffered on account of the defendant's activities; they may include the costs of removing lead paint, for example, or of providing health care to those injured by smoking cigarettes. Liability on such theories has been rejected by most courts, and is excluded by this Section, because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue. Mass harms caused by dangerous products are better addressed through the law

> In view of (1) West Virginia's broad definition of a public nuisance, (2) the lack of any decision by West Virginia's highest court limiting that definition with respect to product-based harms, and (3) the high court's admonition that "whether a nuisance exists is a factual issue," *City of Huntington*, 915 S.E.2d at 836, we reject the defendants' argument that, as a matter of law, a product-based harm cannot constitute a public nuisance.

*City of Huntington*, 2025 WL 3009526 at *11. This Court should take a similar course here.[12]

## III.    Proximate Cause is a fact issue.

Proximate cause is usually a fact issue. This case will be no exception.

Some courts in opioid cases found that factually some distributors could not be tied to the oversupply of opioids in the particular county. *City of Huntington*, 609 F. Supp. 3d at 480-81. That problem, however, will be solved by (a) starting at the origin of the plastic marketing lie—the manufacturers and (b) tying the manufacturers together in a conspiracy.

By starting with the originators of the plastic recycling marketing lie, the argument of downstream intervening causes or middlemen goes away.[13] And the conspiracy at the manufacturer level obviates the concern about whose plastic was it that landed in a particular county.

---

of products liability, which has been developed and refined with sensitivity to the various policies at stake."

[12] Further, Restatement (Third) of Torts § 8 has never been cited by a court applying Kansas law.

[13] "[A]n opioid manufacturer was not, as a matter of law, excluded from the chain of proximate causation in a products liability case simply because of the downstream acts of the prescribing doctors and the mothers who actually took the drugs." 2025 WL 3009526 at *18 (citing *A.D.A. v. Johnson & Johnson*, 251 W.Va. 274, 912 S.E.2d 37, 63-64 (W. Va. App. 2024)).

Whether the "but for" or the "substantial factor" causation test is used, it will be a fact question.[14] But for initiating the plastic recycling lie, it would not have been told or believed down the chain of distribution to the consumer, and certainly it was a substantial factor.[15]

## **CONCLUSION**

The First Amendment has nothing to do with this case. If plastic really is recyclable as Defendants have claimed, then Plaintiffs lose. If not, the lies are not protected commercial speech. The Chamber's amicus brief on this issue is not helpful to the Court and should be ignored.

Public nuisance law protects public rights. It does not matter how defendants injure public rights, just that defendants wrongful conduct can be traced to and proximately caused damages to the public right. Here, plastic is filling up public landfills, when it was not supposed to as marketed as recyclable by Defendants. That is a public nuisance. The Chamber's amicus brief on this issue is something that could have been raised, and was, by Defendants, so it only extends the briefing unnecessarily. In any event, it is wrong, and the almost unanimous majority rule on public nuisance should be followed.

---

[14] West Virgina applies the "but for" test. *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 475-76 (S.D. W. Va. 2022). California applies the substantial factor test so causation only need to be more than theoretical or negligible and can be inferred from circumstantial evidence. *City & County of San Francisco*, 620 F. Supp. 3d at 1002.

[15] Intervening cause is a different matter. Intervening cause is Defendants' burden of proof. *City of Huntington*, 2025 WL 3009526 at *19. And it is a heavy burden to show that the intervening cause is the sole cause of the harm. *Id*. (intervening cause "constitutes a new effective cause, and *operates independently of any other act*, making it and only it, the proximate cause") (emphasis in original) (citation to quoted decision omitted).

Dated: November 5, 2025.                    Respectfully submitted,

                                            */s/ Rex A. Sharp*
                                            Rex A. Sharp, KS #12350
                                            Isaac L. Diel, KS #14376
                                            W. Greg Wright, KS #18352
                                            Sarah T. Bradshaw, KS #26551
                                            Hammons P. Hepner, KS #29138
                                            SHARP LAW, LLP
                                            4820 W. 75th Street
                                            Prairie Village, KS 66208
                                            (913) 901-0505
                                            (913) 261-7564 Fax
                                            rsharp@midwest-law.com
                                            idiel@midwest-law.com
                                            gwright@midwest-law.com
                                            sbradshaw@midwest-law.com
                                            hhepner@midwest-law.com

                                            --and--

                                            Dave Rebein, KS #10476
                                            REBEIN BROTHERS, PA
                                            1715 Central Ave.
                                            Dodge City, KS 67801
                                            Tel: (620) 227-08126

                                            --and--

                                            Glenn I. Kerbs, KS #09754
                                            Samantha F. Sweley, KS #26833
                                            KERBS LAW OFFICE, LLC
                                            1715 Central Ave.
                                            Dodge City, KS 67801
                                            Tel: (620) 255-0238
                                            gkerbs@kerbslaw.com
                                            ssweley@kerbslaw.com

                                            *Attorneys for Plaintiffs*
                                            *and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 5, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Rex A. Sharp*
Rex A. Sharp
