# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BILLIE RODRIGUEZ, et al., | |
| *Plaintiffs*, | |
| v. | |
| EXXON MOBIL CORPORATION, et al., | **Civil Action No. 2:25-cv-02195-TC-TJJ** |
| *Defendants*, | |
| And | |
| STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General, | **ORAL ARGUMENT REQUESTED** |
| *Defendant-Intervenor*. | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' AND DEFENDANT-INTERVENOR'S MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

REPLY IN FURTHER SUPPORT OF THE MTD ON BEHALF OF ALL
DEFENDANTS ................................................................................................1

I.    PRELIMINARY STATEMENT ........................................................1

II.   PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING (ALL
      COUNTS) ...........................................................................................3

III.  PLAINTIFFS DO NOT STATE ANY ANTITRUST CLAIMS (COUNTS
      1, 18–40) ............................................................................................5

      A.   Plaintiffs Do Not Dispute That They Fail to Adequately Plead a
           Relevant Market, Which Requires Dismissal Under Binding Tenth
           Circuit Precedent...........................................................................5

      B.   Plaintiffs Fail to Allege Any Restraint of Trade ...........................6

      C.   Plaintiffs Fail to Adequately Allege an Anticompetitive Agreement..........7

      D.   Defendants' Alleged Conduct Is Immune Under *Noerr-Pennington* ........11

      E.   Plaintiffs Fail to Plead Antitrust Standing ..................................12

      F.   The State Antitrust Claims Fail for Independent Reasons.........................14

IV.   THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED (COUNT
      2) .......................................................................................................14

      A.   Ford County Cannot Represent Other Counties, Cities, and
           Municipalities ..............................................................................14

      B.   Ford County Does Not State a Public Nuisance Claim ..............15

V.    PLAINTIFFS DO NOT STATE CONSUMER FRAUD CLAIMS
      (COUNTS 3–17).................................................................................19

      A.   The AC Does Not Satisfy Rule 9(b) ............................................19

      B.   Plaintiffs Do Not Allege Any Actionable Deception ................22

VI.   PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM
      (COUNT 46) ......................................................................................26

VII.  STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS (ALL
      COUNTS) .........................................................................................27

CHEVRON U.S.A. INC.'S REPLY IN SUPPORT OF ITS MTD ..............................29

EASTMAN CHEMICAL COMPANY'S REPLY IN SUPPORT OF ITS MTD ........................32

    I.      PLAINTIFFS' RESPONSE CONFIRMS EASTMAN SHOULD BE
           DISMISSED ...............................................................................................32

           A.      Plaintiffs' Vague Allegations do not Put Eastman on Notice of its
                 Alleged Misconduct................................................................................32

           B.      Plaintiffs' Claims Against Eastman are Time-Barred ...............................33

AMERICAN CHEMISTRY COUNCIL, INC.'S REPLY IN SUPPORT OF ITS MTD ............34

DOW INC. AND DUPONT DE NEMOURS, INC.'S REPLY IN SUPPORT OF THEIR
MTD..........................................................................................................................36

    I.      PLAINTIFFS FAIL TO ESTABLISH ANY BASIS TO PROCEED
           AGAINST DOW INC...................................................................................36

    II.     PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION
           OVER DPNI ...............................................................................................36

           A.      Plaintiffs Cannot Establish Personal Jurisdiction Through Section
                 12...........................................................................................................36

           B.      Plaintiffs Cannot Establish Personal Jurisdiction Through
                 Conspiracy ............................................................................................38

KANSAS'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FORD COUNTY'S
IMPROPER CLASS ALLEGATIONS AND CLAIMS ...........................................................39

    I.      FORD COUNTY LACKS STANDING TO REPRESENT KANSAS'S
           QUASI-SOVEREIGN INTERESTS. ..........................................................39

    II.     FORD COUNTY LACKS STANDING TO REPRESENT KANSAS'S
           SOVEREIGN INTERESTS...........................................................................41

    III.    FORD COUNTY CANNOT USE ITS HOME RULE AUTHORITY TO
           TRAMPLE THE HOME RULE AUTHORITY OF OTHER KANSAS
           POLITICAL SUBDIVISIONS. ..................................................................43

    IV.    FORD COUNTY'S LACK OF STANDING IS RIPE *NOW*. ..............................44

    V.     CONCLUSION..........................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. J. Plastic Prods., Inc. v. Sandretto USA, Inc.*,
  2005 WL 8160315 (D. Kan. Feb. 28, 2005) ........................................................................19

*In re Air Cargo Shipping Servs. Antitr. Litig.*,
  2010 WL 10947344 (E.D.N.Y. Sept. 22, 2010) ..................................................................29

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
  458 U.S. 592 (1982)....................................................................................................40, 42

*Allied Tube v. Indian Head*,
  486 U.S. 492 (1988)....................................................................................................11, 12

*In re Aluminum Phosphide Antitr. Litig.*,
  905 F. Supp. 1457 (D. Kan. 1995)..........................................................................28, 29, 34

*Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*,
  710 F.2d 1449 (10th Cir. 1983) ........................................................................................38

*Appliance Recycling Ctrs. v. Jaco*,
  378 F. App'x 652 (9th Cir. 2010) ......................................................................................22

*Arizona v. Cook Paint*,
  391 F. Supp. 962 (D. Ariz. 1975) ........................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................31

*Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*,
  127 F.4th 178 (10th Cir. 2025) ......................................................................................5, 9

*Atchison, T. & S. F. Ry. Co. v. Armstrong*,
  80 P. 978 (Kan. 1905)................................................................................................15, 16

*In re Auto. Parts Antitrust Litig.*,
  50 F. Supp. 3d 836 (E.D. Mich. 2014)..................................................................................3

*In re Auto. Parts Antitrust Litig.*,
  2015 WL 14047405 (E.D. Mich. Apr. 30, 2015)..................................................................15

*In re Auto. Parts Antitrust Litig.*,
  29 F. Supp. 3d 982 (E.D. Mich. 2014)................................................................................14

*In re Auto. Refinishing Paint Antitr. Litig.*,
  358 F.3d 288 (3d Cir. 2004)..............................................................................................37

*Beer v. Bennett*,
  160 N.H. 166 (2010) ...................................................................................35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................. *passim*

*Bennett v. Spear*,
  520 U.S. 154 (1997)......................................................................................4

*Benton v. Cameco Corp.*,
  375 F.3d 1070 (10th Cir. 2004) .................................................................36

*Blume v. Meneley*,
  283 F. Supp. 2d 1171 (D. Kan. 2003)........................................................41

*Brody v. Bruner*,
  2024 WL 1912555 (10th Cir. May 1, 2024) ..............................................20

*Budicak, Inc. v. Lansing Trade Grp., LLC*,
  2020 WL 758801 (D. Kan. Feb 14, 2020) .................................................37

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
  706 F.3d 1231 (10th Cir. 2013) ...........................................................30, 33

*C1.G ex rel. C.G. v. Siegfried*,
  38 F.4th 1270 (10th Cir. 2022) ....................................................................5

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
  532 F.3d 1111 (10th Cir. 2008) ...................................................................5

*Cayman Expl. Corp. v. United Gas Pipe Line Co.*,
  873 F.2d 1357 (10th Cir. 1989) ...............................................................8, 9

*Chamanaeva v. Recontrust Co.*,
  2013 WL 655006 (D. Nev. Feb. 21, 2013) ................................................35

*Cherry v. Bd. of Cnty. Comm'rs of Crawford Cnty.*,
  446 P.2d 734 (Kan. 1968)...........................................................................18

*China Agritech v. Resh*,
  584 U.S. 732 (2018)....................................................................................43

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
  436 Mass. 53 (2002) ...................................................................................35

*City of Moundridge v. Exxon Mobil Corp.*,
  471 F. Supp. 2d 20 (D.D.C. 2007).............................................................43

*Classic Commc'ns v. Rural Tel. Serv.*,
  1997 WL 51419 (D. Kan. Jan. 30, 1997)...................................................12

iv

*Cnty. of Dorchester v. AT & T Corp.*,
  407 F. Supp. 3d 561 (D.S.C. 2019)..................................................................44, 45

*Copans Motors, Inc. v. Porsche Cars N. Am., Inc.*,
  2014 WL 2612308 (S.D. Fla. June 11, 2014) ...........................................................35

*Crane Const. Co. v. Klaus Masonry, LLC*,
  114 F. Supp. 2d 1116 (D. Kan. 2000)......................................................................32

*In re Credit Default Swaps Auction Litig.*,
  710 F. Supp. 3d at 941 ...........................................................................................38

*Crownalytics, LLC v. SPINS LLC*,
  2023 WL 3071192 (D. Colo. Apr. 25, 2023)..................................................9, 10, 11

*CST Indus. v. Tank Connection*,
  2024 WL 3360420 (D. Kan. July 9, 2024) ...............................................................12

*Curtis v. 7-Eleven, Inc.*,
  2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) .....................................................23, 24

*CVB, Inc. v. Corsicana Mattress Co.*,
  2024 WL 4505044 (D. Utah Oct. 16, 2024) ..........................................................7, 9

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005)....................................................................................36

*DeLong Equip. Co. v. Wa. Mills Abrasive Co.*,
  887 F.2d 1499 (11th Cir. 1989) ................................................................................6

*Dennis v. JPMorgan*,
  343 F. Supp. 3d 122 (S.D.N.Y. 2018)......................................................................13

*Diaz v. Farley*,
  215 F.3d 1175 (10th Cir. 2000) .................................................................................6

*E.R.R. Pres. v. Noerr Motor*,
  365 U.S. 127 (1961)................................................................................................12

*Earth Island Inst. v. Coca-Cola Co.*,
  321 A.3d 654 (D.C. 2024) .................................................................................25, 35

*Elson v. Black*,
  56 F.4th 1002 (5th Cir. 2023) .................................................................................45

*In re EpiPen*,
  336 F. Supp. 3d 1256 (D. Kan. 2018)......................................................................26

*In re EpiPen*,
  507 F. Supp. 3d 1289 (D. Kan. 2020)......................................................................11

*Equal Empl. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*,
   28 F.4th 136 (10th Cir. 2022) ................................................................31

*Foti Fuels, Inc. v. Kurrie Corp.*,
   90 A.3d 885 (Vt. 2013) .........................................................................35

*In re Fragrance Direct Purchaser Antitr. Litig.*,
   2025 WL 579639 (D.N.J. Feb. 21, 2025) ...............................................13

*Fuqua v. Santa Fe Cnty. Sheriff's Off.*,
   157 F.4th 1288 (10th Cir. 2025) ...........................................................45

*GDHI v. Antsel*,
   416 F. Supp. 3d 1189 (D. Colo. 2019) .................................................6, 7

*Geisler v. Don Hunt & Assocs., Inc.*,
   2012 WL 966119 (D. Kan. Mar. 21, 2012) ............................................21

*Gen. Steel v. Denver/Boulder BBB*,
   2009 WL 535780 (D. Colo. Mar. 2, 2009) .............................................17

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).............................................................................45

*George v. Urb. Settlement Servs.*,
   833 F.3d 1242 (10th Cir. 2016) ............................................................28

*Gibbons v. J. Nuckolls, Inc.*,
   216 S.W.3d 667 (Mo. 2007) .................................................................35

*Glenn v. Hyundai Mtr. Am.*,
   2016 WL 3621280 (C.D. Cal. June 24, 2016) .......................................26

*Grogan v. O'Neil*,
   292 F. Supp. 2d 1282 (D. Kan. 2003) ..................................................45

*Grossbaum v. Indianapolis-Marion Cnty.*,
   100 F.3d 1287 (7th Cir. 1996) ...............................................................4

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000).......................................................36, 37

*Hartwick v. D. Lodge 70, Intern. Ass'n of Machinists & Aerospace Workers*,
   184 F. Supp. 2d 1092 (D. Kan. 2001)...................................................29

*Herrera v. Espanola*,
   32 F.4th 980 (10th Cir. 2022) ..............................................................28

*Hodsdon v. Mars*,
   891 F.3d 857 (9th Cir. 2018) ...............................................................25

*Hosler v. Nationstar Mortg., L.L.C.*,
  2015 WL 134309 (D. Kan. Jan. 9, 2015) ........................................................29

*Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*,
  952 F.2d 1183 (10th Cir. 1991) ............................................................39, 40

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  516 F. Supp. 2d 324 (D. Del. 2007), *aff'd*, 602 F.3d 237 (3d Cir. 2010) ...............37

*Hunnicutt v. Zeneca, Inc.*,
  2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) ....................................................14

*Huntington v. AmerisourceBergen Drug Corp*,
  157 F.4th 547 (4th Cir. 2025) .........................................................................16

*Illumination Station, Inc. v. Cook*,
  2007 WL 4166215 (W.D. Ark. Nov. 20, 2007) .....................................................34

*Inception Mining, Inc. v. Mother Lode Mining, Inc.*,
  2025 WL 3204723 (D. Utah Nov. 17, 2025) ........................................................31

*Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,
  661 F. Supp. 2d 1039 (D. Minn. 2009) ...............................................................13

*James River Ins. Co. v. Rapid Funding, LLC*,
  658 F.3d 1207 (10th Cir. 2011) ........................................................................43

*James v. PepsiCo*,
  222 N.Y.S.3d 907 (Sup. Ct. N.Y. Cnty. 2024) ....................................................15

*Jamieson v. Vatterott Educ. Ctr.*,
  473 F. Supp. 2d 1153 (D. Kan. 2007) ...............................................................21

*Kelley v. Corr. Corp. of Am.*,
  750 F. Supp. 2d 1132 (E.D. Cal. 2010) ..............................................................45

*Keown v. Int'l Ass'n of Sheet Metal Air Rail Transp. Workers*,
  2024 WL 4239936 (D.D.C. Sept. 19, 2024) ........................................................34

*Kleen Prods. LLC v. Int'l Paper*,
  276 F. Supp. 3d 811 (N.D. Ill. 2017) .................................................................11

*State ex rel. Kline v. Unified Bd. Comm'rs, Unified Gov't Wyandotte Cnty./Kansas City*,
  277 Kan. 516 (2004) .......................................................................................41

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ...........................................................................37

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ...............................................................20, 21

*Kopel v. Kopel*,
    229 So. 3d 812 (Fla. 2017)................................................................................27

*Kostelecky v. Peas in a Pod LLC*,
    518 P.3d 840 (Mont. 2022) ..............................................................................35

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007)..................................................................................15

*Legacy Crossing, LLC v. Travis Wolff & Co.*,
    229 F. App'x 672 (10th Cir. 2007) ...................................................................28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................................18

*Lickteig v. Tri-Steel Structures, Inc.*,
    170 F. Supp. 2d 1158 (D. Kan. 2001) ..............................................................32

*Llacua v. W. Range Assn.*,
    930 F.3d 1161 (10th Cir. 2019) ................................................................ *passim*

*LLM v. Barbri*,
    271 F. Supp. 3d 547 (S.D.N.Y. 2017)..............................................................10

*LLW Enter., LLC v. Ryan*,
    2020 WL 2630859 (M.D. Fla. May 4, 2020) ...................................................35

*Lohman v. Daimler-Chrysler Corp.*,
    142 N.M. 437 (Ct. Ap. 2007)...........................................................................35

*Martinez v. Wexford Health Servs., Inc.*,
    2021 WL 1546429 (N.D. Ill. Apr. 20, 2021) .....................................................8

*Melea, Ltd. v. Jawer SA*,
    511 F.3d 1060 (10th Cir. 2007) ........................................................................38

*Mem'l Hosp. Ass'n, Inc. v. Knutson*,
    239 Kan. 663 (1986) .........................................................................................42

*Milman v. FCA*,
    2019 WL 3334612 (C.D. Cal. Apr. 15, 2019) ..................................................26

*Mohrl v. Nat'l Assoc. of Realtors*,
    492 F. Supp. 3d 768 (N.D. Ill. 2020) .................................................................8

*Mountain States Legal Found. v. Costle*,
    630 F.2d 754 (10th Cir. 1980) ....................................................................39, 42

*N. Laramie Range All. v. FERC*,
733 F.3d 1030 (10th Cir. 2013) ........................................................................5

*In re Nat'l Prescription Opiate Litig.*,
332 F.R.D. 532 (N.D. Ohio 2019) ...................................................................15

*Navajo Nation v. Dalley*,
896 F.3d 1196 (10th Cir. 2018) ......................................................................37

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) ......................................................................45

*Oakland v. BP*,
325 F. Supp. 3d 1017 (N.D. Cal. 2018) ..........................................................15

*Palmer v. Unified Gov't of Wyandotte Cnty./Kan. City*,
72 F. Supp. 2d 1237 (D. Kan. 1999) ...............................................................36

*Park Irmat v. Express Scripts*,
911 F.3d 505 (8th Cir. 2018) ..........................................................................10

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025) .....................................................................26

*Poznik v. Mass. Med. Prof'l Ins. Ass'n.*,
628 N.E.2d 1 (Mass. 1994) .............................................................................35

*In re Processed Egg Prods. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ................................................................8

*Rawson v. ALDI, Inc.*,
2022 WL 1556395 (N.D. Ill. May 17, 2022) ..................................................25

*R.J. Reynolds Tobacco Co. v. Eight Jud. Dist. Ct. in & for Cty. Of Clark*,
514 P.3d 425 (Nev. 2022) ...............................................................................35

*Renfro v. Champion Petfoods USA, Inc.*,
25 F.4th 1293 (10th Cir. 2022) ................................................................19, 22

*Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
340 F. Supp. 3d 285 (S.D.N.Y. 2018)............................................................33

*Riddell v. GM LLC*,
2024 WL 2077559 (E.D. Mo. May 9, 2024) ..................................................25

*Rodi v. S. New England*,
532 F.3d 11 (1st Cir. 2008)..............................................................................25

*Rumble, Inc. v. World Fed'n of Advert.*,
2025 WL 2345076 (N.D. Tex. Aug. 13, 2025).................................................37

*Satsky v. Paramount Commc'ns, Inc.*,
   7 F.3d 1464 (10th Cir. 1993) ............................................41

*In re Sch. Asbestos Litig.*,
   921 F.2d 1310 (3d Cir. 1990)............................................15

*Scheibe v. Esupplements*,
   681 F. Supp. 3d 1101 (S.D. Cal. 2023)............................25

*Schenker AG v. Societe Air France*,
   102 F. Supp. 3d 418 (E.D.N.Y. 2015) ...........................29

*Schulte v. Conopco, Inc.*,
   997 F.3d 823 (8th Cir. 2021) ...........................................35

*Series 17-03-615 v. Teva Pharms. USA, Inc.*,
   785 F. Supp. 3d 904 (D. Kan. 2025)................................36

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)..........................................................43

*Sharp v. United*,
   967 F.2d 404 (10th Cir. 1992) .........................................13

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) .................................38, 39

*Sky Jet M.G. Inc. v. VSE Aviation Srvs., LLC*,
   2025 WL 1676265 (D. Kan. June 13, 2025)....................27

*Smith v. Pizza Hut, Inc.*,
   2011 WL 2791331 (D. Colo. July 14, 2011) ...................14

*Sperry v. Crompton*,
   8 N.Y.3d 204 (2007) .........................................................27

*Spitzer v. Sturm*,
   761 N.Y.S. 2d 192 (N.Y. App. Div. 2003) .....................16

*In re StarLink Corn Products Liab. Litig.*,
   212 F. Supp. 2d 828 (N.D. Ill. 2002) .........................18, 19

*State v. Lead Indus. Ass'n, Inc.*,
   951 A.2d 428 (R.I. 2008)..................................................17

*State v. Swift & Co.*,
   127 Kan. 817 (1929) .........................................................41

*Swartz v. The Coca-Cola Co.*,
   2022 WL 17881771 (N.D. Cal. Nov. 18, 2022) .............23

*Supreme v. Arcelor*,
   238 F. Supp. 3d 1032 (N.D. Ill. 2017) .................................................................14

*In re Syngenta AG MIR 162 Corn Litig.*,
   131 F. Supp. 3d 1177 (D. Kan. 2015) ..................................................................18

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) .............................................................................7

*Taylor v. JBS Foods USA*,
   2025 WL 102450 (D.S.D. Jan. 15, 2025) .............................................................13

*That v. Alders Maint. Ass'n.*,
   206 Cal. App. 4th 1419 (2012) ............................................................................35

*Thiebaut v. Colo. Springs Utils.*,
   455 F. App'x 795 (10th Cir. 2011) ......................................................................40

*Tobler v. 1248 Holdings, LLC*,
   2025 WL 89052 (D. Kan. Jan. 14, 2025)...........................................................7, 33

*Tucker v. Gen. Motors*,
   58 F.4th 392 (8th Cir. 2023) ...............................................................................26

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
   964 F.2d 1022 (10th Cir. 1992) ...........................................................................13

*U.S. v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ...........................................................................12

*Underwager v. Salter*
   22 F.3d 730 (7th Cir. 1994) ................................................................................12

*United States v. Hopson*,
   150 F.4th 1290 (10th Cir. 2025) ..........................................................................37

*Wenz v. Memery Crystal*,
   55 F.3d 1503 (10th Cir. 1995) .........................................................................38, 39

*White v. Thompson*,
   691 S.E.2d 676 (N.C. 2010).................................................................................35

*White v. Volkswagen*,
   2013 WL 685298 (W.D. Ark. Feb. 25, 2013).......................................................25

*Wilkinson v. D&M Energy Assocs.*,
   2022 WL 1321526 (D.N.M. May 3, 2022) ...........................................................38

*Wilson v. Safelite*,
   930 F.3d 429 (6th Cir. 2019) (Thapar, J., concurring)............................................4

*Wright v. Craft,*
    640 S.E. 2d 486 (S.C. Ct. App. 2007)........................................................35

*U.S. ex rel. Wynne v. Blue Cross & Blue Shield of Kansas, Inc.,*
    2006 WL 1064108 (D. Kan. Apr. 21, 2006)..............................................21

*Zetor N. Am., Inc. v. Rozeboom,*
    2018 WL 3865411 (W.D. Ark. Aug. 14, 2018)..........................................35

**Statutes**

15 U.S.C. § 22 .................................................................................................37

Areeda & Hovenkamp, *Antitrust Law* ...........................................................37

K.S.A. 19-101 ...........................................................................................42, 44

K.S.A. 19-247(f) .............................................................................................40

K.S.A. 19-702(a) .............................................................................................40

K.S.A. 19-723 .................................................................................................44

K.S.A. 60-908 ...........................................................................................41, 42

K.S.A. 75-702(a) .............................................................................................41

Kan. Stat. § 65-3401(e) ...................................................................................16

Kan. Stat. § 65-3402(r) ...................................................................................16

**Other Authorities**

16 CFR § 260.12 ..............................................................................................24

Restatement (Second) of Torts § 821B ...........................................................17

<u>**REPLY IN FURTHER SUPPORT OF THE MTD ON BEHALF OF ALL DEFENDANTS**</u>

**I.    <u>PRELIMINARY STATEMENT</u>**

Plaintiffs' Opposition fails to connect the alleged manufacture and sale of resin pellets by some Defendants and alleged decades-old statements promoting recycling to Plaintiffs' purported harms of increased output and price of end-user plastic products.[1] Plaintiffs do not allege that the resin pellets that certain Defendants manufacture and sell are not recyclable. Nor do Defendants have any control over the use of resin pellets once those pellets enter the multi-level distribution chain. It is thus unsurprising that Defendants are not alleged to have made any statements regarding the recyclability of the end-user products Plaintiffs purportedly purchased. Rather, the AC alleges that Defendants merely promoted recycling consistent with pervasive recycling mandates and endorsements by governments and countless third parties. These statements are also protected by the *Noerr-Pennington* doctrine.

Given this, Plaintiffs come nowhere close to alleging the basic requirements for pleading any of the claims. Selling plastic is lawful, as is encouraging recycling. Increasing output does not restrain trade but is pro-competitive. And promoting recycling does not create any actionable nuisance or defraud any consumer—particularly in a case like this one where the statements at issue are so far removed in time and space from consumers' purchasing decisions and the numerous third parties engaged in making and disposing of end-user products. The AC should be dismissed in its entirety with prejudice.

***First***, Plaintiffs' claims all fail because the Opposition does not connect Plaintiffs' purported harm to the alleged Challenged Statements and thus does not establish Article III standing. The AC does not plausibly allege consumers purchased plastic goods because of the Challenged Statements, as opposed to consumer preference. End-user products also are not

---

[1] All defined terms have the same meaning as set forth in the MTD, unless otherwise provided.

recycled for any number of reasons: downstream third parties incorporate non-recyclable additives into the goods when making the end-user product, governments fail to invest in recycling, and consumers frequently choose to just throw products away instead of recycling—none of which has anything to do with Defendants.

*Second*, the Antitrust Claims fail for several reasons. Sherman Act Section 1 prohibits agreements among competitors that restrain trade and have negative effects on competition, e.g., reduced output or fixed prices, which courts assess only in the context of properly defined relevant markets. The Opposition makes clear Plaintiffs do not plausibly allege the basic elements of Section 1. Plaintiffs essentially concede they have alleged no facts supporting their alleged market, which alone is dispositive under recent Tenth Circuit precedent. They have not alleged any facts about which Defendants entered any alleged conspiracy, how, or when, which again is dispositive. They double down on their theory of anticompetitive effects from increased output, but increased output is a quintessential procompetitive effect recognized by antitrust law; it does not restrain trade, even if it allegedly results from false statements. And not only is the advocacy of recycling constitutionally immune, it is not the type of speech that can give rise to an antitrust claim.

*Third*, the public nuisance claim fails because Defendants *lawfully* sold a *lawful* product, which the Tenth Circuit has held does not constitute a nuisance. Plaintiffs' attempts to analogize Defendants' alleged conduct to the illegal diversion of opioids is inapposite. Further, Ford County's claim fails as it cites no authority for its ability to represent other government entities.

*Fourth*, the Consumer Fraud Claims fail because Plaintiffs do not plead these claims with the requisite particularity and are unable to plausibly allege the few decades-old Challenged Statements misled them into purchasing plastic products. Indeed, the Opposition ignores a fundamental distinction—the Challenged Statements relate only to the recyclability of plastics, but say nothing about whether specific end-use plastic products *will* ultimately be recycled.

**Fifth**, the AC's inability to allege both a benefit conferred on Defendants and the absence of a legal remedy defeats Plaintiffs' unjust enrichment claim.

**Finally**, fraudulent concealment and equitable tolling cannot save Plaintiffs' time-barred claims, as the Opposition does not identify any plausible allegations to support these doctrines.

## II.     PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING (ALL COUNTS)

Ignoring that Defendants do not actually market or sell plastic products to consumers, Plaintiffs claim that a handful of decades-old statements "direct[ly] cause[d]" consumers to purchase more plastic at higher prices. Opp. 8–10. But Plaintiffs have not alleged facts sufficient to establish that their purported injury is traceable to Defendants, as Article III demands.

As an initial matter, Plaintiffs' assertion that the alleged price premium and public nuisance are traceable to Defendants' statements is based on a highly attenuated causal chain that heaps unwarranted inference upon unwarranted inference. It is implausible that any consumer purchased plastics because of Defendants' statements—none of which Plaintiffs claim to have seen or relied upon. As Plaintiffs concede, consumers' purchasing decisions are tied to a variety of reasons, including the quality of the product itself. AC ¶¶ 63–65. Plaintiffs themselves identify one of those many reasons: the ongoing and ubiquitous promotion of recycling by the government and countless third parties. *See id.* ¶ 115. Indeed, Plaintiffs admit government action "create[ed] the [supposed] nuisance of plastic waste." *See* Opp. 37–38. And if anything, promoting recycling should lead to less pollution, and thus help combat the purported public nuisance. *See* MTD 37.

Further, demand and price for plastic products are determined by intervening actors in the supply chain. Plaintiffs rely on *In re Auto. Parts*, Opp. 11, to argue there is an "inextricable link" between Defendants' resins and downstream markets. There, the complaint "detail[ed] how [the product] follow[ed] a traceable path through the distribution chain and that overcharges . . . were passed through that distribution chain." 50 F. Supp. 3d 836, 851 (E.D. Mich. 2014). In contrast,

here, Plaintiffs make no attempt to describe the supply chain. Nor do Plaintiffs assert Defendants overcharged their actual customers or plausibly allege that the price of end-use plastic products rose, let alone how or why such an increase was attributable to Defendants.[2] Rather, the Opposition asserts—without any support—"Defendants cannot flood the market with products they know are unrecyclable" and then "disclaim responsibility." Opp. 12. But Defendants sell resins—not end-use consumer products, which are what Plaintiffs claim increased in price and output.

Plaintiffs attempt to mask these problems by arguing that Defendants "set in motion a chain of events" foreseeably leading to their injury. Opp. 12. But Plaintiffs' primary support for this proposition, *Bennett v. Spear*, plainly reaffirms that injury which is the "result of . . . independent action" is insufficient to establish the traceability required by Article III. 520 U.S. 154, 168–70 (1997). In *Bennett*, a government agency issued an opinion that determined a second agency's action, which in turn injured plaintiffs. Had the second agency deviated from the first agency's opinion, it would have potentially subjected itself to fines and imprisonment. *Id*. at 168–70. Thus, the Court determined plaintiffs' harm was "fairly traceable" to the first agency because it had a "powerful coercive" and "virtually determinative effect" on the second agency. *Id.*

That is an extraordinarily high bar—and one Plaintiffs have not met. Defendants' alleged conduct did not *coerce* consumers, plastics manufacturers, or governments into doing anything. Governments act "for a multiplicity of reasons," and "we simply cannot know which of those varied reasons should control." *Grossbaum v. Indianapolis-Marion Cnty.*, 100 F.3d 1287, 1293 (7th Cir. 1996); *Wilson v. Safelite*, 930 F.3d 429, 439 (6th Cir. 2019) (Thapar, J., concurring). Even

---

[2] Plaintiffs misconstrue Defendants' arguments on injury-in-fact. *See* Opp. 8–9. The crux of Defendants' argument is not that "overpayment" is not a concrete injury, but that the AC fails to allege (i) who implemented any price increase: Defendant-resin manufacturers or downstream non-party manufacturers; and (ii) how a conspiracy to "drive up[] the demand for plastics," *id.* 8, even if one existed, would plausibly lead to supracompetitive prices under conventional economic theory, especially as supply rises to meet the demand. MTD 9–10. Plaintiffs ignore these points.

assuming *arguendo* Defendants influenced government action and other third-party action, the AC does not plausibly allege Defendants did so with a "virtually determinative effect." *Id.*[3] It is thus unsurprising that Plaintiffs cite no authority for their novel theory that *private* entities can be sued for actions they allegedly convinced the *government* and other *third parties* to take.

## III.    PLAINTIFFS DO NOT STATE ANY ANTITRUST CLAIMS (COUNTS 1, 18–40)

### A.    Plaintiffs Do Not Dispute That They Fail to Adequately Plead a Relevant Market, Which Requires Dismissal Under Binding Tenth Circuit Precedent

The law in this Circuit is clear: in rule of reason cases, where a complaint "fails to plausibly allege a relevant market, dismissal is warranted."[4] *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 189 (10th Cir. 2025). While Defendants explained in detail that Plaintiffs have not adequately pled a relevant market, MTD 20–22, Plaintiffs neither respond to that argument nor explain why their alleged market is sufficient. In fact, the words "relevant market" appear *just once* in their 89-page Opposition, in a case-cite parenthetical addressing causation and having nothing to do with the sufficiency of the relevant market. Opp. 16. Plaintiffs' failure to defend the legal adequacy of their relevant market allegations alone warrants dismissal. *C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022).

The reason Plaintiffs do not attempt to defend their relevant market allegations is self-evident: a complaint that fails to address the reasonable substitutability of products cannot plausibly establish a relevant market. *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118–19 (10th Cir. 2008) (holding "the relevant market is legally insufficient and a motion to

---

[3] Promoting recycling and enacting related mandates is completely within the government's "unfettered" discretion. *N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1035 (10th Cir. 2013).

[4] Unless plaintiffs allege a restraint of trade that is *per se* anticompetitive, they must plausibly allege a relevant market "because it provides the framework against which economic power can be measured." *Ass'n of Surgical Assistants*, 127 F.4th at 186–87. Plaintiffs here do not allege conduct that is *per se* unlawful, nor argue that they have done so. Plaintiffs also do not dispute that they must plausibly plead a relevant market in this case.

dismiss may be granted" where plaintiff fails to define a proposed market referencing the rule of reasonable interchangeability). Here, Plaintiffs' alleged market for "plastic products for end use consumption," AC ¶ 177, fails because Plaintiffs do not allege that all products within the supposed market are substitutable for one another, or that products outside of the supposed market are not substitutable for those in it. Indeed, Plaintiffs make no substitutability allegations at all. MTD 20–21. This failure is fatal to Plaintiffs' Antitrust Claims, and Plaintiffs do not argue otherwise.

## B.    Plaintiffs Fail to Allege Any Restraint of Trade

In their Opposition, Plaintiffs double down on their theory that there was a "restraint" on competition because Defendants' alleged misrepresentations that plastic can be recycled "spurred more demand, production, and purchase of plastics."[5] Opp. 17. But the AC does not allege diminished competition in any market in which Defendants' plastic resin is sold. Plaintiffs allege Defendants made statements that increased demand for certain products, and output and price increased with demand, but cite no case holding it is an antitrust law violation to increase demand and output. Rather, increased output—even if caused by allegedly false statements promoting products—is an indication that competition *increased*. *Diaz v. Farley*, 215 F.3d 1175, 1183 (10th Cir. 2000) (no restraint where agreements "ma[d]e the markets more competitive").

Statements that spur greater demand and output do not restrain trade and thus cannot violate the antitrust laws. Indeed, "false statements 'set the stage for competition,'" *GDHI v. Antsel*, 416 F. Supp. 3d 1189, 1202 (D. Colo. 2019). Plaintiffs fail to cite a single case holding otherwise, and their attempts to distinguish Defendants' cases are unavailing. Plaintiffs argue *GDHI* is "irrelevant" because its restraint-of-trade analysis concerned a claim under Section 2, not Section

---

[5] Plaintiffs also suggest that "demand for these materials" would have been "far weaker" absent the alleged misrepresentations, Opp. 17, but Plaintiffs make no factual allegations in the AC to support this theory. Plaintiffs cite—without explanation—*DeLong Equip. Co. v. Wa. Mills Abrasive Co.*, 887 F.2d 1499 (11th Cir. 1989). But *DeLong* involved evidence that the defendants had "fix[ed] the price" of metal products. *Id.* at 1508. No comparable allegations exist here.

1. Opp. 18. But the court's analysis also concerned a Section 1 claim, and the court explained that "demonstrably false commercial speech is not actionable under the antitrust laws." *GDHI*, 416 F. Supp. 3d at 1202 (holding plaintiff cannot "bring an antitrust claim based on false advertising" under both Section 1 and Section 2). Plaintiffs' reliance on *Arizona v. Cook Paint*, 391 F. Supp. 962 (D. Ariz. 1975), is misplaced. The court rejected an alleged "conspiracy of false advertising to support a Section 1 claim" but Plaintiffs nevertheless argue that *Cook* "suggested" Plaintiffs' own theory should "survive." Opp. 18. But *Cook* confirms that the notion that an industry-wide "misrepresentation" conspiracy "suppressed competition . . . is simply untenable." 391 F. Supp. at 969. Here, Plaintiffs allege the statements increased output (a hallmark of competitive market), with no allegation that Defendants agreed to refrain from price competition when meeting demand.

### C.  Plaintiffs Fail to Adequately Allege an Anticompetitive Agreement

As explained in Defendants' MTD, the AC is devoid of the required "specific factual allegations" as to each Defendant that plausibly supports the existence of an anticompetitive agreement in restraint of trade, as required to bring a Section 1 antitrust claim. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006); *Llacua v. W. Range Assn.*, 930 F.3d 1161, 1176 (10th Cir. 2019).

#### 1.  Group Pleading Is Insufficient Without Defendant-Specific Allegations

Courts within the Tenth Circuit, including in this District, consistently hold that "[g]roup pleading will not survive a motion to dismiss when a court 'cannot tell which defendant is alleged to have done what, nor . . . tell what the misconduct was.'" *Tobler v. 1248 Holdings, LLC*, 2025 WL 89052, at *4 (D. Kan. Jan. 14, 2025). Without allegations of "who is alleged to have done what to whom," there is no "fair notice" to "each individual [defendant] as to the basis of the claims against [them]." *CVB, Inc. v. Corsicana Mattress Co.*, 2024 WL 4505044, at *4 (D. Utah Oct. 16, 2024); MTD 12. This is especially true given the allegations here cover numerous distinct entities across a span of 50 to 60 years. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007).

Plaintiffs' argument that they need not "plead each defendant's involvement in the alleged conspiracy in elaborate detail," Opp. 24, misses the point. Far from elaborate detail, Plaintiffs fail to even plausibly "allege[] that each individual defendant joined the conspiracy and played some role in it." *Id.* (citing *Mohrl v. Nat'l Assoc. of Realtors*, 492 F. Supp. 3d 768, 777 (N.D. Ill. 2020)). Plaintiffs merely assert that certain Defendants produce certain plastic materials, are involved in the plastics industry, or are members of an industry trade association, *e.g.*, AC ¶¶ 25, 26, 28, 32, 33, 90, but these allegations do not suffice to plead a conspiracy. *Llacua*, 930 F.3d at 1180–81.

Rather than alleging false statements made by each Defendant, Plaintiffs seek to build their Antitrust Claims on "industry communications" they attribute to "Defendants" collectively. Opp. 22. The cases Plaintiffs cite do not permit such group pleading in antitrust cases. *Id.* at 25 (citing Section 1983, not antitrust, cases); *Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011); *Martinez v. Wexford Health Servs., Inc.*, 2021 WL 1546429, at *3 (N.D. Ill. Apr. 20, 2021). Plaintiffs also cite certain Defendants' mere membership in trade associations, Opp. 24–25, but do not even attempt to tie these allegations to the "who, what, where, when" of an *alleged conspiracy*, as they are required to do. *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989). Because Plaintiffs have failed to allege the nature and extent of *each Defendant's* involvement in the supposed conspiracy, the Court should not permit their Antitrust Claims to proceed past the pleading stage and into discovery. *Twombly*, 550 U.S. at 545–46.

2.    Plaintiffs Do Not Adequately Allege an Unlawful Agreement to Restrain Trade

Apart from Plaintiffs' failure to plead each Defendant's role in the conspiracy, they do not sufficiently plead the existence of a conspiracy at all, either through direct or circumstantial evidence (as they are required to do).[6] MTD 12–18. As to direct evidence, Plaintiffs claim that

---

[6] Plaintiffs claim that "pragmatically," evidence cannot be "neatly sorted into two categories," "direct" and "circumstantial," and "[c]ategorizing such evidence as direct or circumstantial is

"Defendants demand a smoking gun." Opp. 25. That is exactly what is required—facts that require no inferences at all. *Llacua*, 930 F.3d at 1178. To be sure, circumstantial evidence may plausibly imply the existence of an anticompetitive agreement if the AC "contain[s] sufficient factual allegations to allege both parallel conduct and . . . 'plus factors.'" *Crownalytics, LLC v. SPINS LLC*, 2023 WL 3071192, at *6 (D. Colo. Apr. 25, 2023). But Plaintiffs fail to plead either.

a.      Plaintiffs Do Not Allege Parallel Conduct

Plaintiffs claim they have alleged parallel conduct, pointing only to conclusory group allegations that "Defendants, their trade associations, and co-conspirators began to promote recycling of plastics around the same time." Opp. 21. But the complaint must "identify the alleged conspirators, when or how they functioned, or the nature and extent of [each defendant's] participation in the alleged conspiracy." *Cayman Expl.*, 873 F.2d at 1361. In *CVB*, the court determined that allegations of public statements by some (but not all) defendants do not sufficiently establish parallel conduct. 604 F. Supp. 3d at 1295. Here, Plaintiffs fail to allege that all Defendants promoted plastics recycling. The only similar conduct they allege, at best, is that Defendants conduct business in the plastics industry and join similar trade groups.

Moreover, Plaintiffs ignore that the supposed allegations of parallel conduct lack the requisite "temporal proximity." MTD 14. While Plaintiffs claim Defendants and others began promoting plastics "around the same time," Opp. 21, the AC tells a different story. For example, Plaintiffs allege statements made at a conference in 1956 drove Defendants to conspire to promote plastics recycling in the 1970s. Opp. 2. Putting aside the implausibility of a theory that a conference in the 1950s led parties to conspire sometime in the 1970s, there are no allegations as to the specific time that the alleged agreement began. *Surgical Assistants*, 127 F.4th at 190 ("The *Twombly* Court

unnecessary at this stage." Opp. 19–20. But the Tenth Circuit is clear that a plaintiff must adequately plead a conspiracy through one or the other, and Plaintiffs' claim to the contrary merely reflects their inability to plead the conspiracy through either standard. *Llacua*, 930 F.3d at 1177.

was particularly critical of complaints that mentioned no specific time, place, or person."). Even

if Defendants' conduct occurred "within a few years of one another," Opp. 21, courts hold such

timeframes are too disparate to constitute parallelism. *Park Irmat v. Express Scripts*, 911 F.3d 505,

516–17 (8th Cir. 2018) (failure to plead parallel conduct where alleged conduct occurred six

months apart); *LLM v. Barbri*, 271 F. Supp. 3d 547, 577–79 (S.D.N.Y. 2017).

b.    <u>Plaintiffs Do Not Allege Plus Factors</u>

Even if the Court were to find parallel conduct pled (it should not), that is not enough.

Parallel conduct "standing alone [does not] support the inference of an antitrust conspiracy"

because such conduct is "equally likely to result from independent action." *Llacua*, 930 F.3d at

1175, 1180. Plaintiffs also need to plead "plus factors"—"economic actions and outcomes that are

largely inconsistent with unilateral, lawful conduct but largely consistent with explicitly

coordinated action." *Crownalytics*, 2023 WL 3071192, at *5. They have not done so. MTD 13.

***Common Motive.*** Plaintiffs fail to explain how Defendants' purported "motive to drive the

demand for single-use plastics," Opp. 23, indicates a conspiracy. MTD 15–16. That producers of

a product may want (and even encourage) increased demand for their products does not imply the

existence of conspiracy, or that each manufacturing Defendant's conduct is inconsistent with its

business interest and therefore with independent action. Citing no caselaw, Plaintiffs also argue

that allegations of a common motive are sufficient if "supported by examples of fixed prices."

Opp. 23. But the AC does not allege any *facts* suggesting fixed prices or that the manufacturing

Defendants refrained from competing vigorously on price to meet the allegedly increased demand.

***Actions Against Interest.*** As explained in the MTD, Plaintiffs fail to plead that any

Defendants acted against their self-interest. MTD 16. Plaintiffs do not address this argument, thus

conceding their failure to plead this plus factor. *See* Opp. 22–24.

***Trade Organizations.*** Plaintiffs repeatedly point to allegations of Defendants'

10

"involvement and leadership with [various] trade groups" that promoted the recyclability of plastics over several decades. Opp. 22. But such allegations do not "suffice to allege a plausible § 1 agreement," because otherwise members of any given trade association "could be deemed to have entered into an antitrust conspiracy simply because they joined the association, participated in its governance, and agreed to abide by its rules." *Llacua*, 930 F.3d at 1181; MTD 16–18.[7]

*Inelastic Demand.* Defendants do not dispute that high inelasticity of demand *can be* a plus factor, Opp. 23, but Plaintiffs make no such allegations. And inelasticity of demand, without more, is insufficient. *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 823 (N.D. Ill. 2017).

In short, because Plaintiffs fail to allege parallel conduct or "sufficient 'plus factors'" Plaintiffs' Antitrust Claims must be dismissed. *Crownalytics*, 2023 WL 3071192, at *6.

### D.    Defendants' Alleged Conduct Is Immune Under *Noerr-Pennington*

The *Noerr-Pennington* doctrine immunizes from antitrust liability speech that forms the basis of a publicity campaign aimed at influencing governmental action. *See Allied Tube v. Indian Head*, 486 U.S. 492, 502 (1988). Rather than meaningfully address this doctrine, which protects virtually all of Defendants' conduct as alleged in the AC, Plaintiffs misrepresent its scope and applicability, and mischaracterize the Challenged Statements.

According to Plaintiffs, *Noerr-Pennington* is inapplicable here because it applies only to speech that "attempt[s] to influence government action," and Plaintiffs' allegations "refer to Defendants' deceptive marketing initiatives intended to shape the public's perception of plastic." Opp. 26–27. But the AC tells a different story; Plaintiffs repeatedly allege Defendants' conduct was intended to prevent the *government* from passing plastics legislation. AC ¶¶ 6, 61–62, 67–68,

---

[7] Plaintiffs also suggest that there is something nefarious about the fact that one trade organization adopted a consumer-friendly name. Opp. 23–24. But campaigns that "increase[] the product's visibility and familiarity among" consumers cannot support the inference of an unlawful agreement. *In re EpiPen*, 507 F. Supp. 3d 1289, 1362–63 (D. Kan. 2020).

87, 99, 116–17; MTD 19. This is precisely the type of speech that *Allied Tube* held was protected: "*Noerr* immunity cannot be dismissed on the ground that the conduct at issue involved no 'direct' petitioning of government officials," because it encompasses actions that are "'incidental' to a valid effort to influence government action." 486 U.S. at 502–03.

Plaintiffs are also incorrect that *Noerr-Pennington* immunity cannot be decided on a motion to dismiss. Opp. 27. Courts within the Tenth Circuit routinely resolve *Noerr-Pennington* immunity at this stage. *Classic Commc'ns v. Rural Tel. Serv.*, 1997 WL 51419, at *2–*3 (D. Kan. Jan. 30, 1997); *CST Indus. v. Tank Connection*, 2024 WL 3360420, at *8 (D. Kan. July 9, 2024). Plaintiffs assert Defendants' speech is not protected by *Noerr-Pennington* as it was "deliberately false or misleading." Opp. 28. But, importantly, there is no fraud or false statement exception to *Noerr-Pennington* immunity.[8] *E.R.R. Pres. v. Noerr Motor*, 365 U.S. 127, 145 (1961) (allegations defendants "deliberately deceived the public and public officials" can "be of no consequence").

### E.    Plaintiffs Fail to Plead Antitrust Standing

Plaintiffs agree that to have antitrust standing, they must allege an "antitrust injury," and be the "proper party" to bring the claims. MTD 24–27; Opp. 13–17. Yet, Plaintiffs fail on both.

### 1.    Plaintiffs Have Not Plausibly Alleged Antitrust Injury

Plaintiffs admit that they must allege an antitrust injury that "stem[s] from the competition-reducing effect by the defendant[s']" conduct. Opp. 14. Yet Plaintiffs fail to plead any such effect in the form of reduced output or increased prices. As explained, Section III.B, Plaintiffs plead *increased* output, which is *procompetitive*. Plaintiffs merely point to conclusory allegations that Defendants "lie[d] about the recyclability of plastics . . . thus increasing . . . prices." Opp. 14. But

---

[8] Plaintiffs' citation to *U.S. v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) is inapposite, as the speech there "constitute[d] commercial speech." *Id.* at 1144. In contrast, the speech here relates to issues of policy and scientific debate regarding the recyclability of plastics and the impact of plastic products on the environment. *Underwager v. Salter* 22 F.3d 730, 736 (7th Cir. 1994).

"[c]onclusory allegations that the defendant violated [antitrust] laws are insufficient." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024 (10th Cir. 1992).

And Plaintiffs' attempt to refute that antitrust injury cannot be predicated on Defendants' allegedly false or misleading statements is unavailing. Plaintiffs cite *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, but *Insignia* is an exclusive dealing case; the alleged false statements there merely "amplif[ied] the impact of the exclusive contracts on rivals' ability to compete." 661 F. Supp. 2d 1039, 1056, 1061 (D. Minn. 2009). Plaintiffs' reliance on *Taylor v. JBS Foods USA*, is inapposite, as there, too, the alleged conduct "eliminat[ed]" and "prevent[ed] competition in the market place." 2025 WL 102450, at *13 (D.S.D. Jan. 15, 2025). No similar situation exists here.

2.    Plaintiffs Are Not "Proper Parties" To Bring These Antitrust Claims

Plaintiffs concede they must also show "the alleged antitrust violation proximately caused the antitrust injury," Opp. 15, but their theory of causation is highly attenuated and almost entirely indiscernible. Plaintiffs contend decades-old statements about plastic recyclability were a "substantial factor in causing Plaintiffs to buy" more plastic products—products that potentially incorporated resins from some Defendants and were sold through a long distribution chain where intermediaries and retailers set the end-product prices. Opp. 15–16. And Plaintiffs claim the Challenged Statements increased the price Plaintiffs paid for end-use plastic products. Opp. 16. But "Plaintiffs' mere assertion that they are the direct victims of [Defendants'] anticompetitive scheme" is "insufficient." *Sharp v. United*, 967 F.2d 404, 409 (10th Cir. 1992). Plaintiffs erroneously rely on *Dennis v. JPMorgan*, 343 F. Supp. 3d 122 (S.D.N.Y. 2018), and *In re Fragrance Direct Purchaser Antitr. Litig.*, 2025 WL 579639 (D.N.J. Feb. 21, 2025), to suggest a causal chain exists between Defendants' alleged conduct and Plaintiffs' alleged injuries. There, defendants' pricing of their products influenced the price of the end-use product with "little room for any interfering price impact." *Dennis*, 343 F. Supp. 3d at 165 n. 170. No similar allegations

13

exist here. Plaintiffs do not even "acknowledge the role of interceding parties who purchased and distributed the [resins] from defendants or manufactured and sold the [resin]-containing consumer products that plaintiffs eventually purchased"—and that such interceding parties meaningfully impact prices paid by Plaintiffs. *Supreme v. Arcelor*, 238 F. Supp. 3d 1032, 1040 (N.D. Ill. 2017).

### F.     The State Antitrust Claims Fail for Independent Reasons

Plaintiffs' arguments regarding the independent grounds that warrant dismissal of their State Antitrust Claims fare no better. Plaintiffs' only response to the argument that they lack standing to sue under the laws of states where none of the named Plaintiffs reside or were injured is to urge this Court to defer its determination of standing until class certification. Opp. 29–30. But "the Tenth Circuit has indicated that courts should generally address standing prior to class certification." *Hunnicutt v. Zeneca, Inc.*, 2012 WL 4321392, at *2 (N.D. Okla. Sept. 19, 2012). In fact, it is especially appropriate to address standing now in a case like this one, which "presents the question of whether the only named plaintiff has standing to bring claims under laws of various states." *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *7 (D. Colo. July 14, 2011); MTD 28.

Plaintiffs also contend their Illinois and Tennessee antitrust claims are not foreclosed by statute as those class action bars do not apply in federal court. Opp. 31. But Plaintiffs do not address *In re Auto.*, 29 F. Supp. 3d at 1007, which held that such state-law bars apply in federal court.

Finally, Plaintiffs concede that many of the state law statutes permitting indirect purchaser recovery were recently enacted and are not retroactive. Opp. 32. If Plaintiffs' state law claims proceed, Plaintiffs may not recover damages that pre-date the enactment of those statutes.

## IV.     THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED (COUNT 2)

### A.     Ford County Cannot Represent Other Counties, Cities, and Municipalities

Despite the authority cited in the MTD, and the Kansas Attorney General stating otherwise, Ford County contends it may sue on behalf of all counties, cities, municipalities, and government

entities in a nuisance action so long as it can meet Rule 23's class certification requirements,[9] citing *In re Sch. Asbestos Litig.*, 921 F.2d 1310 (3d Cir. 1990), and *In re Nat'l Prescription Opiate Litig.*, 332 F.R.D. 532 (N.D. Ohio 2019).[10] But those cases concerned objections at the class certification stage, and neither decision addressed whether one county is authorized to litigate on behalf of all "similarly situated" political subdivisions throughout the United States. Further, neither decision addressed the statutory precursors that government entities must meet as a condition precedent to hiring private counsel. *In re Auto. Parts*, 2015 WL 14047405, at *7 (E.D. Mich. Apr. 30, 2015). Thus, to the extent Ford County's nuisance claim is otherwise properly pleaded (it is not), Ford County at most may bring that claim only on its own behalf.

### B.    Ford County Does Not State a Public Nuisance Claim

Ford County's Opposition amounts to little more than reciting Kansas's public nuisance statute and insisting Defendants' alleged conduct ran afoul of it. But this ignores the authority Defendants cite showing why Ford County's unprecedented theory would "stretch the concept of public nuisance far beyond recognition." *In re Lead Paint Litig.*, 924 A.2d 484, 494 (N.J. 2007). This Court should join the vast majority of courts rejecting similar invitations to expand public nuisance to cover the promotion and sale of lawful products, properly recognizing that such an expansion of law is the province of the legislature. *Oakland v. BP*, 325 F. Supp. 3d 1017, 1029 (N.D. Cal. 2018); *James v. PepsiCo*, 222 N.Y.S.3d 907, 917 (Sup. Ct. N.Y. Cnty. 2024).

#### 1.    Defendants' Alleged Conduct Is Authorized and Protected by Law

Because the State of Kansas authorizes, encourages, and to some extent even mandates the conduct that Ford County claims caused a public nuisance, Ford County's claim fails. *See Atchison, T. & S. F. Ry. Co. v. Armstrong*, 80 P. 978 (Kan. 1905). Ford County does not dispute

---

[9] Ford County concedes it cannot represent States under the Eleventh Amendment. *See* Opp. 37.
[10] The bases for dismissal in *In re Sch. Asbestos Litig.* were primarily jurisdictional-related, and *In re Nat'l Prescription Opiate Litig.* involved consolidation of more than 2,000 individual actions.

that it is Kansas state policy to "[e]ncourage the wise use of resources through development of strategies that . . . recycle [plastic] materials." Kan. Stat. §§ 65-3401(e), 65-3402(r). Indeed, Ford County concedes Kansas law *mandates* use of the RIC system and "chasing arrows" logo and encourages plastic recycling. Opp. 35, 46. Kansas's Legislature has made a clear policy choice in advocating for recycling, and Defendants' alleged conduct falls squarely within those expectations.

Ford County's only response is the implausible and unsupported theory that "Defendants' deceptive advertising . . . convinced legislatures . . . around the country to believe plastics were truly capable of widespread recycling." *Id.* But the few allegations that Ford County identifies describe no connection between Defendants' alleged sparse advertising and Kansas's enactment of laws to promote recycling in 1970. *See* AC ¶¶ 94, 97, 99, 112, 113, 115 (occurring decades later);[11] Opp. 35. In any event, alleged advertising directed to the government would be petitioning activity protected under *Noerr-Pennington. See* Section III.D.

Ford County's reliance on *Huntington v. AmerisourceBergen Drug Corp.* is equally unavailing. 157 F.4th 547 (4th Cir. 2025). *Huntington* involved public nuisance claims arising from prescription drug abuse, and the Fourth Circuit was forced to predict a "novel question of West Virginia law." Opp. 36. But this single distinguishable and out-of-circuit decision does not justify a court-authored expansion of Kansas public nuisance law. The alleged sale, distribution, and *illegal* diversion of opioids cannot credibly be analogized to statements about the viability of government-mandated plastic recycling. Not only did none of the Defendants here even manufacture or sell the products at issue, but the weight of authority holds that the *lawful* sale and promotion of *lawful* products cannot be a nuisance. *Atchison*, 80 P. at 979; *Spitzer v. Sturm*, 761 N.Y.S.2d 192, 192 (N.Y. App. Div. 2003); *Hunter*, 499 P.3d at 726.

---

[11] The AC does not allege deception about recycling until at least the 1980s. *See* AC ¶¶ 74–76.

2.     Defendants' Alleged Conduct Is Not Linked to a Public Right

The AC asserts the alleged public right is "a common right to be free from" Defendants' allegedly "deceptive advertising," AC ¶ 208, and the Opposition points to abstract rights to "public health, safety, peace, comfort, and convenience of Plaintiffs' communities." Opp. 38. But these generalities do not suffice, and actions of individuals (like the purchase, use, and ultimate disposal of a product) do not implicate "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B (right not to be defrauded is not a collective right). Rather, "[p]roducts generally are purchased and used by individual consumers, and any harm they cause—even if the use of the product is widespread and the manufacturer's . . . conduct is unreasonable—is not an actionable violation of a public right." *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 448 (R.I. 2008); *Hunter*, 499 P.3d at 727. Ford County's imprecise theories rely on a "public right so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it." *Chicago*, 821 N.E.2d at 1116.

3.     Defendants' Alleged Conduct Is Not Frequent or Continuous

Ford County asserts that it has plausibly alleged a "deceptive scheme" spanning "decades." Opp. 38. But Ford County does not and cannot identify any allegations to establish any such "scheme" frequent or continuous enough to constitute a nuisance. At most, the AC alleges a few disconnected statements. MTD 36–37. Ford County's sole support that these sparse statements constitute a nuisance is a footnote in *Gen. Steel v. Denver/Boulder BBB*, 2009 WL 535780 (D. Colo. Mar. 2, 2009). But in that case—which involved a constitutional Equal Protection Clause claim rather than a public nuisance claim—the court simply noted that in a prior action the Colorado Attorney General had proven up misstatements that were "frequent, continual and intentional over a period of [approximately seven] years beginning at least by 1997 and continuing at least through . . . February 2004" and related specifically to the defendant's pricing, ongoing

marketing and sales practices, quality and origin of its products, terms and conditions, and product warranties. *See State of Colorado v. Gen. Steel Domestic Sales, L.L.C.*, 04–CV–143 (D. Ct. Jefferson Cnty, Dec. 4, 2004). That is unlike the handful of Challenged Statements at issue here.

### 4.    Ford County Fails to Plead Proximate Causation

The Opposition does nothing to cure the AC's failure to link demand for plastics to the Challenged Statements. Indeed, Ford County cites no nuisance authority, instead citing a Lanham Act case brought by a supplier against a manufacturer asserting that "misrepresentations can cause a plaintiff's harm." Opp. 38 (citing *Lexmark Int'l*, 572 U.S. 118, 138 (2014)). That unremarkable proposition (plucked from a different context) does not excuse Ford County's failure to account for the intervening acts or omissions of countless third parties—including governments, consumers, recyclers, and waste management companies—that negate any causal link between the Challenged Statements and Ford County's alleged injury. Under Kansas law, that defect is fatal. *Cherry v. Bd. of Cnty. Comm'rs of Crawford Cnty.*, 446 P.2d 734, 737 (Kan. 1968).

### 5.    Defendants Lack Control Over the Alleged Nuisance

Finally, on the issue of control, Ford County's only answer is that Defendants allegedly had a "role in labeling plastics with RICs and the chasing arrows logo." Opp. 39. Curiously, Ford County relies on *In re Syngenta AG MIR 162 Corn Litig.*, in which the court *dismissed* the nuisance claim precisely because "a seller may not be liable for a private nuisance caused by a product absent continuing control over the product post-sale." 131 F. Supp. 3d 1177, 1214 (D. Kan. 2015). The court also expressly distinguished *In re StarLink Corn Products Liab. Litig.*, 212 F. Supp. 2d 828 (N.D. Ill. 2002), a case in which nuisance was viably alleged because USDA registration requirements imposed on the manufacturer "an affirmative duty to enforce . . . farmers' compliance," establishing post-sale control. *Id.* at 847. Unlike the defendants in *StarLink*, Defendants complied with all relevant regulations, and no law or regulation imposed post-sale

control. Defendants are not involved in or responsible for the labeling of products manufactured by independent third parties downstream in the supply chain, and they plainly have no duty or ability to control what end users do with those products. Ford County's citations to *Syngenta* and *StarLink* only confirm that dismissal of the public nuisance claim is warranted here.

## V.     PLAINTIFFS DO NOT STATE CONSUMER FRAUD CLAIMS (COUNTS 3–17)

As noted below, Plaintiffs fail to rebut the many independent reasons their Consumer Fraud Claims fail. Unable to remedy these fatal deficiencies, Plaintiffs ask the Court to defer dismissal as these deficiencies purportedly implicate fact issues. But courts routinely dismiss at the pleading stage consumer fraud claims based on these same deficiencies. *See, e.g.*, *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1304 (10th Cir. 2022). The Court should do the same here.

### A.     The AC Does Not Satisfy Rule 9(b)

Plaintiffs concede Rule 9(b)'s heightened pleading standard applies, but suggest the standard is less rigorous because the allegations of fraud are numerous and part of a "pattern of fraud to coerce the American public over the course of seven decades." Opp. 39–40.[12] As an initial matter, despite the Opposition's repeated assertion that Defendants engaged in a "coordinated campaign," Plaintiffs allege nothing more than a handful of non-actionable statements by different entities about different properties of plastic in different mediums spanning many years. And even if Plaintiffs had adequately alleged a long-running fraud, the "primary concern" under Rule 9(b) remains—"giving defendant[s] notice of the conduct complained of." *A. J. Plastic Prods., Inc. v. Sandretto USA, Inc.*, 2005 WL 8160315, at *2 (D. Kan. Feb. 28, 2005). Indeed, Rule 9(b)'s requirements are "particularly important" where allegations of fraud span decades and involve

---

[12] Plaintiffs cite *Clinton v. Sec. Benefit*, which explains dismissal is not necessarily required if *some* of the alleged statements are adequately pled. 63 F.4th 1264, 1278 (10th Cir. 2023). Here, none of the Challenged Statements are adequately pled, so *Clinton* is inapposite.

different entities. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000). Otherwise, Defendants are left to guess which statements Plaintiffs assert are deceptive.

Plaintiffs' deception theory underscores the need for particularized pleadings. They assert Defendants misled consumers that plastic is recyclable, but acknowledge that some plastics are recyclable and that Defendants manufacture different kinds of plastic (if at all). Moreover, nowhere do Plaintiffs allege that the resins the manufacturing Defendants sell are not recyclable. Instead, Plaintiffs allege that end-user products are not recycled, whether *inter alia* due to consumers choosing not to recycle, municipalities not spending enough on infrastructure, or due to chemicals that non-Defendants add to the end-user product, all factors out of Defendants' control. Thus, it is imperative Plaintiffs state the specific "content of the alleged misrepresentations" that they challenge and "what is false or misleading about [them], and why [they are] false." *Koch*, 203 F.3d at 1237. After all, as Plaintiffs admit, if particular plastic products Defendants' supposedly represented as recyclable are in fact recyclable, "then Plaintiffs lose." Amicus Opp. 14.[13]

Plaintiffs thus concede that they must plead their claims with particularity, *see* Opp. 39–40, but the AC fails to do so by omitting the who, what, where, when, and how of the alleged fraud.

***Regarding "who,"*** most of the Challenged Statements were not made by Defendants. The only way Defendants can be liable for another's statements is if they are imputed to them, which the AC does not even attempt to establish. Plaintiffs' only answer to this glaring deficiency is to assert they "need not establish an agency relationship at this point." Opp. 41. But a "plaintiff must plead 'sufficient facts to support the legal allegation of an agency relationship.'" *Brody v. Bruner*, 2024 WL 1912555, at *6 n.7 (10th Cir. May 1, 2024). Plaintiffs do not, and cannot, do so.

---

[13] For instance, Plaintiffs challenge NAPCOR's alleged campaign promoting the recyclability of PET bottles. *See* AC ¶¶ 150–51. But Plaintiffs also admit that PET is "the most easily recycled type of plastic," *id.* ¶ 53, and that "viable markets" exist for recycled PET, *id.* ¶ 45.

***Regarding "what,"*** the Opposition—seemingly acknowledging none of the Challenged Statements are individually actionable—asserts "the deceptive message was not a single slogan but a sustained narrative that plastics are able to be recycled." Opp. 41, 44, 49. Plaintiffs cite no support for this. If each Challenged Statement is inactionable, then the "cumulative effect" of the Challenged Statements cannot become actionable. To find otherwise would contravene Rule 9(b) and the canon that "general allegations" of fraud cannot stand. *Geisler v. Don Hunt & Assocs., Inc.*, 2012 WL 966119, at *5 (D. Kan. Mar. 21, 2012); *Koch*, 203 F.3d at 1237. The Challenged Statements must be individually pleaded and actionable—neither is true here. *See* Section V.B.

***Regarding "where,"*** the "specific meetings *where*" the AC alleges "fraudulent statements took place," were *private* meetings discussing recycling's *limitations*. *See, e.g.*, Opp. 42; AC ¶ 119.

***Regarding "when,"*** while the AC dates the Challenged Statements, Plaintiffs also rely on other, unspecified fraud that supposedly occurred over decades, which is "a time period" that is far "too broad." *Jamieson v. Vatterott Educ. Ctr.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007).

***Regarding "how,"*** Plaintiffs cannot explain how the Challenged Statements are false—stating a product is recyclable does not mean it will be recycled, just that it can be. Section V.B.2.

***And finally,*** Plaintiffs concede they do not plead which plastic products each Plaintiff purchased, where and when they purchased such product, or which Defendant (if any) manufactured polymers in that product. Instead, Plaintiffs assert they were not required to "conduct discovery." Opp. 41–42, 43.[14] But it is Plaintiffs who possess the necessary information about their purchases. Indeed, Defendants do not have this information as they do not sell to consumers.

---

[14] Plaintiffs cite *U.S. ex rel. Wynne v. Blue Cross & Blue Shield of Kansas, Inc.*, 2006 WL 1064108, at *8 (D. Kan. Apr. 21, 2006), but there, the court *dismissed* the complaint despite its "length." *Id.*

### B.    Plaintiffs Do Not Allege Any Actionable Deception

#### 1.    Defendants Cannot Be Liable for Legally-Mandated Statements

The Opposition doubles down on the assertion that Challenged Statements mandated by the government are actionable and deceptive. Acknowledging the "chasing arrows" logo and RIC system are required by law, including in Kansas, the Opposition asserts deception "not base[d] . . . on the chasing arrows symbol itself, but *the deceptive messaging it conveys*." Opp. 45–6. That is a distinction without a difference and underscores the AC's implausibility. MTD 5. There is no authority under which Defendants could be liable for these legally-mandated statements.[15]

#### 2.    No Reasonable Consumer Would Be Misled

The Opposition fails to individually address how the Challenged Statements would plausibly mislead a reasonable consumer, let alone identify allegations establishing how or why a Challenged Statement is actionable and false, nor could it, as the Challenged Statements are either not empirically verifiable, entirely accurate, or inform the public of *low* recycling rates.[16]

The **Recycling Initiative Statements**[17] are inherently subjective, not "empirically verifiable" or "measurable," and thus inactionable. *Renfro,* 25 F.4th at 1304; AC ¶ 93.[18] The Opposition insists that the Recycling Initiative Statements are empirically verifiable because "recyclable is a specific representation of fact subject to measure. If a company claims a product is recyclable, it must be recyclable." Opp. 47. Plaintiffs are incorrect for several reasons.

---

[15] To the extent Plaintiffs attribute the enactment of laws to Defendants' lobbying, that argument is also foreclosed by *Noerr-Pennington*. *See* Section III.D; MTD 18–19.

[16] Plaintiffs protest that the MTD's analysis focuses on the particular paragraphs of the AC containing the Challenged Statements, *see* Opp. 46, but that is what Rule 9(b) requires.

[17] *See* AC ¶¶ 93, 94, 112–13, 115.

[18] While Plaintiffs complain that Defendants cite *Renfro* and *Appliance Recycling Ctrs. v. Jaco*, 378 F. App'x 652, 654 (9th Cir. 2010), since the particular consumer fraud statutes in those cases were different than those at issue here, Opp. 47, Plaintiffs do not contend that the relevant legal standards for when statements are or are not actionable are any different across these various laws.

As an initial matter, the Recycling Initiative Statements do not even relate to the recyclability of a particular product—they merely promote recycling in general. *See, e.g.*, AC ¶ 113. Further, the Opposition ignores that the Recycling Initiative Statements are inactionable because governments have long promoted recycling—and have done so far more frequently and emphatically than the Challenged Statements. *See, e.g.*, MTD 5. Additionally, the Opposition ignores the fundamental distinction that numerous courts have recognized—merely describing a product as recyclable is not a claim that the product will in fact be recycled. *See Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *13 (N.D. Ill. Sept. 13, 2022); *Swartz*, 2022 WL 17881771, at *1.

The Opposition attempts to distinguish *Curtis* on the basis that the complaint in *Curtis* did not allege that the products in question were "made up of unrecyclable material." Opp. 47. But the AC makes no such allegation either. Rather, Plaintiffs repeatedly admit that plastics are, in fact, recyclable.[19] Plaintiffs urge the Court to ignore *Curtis*, *Swartz*, and other decisions rejecting the same arguments Plaintiffs make. *Compare, e.g.*, Opp. 44 ("They ask this Court to hold that as long as recycling is conceivable, describing plastics as recyclable is not deceptive."), *with Curtis*, 2022 WL 4182384, at *13 ("The term 'recyclable' is about the inherent qualities of the product. It is about what can happen. It is not a promise about the state of the recycling industry.").

Likewise, purporting to distinguish *Swartz*, Plaintiffs note that the statements there were about the "recyclability of a specific plastic Coke bottle, not an overarching conspiracy affecting all plastics as here." Opp. 47 (citing 2022 WL 17881771, at *1). But Plaintiffs do not explain why that distinction matters—and it does not. Rather, as *Swartz* explains, calling plastic products "recyclable" is simply not "a promise that [they] will actually be recycled." 2022 WL 17881771,

---

[19] *See* Opp. 1 ("many types of plastics are theoretically recyclable"); AC ¶ 49 ("some types of plastic . . . are technically 'recyclable'"); *id.* ¶ 53 (PET is "the most easily recycled . . . plastic").

at *1. The Court should decline the Opposition's invitation to break from *Curtis* and *Swartz*.[20]

For the same reasons, the **Recyclability Statements** are inactionable as they relate to products' recyclability and say nothing about whether they ultimately will be recycled. *Curtis*, 2022 WL 4182384, at *13. The Opposition fails to rebut this. Further, the Recyclability Statements are consistent with what the Green Guides identify as non-deceptive "recyclable" claims, defeating the Florida, Massachusetts, New Mexico, and Rhode Island claims. Plaintiffs insist the Guides do not shield Defendants' statements because most plastics "cannot be effectively collected, separated, or otherwise recovered from the waste stream." Opp. 48. But the Guides simply require that, to make "unqualified recyclable claims," "recycling facilities [should be] available to a substantial majority of consumers or communities where the item is sold." 16 CFR § 260.12(b)(1).[21] And the AC does not allege that such facilities are unavailable. MTD 45. Moreover, Defendants could not violate the Guides: as resin producers, they do not control what jurisdictions the third-party manufacturers that make end-user products sell those products into, and thus, cannot prevent them from selling in locations where fulsome recycling facilities may not be available.

Finally, the Opposition appears to concede the **Aspirational Statement** is inactionable. Opp. 49. Instead, Plaintiffs maintain that this is "immaterial," since they insist other, unspecified statements were actionable. *Id.* But again, that argument contravenes Rule 9(b). Moreover, the Aspirational Statement undermines Plaintiffs' claims: it stated that, even in a best-case scenario, *25 percent* of plastics—not all or even most—would be recycled. *See* AC ¶ 104 n.77; MTD 47.

---

[20] While Plaintiffs note that both *Curtis* and *Swartz* were "out-of-circuit," those cases involved the same "reasonable consumer" standard, and *Swartz* involved the same California law at issue here.
[21] The Green Guides' definition of "recyclable," provides that a product may be called recyclable if it "can be collected, separated, or otherwise recovered . . . for reuse or use in manufacturing or assembling another item," 16 CFR § 260.12(a), not, as Plaintiffs claim, that it must be. Opp. 48.

### 3.  Plaintiffs Have Not Alleged the Requisite Reliance

The Opposition admits the Arkansas, California, D.C., Montana, Nebraska, Nevada, New Hampshire, North Carolina, Rhode Island, and Vermont consumer fraud claims require reliance. Opp. 52–54. And in insisting that Massachusetts law does not, the Opposition ignores First Circuit authority to the contrary. *Rodi v. S. New England*, 532 F.3d 11, 19 (1st Cir. 2008). The Opposition asserts that reliance is a "question for the jury," but, as is always true at the 12(b)(6) stage, Plaintiffs must allege facts to support their Consumer Fraud Claims which the AC fails to do. *Scheibe v. Esupplements*, 681 F. Supp. 3d 1101, 1116 (S.D. Cal. 2023); Section V.A. (discussing Rule 9(b)).

### 4.  Plaintiffs Do Not Allege Actionable Omission

Plaintiffs only bring omission claims under Arkansas, California, and Missouri law. All fail, because Plaintiffs do not plausibly allege that the purported omission was material. *See Riddell v. GM LLC*, 2024 WL 2077559, at *7 (E.D. Mo. May 9, 2024). Plaintiffs insist that materiality is established by the supposed "plummeting demand for unrecyclable plastics." *See* Opp. 50. But Plaintiffs do not plausibly allege such "plummeting demand," nor that consumers purchase a plastic kayak, for instance, because of their understanding of recycling rates.[22]

Plaintiffs' omission claims fail for additional reasons. ***First***, the Opposition concedes that under California law, Defendants only have a duty to disclose if the omission relates to the "central function of the product" or a "safety hazard." *See Hodsdon v. Mars*, 891 F.3d 857, 863–64 (9th Cir. 2018). But the AC alleges no facts supporting either requirement. ***Second***, the Opposition ignores Arkansas' requirement that a contractual relationship or fiduciary duty must exist for there to be a duty to disclose (neither exists here). *White v. Volkswagen*, 2013 WL 685298, at *9 (W.D.

---

[22] Plaintiffs' cases are inapposite. In *Earth Island Inst. v. Coca-Cola Co.*, the alleged omission was the "fail[ure] to qualify" affirmative statements, 321 A.3d 654, 665 (D.C. 2024), which is not Plaintiffs' theory of omission here. Meanwhile, *Rawson v. ALDI, Inc.*, did not even involve an omission claim. 2022 WL 1556395 (N.D. Ill. May 17, 2022).

Ark. Feb. 25, 2013). **Third**, while the Opposition concedes information concerning ultimate recycling rates was readily available to consumers, it cites a Massachusetts case to argue that the availability of such information does not defeat their claims. *See* Opp. 50. But Plaintiffs ignore Eighth Circuit law requiring courts to consider what a reasonable consumer would be "able to research," under Missouri law, as well as similar authority from California. *Tucker v. Gen. Motors*, 58 F.4th 392, 398 (8th Cir. 2023); *Milman v. FCA*, 2019 WL 3334612, at *6 (C.D. Cal. Apr. 15, 2019).

5.    Plaintiffs' Claims Fail for Numerous Additional Reasons

The Opposition fails to address several other state-law requirements, thus conceding Plaintiffs' claims should be dismissed for these additional reasons: Arkansas, Montana, and South Carolina bar class actions; Arkansas and South Carolina bar claims by indirect purchasers; and Massachusetts requires a pre-suit demand letter, which Plaintiffs did not send. *See* MTD 42.

## VI.    **PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM (COUNT 46)**

**First**, the Opposition concedes the AC does not identify the unjust enrichment laws of any particular jurisdiction Plaintiffs seek to invoke,[23] and Plaintiffs' reliance on *In re EpiPen* is unavailing as there, the complaint expressly invoked "the common law of all 50 states." 336 F. Supp. 3d at 1345. Here, the AC does not do so. Opp. 55.[24] And even if it did, *In re EpiPen* demonstrates that, with the exception of the Missouri, Kansas, California, New York, and Florida law claims (which should still be dismissed for the reasons set forth below), all other state claims should be dismissed. *See* 336 F. Supp. 3d at 1345 (dismissing claims where no connection to state).

**Second**, Plaintiffs fail to adequately allege that they conferred a benefit upon Defendants,

---

[23] Plaintiffs clarify that they are not seeking to apply Kansas unjust enrichment law extraterritorially, as doing so would violate the Dormant Commerce Clause. *See* Opp. 56.

[24] Even if the Rule 8(a) standard applied (it does not), Plaintiffs' generalized assertions of a "national crisis" and "50-state solution" are insufficient. *Hyundai Mtr. Am.*, 2016 WL 3621280, at *13 (C.D. Cal. June 24, 2016); *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025).

nor can they since Plaintiffs do not purchase polymers sold by Defendants. Instead, the Opposition relies on the conclusory allegation that Defendants indirectly benefitted from "artificially inflated demand and prices," allegedly caused by "Defendants' deception." Opp. 56. But the AC contains no allegations that the manufacturing Defendants sold more plastic resin or sold it at a higher price, or that any demand or pricing increase impacted the manufacturing Defendants, as opposed to entities in the distribution chain. AC ¶¶ 171–74. Plaintiffs' claim of an indirect benefit, AC ¶ 519, also fails because the relationship between consumers and resin manufacturers is too attenuated. *See, e.g.*, *Sperry v. Crompton*, 8 N.Y.3d 204 (2007); *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). An indirect benefit can only support an unjust enrichment claim under "special circumstances"—and "some contact" between the parties is still required. *Sky Jet M.G. Inc. v. VSE Aviation Srvs., LLC*, 2025 WL 1676265, at *3 (D. Kan. June 13, 2025). Neither condition is met here. And Plaintiffs' failure to allege a benefit forecloses a constructive trust. Opp. 55–56.

**Finally**, Plaintiffs failed to plead the absence of a legal remedy—which they concede is necessary under certain state laws. The Opposition asserts it would be "futile for Plaintiffs . . . to seek a remedy from any party with whom they had privity of contract" and equitable relief is necessary, *id.*, but this is too conclusory. Indeed, Plaintiffs do not allege why tort or statutory remedies are inadequate, let alone why seeking remedies from parties they had privity of contract with would be "futile." Plaintiffs' sole support for this allegation is "Defendants have paid no consideration to anyone for any benefits received indirectly from Plaintiffs and the Class." AC ¶ 519. Without allegations that increases in demand or pricing benefited Defendants (as opposed to other entities), this is inadequate. And Plaintiffs' failure to sufficiently allege a benefit conferred forecloses the ability for a "constructive trust consisting of all ill-gotten gains." *Id*. ¶ 520.

## VII.    STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS (ALL COUNTS)

Plaintiffs acknowledge when "the dates given in the complaint make clear that the right to

be sued upon has been extinguished," a statute of limitations defense is appropriately resolved on a motion to dismiss. Opp. 58; *Herrera v. Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). Plaintiffs do not dispute their claims accrued decades ago. Instead, they attempt to resist dismissal based exclusively on fraudulent concealment and equitable tolling. Opp. 57. But those doctrines must be pleaded with particularity under Rule 9(b), and Plaintiffs do not claim to have met the standard.

Indeed, the AC comes nowhere close to providing "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" necessary to allege fraudulent concealment. *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016). The Opposition points to allegations about "use of Resin Identification Codes and the 'chasing arrows' symbol to signify recyclability" despite (unspecified) Defendants' "internal documents show[ing] that this recyclability was 'generally not the case.'" Opp. 57. Such generic allegations cannot support fraudulent-concealment tolling. *George*, 833 F.3d at 1255–56.

Setting aside the lack of particularity, the AC does not allege the elements for fraudulent concealment. In particular, Plaintiffs fail to identify an "affirmative act of concealment." *In re Aluminum Phosphide Antitr. Litig.*, 905 F. Supp. 1457, 1470 (D. Kan. 1995). At best, Plaintiffs assert nondisclosure—that Defendants did not "disclos[e] the fact that minimal plastics are recycled." Opp. 59. But a "mere failure to disclose" does not toll a limitations period. *Legacy Crossing, LLC v. Travis Wolff & Co.*, 229 F. App'x 672, 681 (10th Cir. 2007). "[T]here must be a separate affirmative act of concealment intended to cover up the original fraudulent act." *Id.* Plaintiffs also fail to allege "successful concealment from plaintiffs." *Aluminum Phosphide*, 905 F. Supp. at 1469. The AC alleges trade associations were created to combat information from certain governments about the limitations of recycling in the 1980s. MTD 53; AC ¶¶ 76, 85–87, 89–95, 99, 105. Plaintiffs even highlight congressional testimony in 1992 about "the poor state of plastic recycling infrastructure." *Id.* ¶ 87 n.62. And, most glaringly, the AC alleges that Defendants

themselves told the public that recycling rates were low. *Id.* ¶ 104, n.77; *see* Section V.B.2. Yet the Opposition completely ignores these allegations and their effect on tolling. Opp. 57–59.

Plaintiffs also fail to allege "due diligence until discovery of the facts." *Aluminum Phosphide*, 905 F. Supp. at 1469. Instead, they claim (without explanation other than the alleged length of the conspiracy) that "attempts to exercise due diligence would have been futile." Opp. 58. In the cases Plaintiffs cite, plaintiffs plausibly alleged that they could not have discovered the conspiracy without "access to the [defendants'] financial information." *Schenker AG v. Societe Air France*, 102 F. Supp. 3d 418, 426 (E.D.N.Y. 2015). Here, Plaintiffs acknowledge that information about the limitations of recycling was publicly available for decades. *See, e.g.*, MTD 53; AC ¶ 103 n.76. Thus, Plaintiffs cannot plausibly allege that Defendants' purported failure to "disclos[e] the fact that minimal plastics are recycled" prevented Plaintiffs from learning that fact. Opp. 59; *In re Air Cargo Shipping Servs. Antitr. Litig.*, 2010 WL 10947344, at *18 (E.D.N.Y. Sept. 22, 2010).

Finally, Plaintiffs' attempt to invoke the equitable tolling doctrine fails for the same reasons as fraudulent concealment. As the Opposition acknowledges, equitable tolling requires allegations that "a party acts to conceal [] conduct." Opp. 58; *Hosler v. Nationstar Mortg., L.L.C.*, 2015 WL 134309, at *2 (D. Kan. Jan. 9, 2015); *Hartwick v. D. Lodge 70, Intern. Ass'n of Machinists & Aerospace Workers*, 184 F. Supp. 2d 1092, 1101 (D. Kan. 2001).

In sum, all of Plaintiffs' claims are time-barred and should be dismissed with prejudice.

## CHEVRON U.S.A. INC.'S REPLY IN SUPPORT OF ITS MTD

Plaintiffs do not identify *any* facts from which the Court can plausibly infer that Chevron U.S.A. Inc. ("**CUSA**") conspired to make deceptive statements regarding the recyclability of plastics or did anything else that could be the basis for any viable claim against CUSA. Plaintiffs' complaint alleges next to nothing about CUSA specifically, and what is alleged is entirely conclusory—which is not surprising given that Chevron's former plastic resins business, which

was conducted by a separate legal entity, Chevron Chemical Company ("**Chevron Chemical**"), not CUSA, was conveyed to co-defendant Chevron Phillips Chemical Company LLC ("**CPChem**") twenty-five years ago. MTD 54 & n.1. Indeed, Plaintiffs do not dispute, and thus concede, that "no Chevron entity has engaged in the plastic resins business or produced, manufactured, marketed, advertised, or sold plastic resins in the United States for decades." *Id.* 54–55. Plaintiffs should never have named CUSA as a defendant, and the absence of alleged facts about CUSA is a dispositive failure of the claims asserted against it.

Besides two conclusory allegations that amount at most to mere involvement in the plastics industry (AC ¶¶ 25–26), the complaint is devoid of any facts about the actions or activities of CUSA itself. Plaintiffs do not point to any statements—let alone deceptive ones—CUSA made regarding plastics or their recyclability. Nor have they alleged CUSA was even a member of any plastics-related trade association, despite their claim that "decades of involvement" in such associations is a key basis of their attenuated theory of liability. Opp. 22; *see id.* at 1 ("This case arises from a decades-long, industry-wide conspiracy by the world's largest petrochemical companies, plastic manufacturers, *and their trade associations*." (emphasis added)); *see also* AC ¶¶ 205–221 (similar allegations for public nuisance and state consumer protection claims). Plaintiffs do not (and cannot) allege any *facts* showing that CUSA operated any plastics resins business or made any statements about the recyclability of plastic products—they instead rely entirely on conclusions. That failure is dispositive. Because the complaint is devoid of allegations about any relevant activity of CUSA, it fails to state what CUSA "is alleged to have done" and "what the misconduct was." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013). Nothing more is needed to dismiss the claims against CUSA.

Tacitly recognizing this fatal problem, Plaintiffs shift gears and focus on allegations regarding a separate entity, Chevron Chemical, that is not CUSA. *See* Opp. 60–61, 63 ("Taking

Plaintiffs' allegations as true, Chevron Chemical made deceptive statements regarding plastics recycling and is a proper defendant."). Plaintiffs now suggest for the first time in their brief that they can impute liability to CUSA through various theories of alter ego and successor liability tied to Chevron Chemical. *Id.* 61–62. These new theories lack any support in the complaint, which does not allege any relationship whatsoever between CUSA and Chevron Chemical, much less facts to support imputing liability from a separate entity to CUSA.

Plaintiffs admit as much. According to Plaintiffs, allegations about Chevron Chemical's activities are "sufficient to demonstrate the need for discovery regarding the relationship between [CUSA] and Chevron Chemical." *Id.* 60. Plaintiffs have things backwards—they cannot advance speculative and conclusory assertions unsupported by any actual factual allegations and then demand to conduct a discovery fishing expedition to fill the gap. They have the burden to affirmatively allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is thus not enough that discovery might reveal "some 'set of [undisclosed] facts' to support recovery." *Id.* 561. Instead, Plaintiffs' complaint must contain "factual content that allows the court to draw the reasonable inference that [CUSA] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such an inference cannot be drawn from "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Twombly*, 550 U.S. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Plaintiffs' theories of alter ego and successor liability all fail because Plaintiffs have not alleged any facts to support the application of those doctrines here. *See, e.g.*, *Equal Empl. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 149–50 (10th Cir. 2022) ("[Plaintiff] must allege facts that would support a plausible claim of successor liability against [defendants] in light of the [relevant] factors."); *Inception Mining, Inc. v. Mother Lode Mining,*

*Inc.*, 2025 WL 3204723, at *5 & nn.65, 67 (D. Utah Nov. 17, 2025) (same as to alter ego liability). Plaintiffs also invoke the "mere continuation" doctrine (Opp. at 61), which asks whether an acquiring corporation should be held liable for the debts of its predecessor. *See Lickteig v. Tri-Steel Structures, Inc.*, 170 F. Supp. 2d 1158, 1163 (D. Kan. 2001). But Plaintiffs allege that "Chevron Chemical was conveyed to Chevron Phillips Chemical Company LP ('CPChem')," which means that doctrine has no application against CUSA. Opp. at 61; *see also Crane Const. Co. v. Klaus Masonry, LLC*, 114 F. Supp. 2d 1116, 1119 (D. Kan. 2000) (dismissing complaint that failed to plausibly allege the elements of the mere continuation rule).

At bottom, Plaintiffs merely raise "question[s]" regarding the "level of control CUSA had over Chevron Chemical and whether CUSA today is a mere continuation of Chevron Chemical." Opp. at 61. Such admitted speculation, however, shows why Plaintiffs' claims against CUSA fail. *Twombly*, 550 U.S. at 555. This Court should not permit Plaintiffs to engage in discovery when they have offered nothing but speculation as to how CUSA could be liable here.

## EASTMAN CHEMICAL COMPANY'S REPLY IN SUPPORT OF ITS MTD

### I. PLAINTIFFS' RESPONSE CONFIRMS EASTMAN SHOULD BE DISMISSED

The Response confirms the claims against Eastman should be dismissed. Plaintiffs *still* cannot point to any allegation of Eastman, specifically, doing anything wrong or unlawful. Nor can Plaintiffs invoke fraudulent concealment tolling because they have not alleged Eastman concealed anything.

#### A. Plaintiffs' Vague Allegations do not Put Eastman on Notice of its Alleged Misconduct

Plaintiffs' argument that the AC "mentions Eastman specifically" instead proves the opposite. Resp. 64. The cited paragraphs merely identify Eastman as a party (¶ 31), a member (at some point) of the ACC (¶ 33), or as one of the Defendants against which Plaintiffs bring their

claims (¶¶ 218, 233). The only allegation about Eastman's actual conduct is that one of its employees made a statement in 1994 that Plaintiffs still do not claim was false or misleading. *See* AC ¶ 119. Plaintiffs' own cases confirm this is insufficient to state a claim. Group pleading may be used to allege "collective actions in furtherance of [a] conspiracy," but only if a complaint "alleges each Defendant's participation separately." *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 317 (S.D.N.Y. 2018). By contrast, dismissal is appropriate when, as here, "there are no factual allegations in the complaint to connect" a defendant "directly to the conspiracy." *Id.*

Plaintiffs do not (and cannot) claim Eastman "has been identified . . . as engaging in concretely defined misconduct." *Tobler v. 1238 Holdings, LLC*, 2025 WL 89052, *4 (D. Kan. Jan. 14, 2025). Rather, the AC is akin to the one dismissed in *Burnett v. MERS, Inc.*, 706 F.3d 1231 (10th Cir. 2013). There, the complaint "attribute[d] actions to a large group of collective 'defendants,'" but provided "zero details or concrete examples" of the improper conduct alleged. *Id.* at 1240. Without specific allegations of wrongdoing, Plaintiffs' exclusive reliance on group pleading fails to plausibly allege that Eastman is liable for anything. *See Tobler*, 2025 WL 89052, *4 ("Group pleadings will not survive a motion to dismiss when a court cannot tell *which* defendant is alleged to have done what, nor . . . tell *what* the misconduct was."). Indeed, Plaintiffs do not even allege that Eastman makes "[t]he plastic products at issue in this case." AC ¶ 34.

Because the AC fails to give Eastman "fair notice of what the claim is and the ground upon which it rests," the claims against Eastman must be dismissed. *Burnett*, 706 F.3d at 1235.

## B.     Plaintiffs' Claims Against Eastman are Time-Barred

Conceding that their claims against Eastman are facially untimely, Plaintiffs protest that disputes over "the existence of fraudulent concealment" are "for the jury." Resp. 65. That is wrong. Plaintiffs must first specifically and plausibly allege a basis for fraudulent-concealment tolling,

including "specific actions by [Eastman] to keep their [conduct] a secret." *In re Aluminum Phosphide Anititr. Litig.*, 905 F. Supp. 1457, 1470 (D. Kan. 1995). But Plaintiffs can point to nothing in the AC alleging Eastman did anything to conceal information about the recyclability of plastics. Thus, the claims against Eastman must be dismissed as time-barred.

## AMERICAN CHEMISTRY COUNCIL, INC.'S REPLY IN SUPPORT OF ITS MTD

The Opposition does nothing to undermine ACC's showing that each of Plaintiffs' state consumer protection claims (Counts 3 through 17) fail as to ACC for failure to allege that ACC participated in any consumer transaction or relationship related to the manufacture, sale, distribution, or advertisement of plastics or plastic resins. MTD 61–62. Instead, Plaintiffs assert an unsupported, expansive view of the reach of the consumer protection laws—that ACC purportedly "organized, coordinated, and executed" "deceptive" speech regarding recycling on behalf of other defendants, and this noncommercial speech brings ACC within the reach of the relevant state consumer protection statutes. Opp. 66.

***First***, even assuming the relevant state consumer protection statutes should be construed broadly, as Plaintiffs suggest, *id.*, the statutes contain limits. As Plaintiffs acknowledge, those limits include a requirement that alleged unfair or deceptive conduct occur in "business, commerce, or trade"; "trade or commerce"; "commerce"; be "in or affecting commerce" or be conduct by a "merchant," depending on the statute at issue. *See* Opp. 66–73. And courts have construed these limitations to require that consumer protection claims arise from a person's or entity's participation in commercial markets, not non-commercial speech about an issue of public debate like recycling.[25] *See* MTD 62–65.[26]

---

[25] Indeed, courts are constrained from construing the statutes otherwise, so as not to run afoul of protections afforded under the First Amendment for free speech and association. Mot. II.C, 43.

[26] *See also Illumination Station, Inc. v. Cook,* 2007 WL 4166215, at *2 (W.D. Ark. Nov. 20, 2007); *Keown v. Int'l Ass'n of Sheet Metal Air Rail Transp. Workers*, 2024 WL 4239936, at *15–16

**Second**, Plaintiffs fail to cite any case extending liability under the relevant state consumer protection statutes to trade association for noncommercial speech. Nor could they. Courts consistently have held that state consumer protection laws are inapplicable to trade group and voluntary association actions that do not occur in commercial markets. *See e.g.*, *That v. Alders Maint. Ass'n.*, 206 Cal. App. 4th 1419, 1427 (2012) (homeowners association not subject to California's UCL because an "association does not participate as a business in the commercial market, much less compete in it"); *The Praxis Project v. The Coca-Cola Company*, No. 2017 CA 004801 B (D.C. Super. Ct. Jan. 22, 2019) (American Beverage Association is not a "merchant" covered by the D.C. Consumer Protection Act because "Plaintiffs have not alleged that . . . ABA has manufactured or sold sugar-sweetened beverages, or is 'connected with the supply side' in a way that renders it a merchant"), Ex. A

Plaintiffs' cited cases are not to the contrary. They involved advertising or marketing *in connection* with a consumer transaction, by an entity involved in commerce,[27] or relate to questions in some states about standing for indirect purchasers or competitors.[28] Opp. 66–73. None of these cases suggest that an entity can be held liable for actions that are not taken in connection with its sale of its goods or services in the competitive marketplace.

---

(D.D.C. Sept. 19, 2024) (construing California's unfair competition law); *Copans Motors, Inc. v. Porsche Cars N. Am., Inc.*, 2014 WL 2612308, *6 (S.D. Fla. June 11, 2014); *Poznik v. Mass. Med. Prof'l Ins. Ass'n.*, 628 N.E.2d 1, 4 (Mass. 1994); *Schulte v. Conopco, Inc.*, 997 F.3d 823, 826 (8th Cir. 2021) (construing Missouri's consumer protection law); *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 861 (Mont. 2022); *Chamanaeva v. Recontrust Co.*, 2013 WL 655006, at *2 (D. Nev. Feb. 21, 2013); *White v. Thompson*, 691 S.E.2d 676 (N.C. 2010); *Foti Fuels, Inc. v. Kurrie Corp.*, 90 A.3d 885, 893 (Vt. 2013).

[27] *See, e.g.*, *Zetor N. Am., Inc. v. Rozeboom*, 2018 WL 3865411, at *14 (W.D. Ark. Aug. 14, 2018); *Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d 654, 671 (D.C. 2024); *R.J. Reynolds Tobacco Co. v. Eight Jud. Dist. Ct. in & for Cty. Of Clark*, 514 P.3d 425, 430–31 (Nev. 2022); *Beer v. Bennett*, 160 N.H. 166, 171 (2010); *Wright v. Craft*, 640 S.E. 2d 486, 500 (S.C. Ct. App. 2007).

[28] *See, e.g.*, *LLW Enter., LLC v. Ryan*, 2020 WL 2630859, at *6 (M.D. Fla. May 4, 2020); *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 61–62 (2002); *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007); *R.J. Reynolds Tobacco Co*, 514 P.3d at 430–31; *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 443 (Ct. Ap. 2007).

## DOW INC. AND DUPONT DE NEMOURS, INC.'S REPLY IN SUPPORT OF THEIR MTD

I.    **PLAINTIFFS FAIL TO ESTABLISH ANY BASIS TO PROCEED AGAINST DOW INC.**

Plaintiffs' response does not even mention Dow Inc., much less address its substantive arguments. That silence is "tantamount to an express abandonment" and warrants dismissal with prejudice. *Palmer v. Unified Gov't of Wyandotte Cnty./Kan. City*, 72 F. Supp. 2d 1237, 1250–51 (D. Kan. 1999); *see Series 17-03-615 v. Teva Pharms. USA, Inc.*, 785 F. Supp. 3d 904, 935 (D. Kan. 2025) (collecting cases). For good reason. Plaintiffs concede Dow Inc was formed "in 2018 to serve as a holding company for The Dow Chemical Company," AC ¶¶ 29–30, without pleading any conduct connecting Dow Inc. to the alleged conspiracy or facts justify collapsing corporate separateness. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004).[29]

II.    **PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION OVER DPNI**

Nor can Plaintiffs establish jurisdiction over DPNI. They rely exclusively on Section 12 of the Clayton Act and conspiracy-based jurisdiction. Neither applies.

A.    **Plaintiffs Cannot Establish Personal Jurisdiction Through Section 12**

Plaintiffs contend Section 12 provides a standalone grant of nationwide jurisdiction over domestic defendants. But that is contrary to the clear weight of authority. The majority approach is straightforward: Section 12 is a single sentence in which the first clause sets venue and the second authorizes nationwide service only "in such cases" where venue is proper under the first. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 425 n.15 (2d Cir. 2005) (noting "it would have been curious for Congress" to add a service clause after a semicolon if the clauses were meant to operate independently); *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351

---

[29] Dow Inc. contacted Plaintiffs on November 26, 2025, requesting they agree to voluntarily dismiss the holding company and avoid burdening the Court. Plaintiffs never responded.

(D.C. Cir. 2000) (same). A contrary reading would sever service from venue, rendering the venue clause "superfluous" and producing "very odd results." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 729 (7th Cir. 2013). The majority construction avoids those results by giving effect to both clauses, consistent with "generally accepted canons of statutory construction." Areeda & Hovenkamp, *Antitrust Law* ¶ 271; *United States v. Hopson*, 150 F.4th 1290, 1302 (10th Cir. 2025) ("Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort.")

Plaintiffs claim the Ninth, Third, and Fifth Circuits read Section 12 as they do. Opp. 75–76. But their cases say otherwise. The Third Circuit limited *In re Auto. Refinishing Paint Antitr. Litig.* to "alien corporations," drawing a "crucial" distinction from "*domestic* corporations" like DPNI. 358 F.3d 288, 296 n.10 (3d Cir. 2004); *see Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 339 (D. Del. 2007) (declining to extend *In re Auto.* to domestic corporations), *aff'd*, 602 F.3d 237 (3d Cir. 2010). Plaintiffs' Texas case confirmed the Fifth Circuit "has not taken a side in the circuit split," and went on to apply the integrated reading. *Rumble, Inc. v. World Fed'n of Advert.*, 2025 WL 2345076, at *6 (N.D. Tex. Aug. 13, 2025). That leaves only the Ninth Circuit adopting Plaintiffs' construction, and its outlier view has been criticized for rendering the venue clause "wholly redundant." *GTE*, 199 F.3d at 1351.

The Tenth Circuit has not resolved the split. *Budicak, Inc. v. Lansing Trade Grp., LLC*, 2020 WL 758801, at *3 (D. Kan. Feb 14, 2020). But in cases involving domestic defendants, courts have overwhelmingly adopted the integrated reading, which tracks the Tenth Circuit's directive to avoid interpretations that render statutory text "mere surplusage." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018). This Court should do the same. And under that reading, Plaintiffs must show DPNI is "an inhabitant," "found," or "transacts business" in this District before invoking nationwide service. 15 U.S.C. § 22. They have not even tried.

### B.    Plaintiffs Cannot Establish Personal Jurisdiction Through Conspiracy

Conspiracy jurisdiction requires "more than 'bare allegations' that a conspiracy existed." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007). Plaintiffs must plead "facts that would support a prima facie showing of a conspiracy" and show that DPNI "itself" has minimum contacts with Kansas. *Id.* That standard is not met by collective allegations against "Defendants" or passing references to conduct by others long before DPNI ever existed. *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (conspiracy jurisdiction requires a "factual showing of a conspiracy")*; see In re Credit*, 710 F. Supp. 3d at 941 (no conspiracy jurisdiction where complaint identified no "specific action" by moving defendants). Once challenged, Plaintiffs must establish jurisdiction with "competent proof of the supporting facts." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505, 1508 (10th Cir. 1995). Where a defendant submits a declaration disputing jurisdiction, Plaintiffs must respond with "specific averments, verified allegations, or other evidence" proving jurisdiction; otherwise, the declaration "carr[ies] the issue." *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011).

The unrebutted record here forecloses conspiracy jurisdiction. DPNI is a holding company formed in 2015, and it has never manufactured, produced, distributed, marketed, or sold any plastics. Ex. 5 ¶¶ 3–11. Plaintiffs argue conspiracy jurisdiction is proper because they alleged DPNI (1) participated in recycling labels and educational programs, (2) served on trade association boards, and (3) derived revenue from plastics through controlled subsidiaries. Opp. 77. None withstand scrutiny. The first two contentions rely on conduct predating DPNI's 2015 formation by decades. AC ¶¶ 90–99, 114–15 (alleging conduct in the 1980s and 1990s). That conduct cannot plausibly be attributed to DPNI. *See Wilkinson v. D&M Energy Assocs.*, 2022 WL 1321526, at *4 (D.N.M. May 3, 2022) (rejecting conspiracy jurisdiction absent allegations on defendant's "specific involvement"). And though they argue DPNI "controlled subsidiaries," the AC lacks

even threadbare alter-ego allegations. In the end, Plaintiffs offer rhetoric but no "competent proof," *Wenz*, 55 F.3d at 1508, or "specific averments," *Shrader*, 633 F.3d at 1248. Conspiracy jurisdiction is therefore unavailable.

---

### KANSAS'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FORD COUNTY'S IMPROPER CLASS ALLEGATIONS AND CLAIMS[30]

Ford County's response entirely misses the point. The core question for Kansas's motion to dismiss is whether Ford County has standing to represent Kansas's statewide public interests and recover for a "ubiquitous" injury. This issue is not manufactured or melodramatic; it is wholly of Ford County's making. Ford County does not hide its ambitions: It asks the Court to create a "50-state solution" for *all* citizens and government entities who purchased plastic products. The "ubiquitous" nature of Ford County's allegations materially changes this litigation, turning a limited class seeking relief for a common, private injury into public interest litigation over a statewide generalized grievance. So, the foundational question here is "which arm of the state may act in the public interest" and sue? *Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1189 (10th Cir. 1991). The Court should follow the Tenth Circuit's general rule, hold that Kansas's attorney general is the exclusive legal representative of Kansas's statewide public interest in this litigation, and dismiss Ford County and its allegations. *See Mountain States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980).

## I.    FORD COUNTY LACKS STANDING TO REPRESENT KANSAS'S QUASI-SOVEREIGN INTERESTS.

Under the Tenth Circuit's caselaw, Ford County has no standing to represent Kansas's statewide quasi-sovereign interests. *See Kaw Tribe*, 952 F.2d at 1192-93. At issue here is not

---

[30] As before, Kansas does not join the foregoing joint and individual replies. *See* MTD 76 n.60; Dkt. No. 244. And contrary to Plaintiffs' impassioned misrepresentations, *see* Opp. 56–62, Kansas did not join section III (or any) of Defendants' joint motion to dismiss, *see* MTD 76 n.60.

whether Kansas has *parens patriae* standing to bring the same or similar allegations against Defendants.[31] Likewise, Kansas's standing for intervention is not at issue. The only question is whether Ford County can represent Kansas's statewide quasi-sovereign interests.

That Ford County does not invoke *parens patriae* standing by name is immaterial; what matters are the *interests* expressed by Ford County. All Ford County must do is "'express a quasi-sovereign interest' that it seeks to protect." *See Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800 (10th Cir. 2011) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982)). And Ford County does so by invoking broad interests in protecting the health, safety, and welfare and the economic and physical well-being of all Kansans and Kansas governmental entities. *See id*. Few other interests can more squarely qualify as quasi-sovereign than "a national, 50-state solution" for "the most serious environmental cris[is] facing the world[.]" AC ¶¶ 4, 7. After all, abating statewide public nuisances is the "traditional" example of *parens patriae* interests. *See Snapp*, 458 U.S. at 603–05.

Because Ford County is "a body politic" and expresses a quasi-sovereign interest, its "assertion of representational standing is better understood as a *parens patriae* action." *Kaw Tribe*, 952 F.2d at 1192. It alleges "more than an injury to an identifiable group of individual residents" or entities; instead, it alleges an injury "'to a sufficiently substantial segment of [the state's] population.'" Opp. 79 (citing *Snapp*, 458 U.S. at 607). To an extent, its representational standing is contemplated by statute. Civil actions by the county counselor, like here, are statutorily intended to be "on behalf of the people" *but* only in a "court having jurisdiction *within* the county[.]" K.S.A. 19-702(a) (emphasis added); *see also* K.S.A. 19-247(f).

---

[31] Ford County incorrectly responds that Kansas has not alleged any injury relevant to this litigation. *See, e.g.*, Opp. 78–79. But Kansas has repeatedly asserted that Ford County harms Kansas by attempting to usurp the State's sovereign, quasi-sovereign, and proprietary interests. *See, e.g.*, MTD 78–79; Dkt. No. 81-1 at 9–13. And where there is any controversy between Kansas and Defendants, that dispute is not at issue in this litigation. *See* MTD 86 n.69.

Ford County is not modestly pursing "'purely private interests'" like those discussed in *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1470 (10th Cir. 1993). *Satsky* narrowly relates to private property damages under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.*, which "does not cover private property" and is not at issue here. *Satsky* at 1469-70. And to the extent Ford County raises *any* "private" claims, Kansas has standing to raise the precise claims Ford County makes under K.S.A. 60-908. *Cf. Satsky* at 1470; *see State v. Swift & Co.*, 127 Kan. 817, 820 (1929) ("There is no lack of power of the state to maintain an action to enjoin and abate a public nuisance wherever the same may be located in the state[,]" even if a county is "opposed to the suit."). At bottom, a county's "ubiquitous" injury based on citizens' and governments' indirect purchase of plastic containers for water, soda, milk, juice, condiments, foodstuff, cutlery, and pharmaceuticals, among *many* others, cannot reasonably be described as "purely private."

Ford County—a political subdivision—is no ordinary litigant; it is a legal fiction created and empowered only by the Kansas Legislature. *See Blume v. Meneley*, 283 F. Supp. 2d 1171, 1175 (D. Kan. 2003). No statute empowers Ford County to pursue generalized and ubiquitous interests on behalf of every single person and every single governmental entity in Kansas (and nationwide). The Kansas "legislature retains power over statewide matters[,]" and it vested statewide authority in the attorney general. *State ex rel. Kline v. Unified Bd. Comm'rs, Unified Gov't Wyandotte Cnty./Kansas City*, 277 Kan. 516, 520 (2004); K.S.A. 75-702(a).

## II.    FORD COUNTY LACKS STANDING TO REPRESENT KANSAS'S SOVEREIGN INTERESTS.

Ford County's assurance that Kansas's sovereign interests are not implicated falls flat because its complaint *does not* except Kansas. Ford County's explicit exclusion of California and its political subdivisions, AC ¶¶ 161-63, reveals Ford County intentionally included Kansas and every single Kansas political subdivision. But as a sovereign, only Kansas may represent Kansas's

quasi-sovereign interests. *See* Section I. Ford County's suit necessarily denies Kansas's sovereignty. *See Snapp*, 458 U.S. at 601 (identifying demand for sovereign recognition as a sovereign interest). This created the disparate interests between Ford County and the State that caused Kansas to intervene as a defendant.

Ford County's alleged injuries and claims *are* universally applicable and go to the core of a statewide public interest. Ford County's examples of plastic products confirm no person or entity escapes Ford County's pleading. *See* AC ¶¶ 34–42. Ford County offers no meaningful limiting principle, instead meekly asserting that it only attempts to represent those who are "similarly situated." But under Ford County's class allegations, that is *everyone*.

Kansas, through its attorney general, *exclusively* has the sovereign interest in protecting the statewide public interest. *See, e.g.*, *Mem'l Hosp. Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668 (1986) ("The attorney general is the superior of the county attorney, and whenever the state and the public interest are involved, the attorney general is a party to the action."). This well-established Kansas principle mirrors the Tenth Circuit's "general rule." *Costle*, 630 F.2d at 771.

Kansas has not disputed Ford County's ability to sue and recover for its own private claims, including under K.S.A. 60-908. But Ford County has gone beyond permissible legal action by going beyond its borders. Ford County's authority under K.S.A. 60-908 is *limited* to "nuisance[s] within [the] county" itself. This aligns with the "local legislation and administration" limits that the Legislature imposed on Ford County's statutory home rule authority, *see* K.S.A. 19-101a(a), as required by Kan. Const. art. 2, § 21. Indeed, this constitutional provision means K.S.A. 60-908 is inherently limited to local nuisances and local legal actions when pursued by political subdivisions. Despite the newfound modesty in its response, Ford County's complaint pursues statewide and nationwide relief for global injuries. Except in rare instances, not one person or political subdivision in Kansas has failed to purchase some plastic product in the last 35 years.

And assuming its allegations are true, not one political subdivision fails to experience the generalized public nuisance claim Ford County alleges.

Ford County misrepresents Kansas's position on political subdivision class actions.[32] Kansas does not challenge their appropriateness in *all* instances. For example, in *City of Moundridge v. Exxon Mobil Corp.*, eighteen municipalities who owned and operated natural gas distribution systems sued multiple natural gas defendants for antitrust allegations. 471 F. Supp. 2d 20, 27–30 (D.D.C. 2007). The *Moundridge* municipalities pleaded narrow injuries to their proprietary and business interests. But unlike in *Moundridge*, Ford County seeks relief for a generalized and "ubiquitous" harm based on statewide public interests. So, while "Rule 23 unambiguously authorizes *any* plaintiff" to maintain a class action so long as its prerequisites are met, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010), Ford County still cannot misuse it in a way that would violate the Rules Enabling Act or offend the Constitution, *id*. at 418 (Stevens, J., concurring).[33]

## III.    FORD COUNTY CANNOT USE ITS HOME RULE AUTHORITY TO TRAMPLE THE HOME RULE AUTHORITY OF OTHER KANSAS POLITICAL SUBDIVISIONS.

Ford County cannot displace constitutional and statutory restraints and commandeer every other Kansas political subdivision's authority. Ford County's home rule authority is limited to its

---

[32] *See also* Kansas's Reply in Support of its Motion for Limited Intervention, Dkt. No. 215 at 1 n.1, *In Re: Shale Oil Antitrust Litigation*, Case No. 1:24-md-03119-MLG-LF (D.N.M. June 3, 2025).

[33] The Tenth Circuit generally applies Justice Stevens's concurrence as the controlling opinion. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011). Further, *Shady Grove* did not hold that political subdivisions may use the class action device for any and all claims. *See China Agritech v. Resh*, 584 U.S. 732, 745 (2018) (discussing *Shady Grove* holding as only examining whether a diversity action under Rule 23 could proceed despite state law expressly prohibiting class treatment in suits for damages); *see also id*. at 749 (Sotomayor, J., concurring) (describing *Shady Grove* as indicating class claims and individual claims may be treated differently where there is "a special reason for doing so"). Even assuming *Shady Grove* is relevant to the instant question (and it is not), Ford County's worldwide ubiquitous claims are very likely a "special" exception. *See id.; see also Shady Grove*, 559 U.S. at 412.

"local affairs and government," which includes entering into contracts relating to the "concerns of the county," such as hiring additional counsel. K.S.A. 19-101. And only "in the judgment of" a county's board of commissioners when "it becomes necessary or expedient" can additional counsel be hired to assist in civil litigation. K.S.A. 19-723. Likewise, Ford County cannot "supersede[] or impair[]" any Kansas city's constitutional home rule authority, including by hiring counsel and suing on its behalf, without express consent. K.S.A. 19-101a(a)(4).

Ford County's localized home rule authority is *not* superior to any other Kansas political subdivision's home rule authority just because Ford County uses the class action device. While Ford County offers exhibits showing it properly hired *some* of its counsel of record, it fails to show that its board of commissioners determined it was "necessary or expedient" to hire *all* of its counsel. Regardless, Ford County does not (and cannot) demonstrate every Kansas county came to the same conclusion, as required by K.S.A. 19-723. And it does not (and cannot) demonstrate every Kansas city has consented to Ford County's action, as required by K.S.A. 19-101a(a)(4).

Ford County effectively and improperly uses this class action to impede on the authority of all other Kansas political subdivisions. *See Cnty. of Dorchester v. AT & T Corp.*, 407 F. Supp. 3d 561, 568–69 (D.S.C. 2019). *Dorchester* specifically examines whether a proposed class of political subdivisions impeded on absent political subdivision class members' analogous statutory authority. And like in *Dorchester*, Ford County misuses Rule 23 to impede on the authority of other political subdivisions and "no amount of discovery" would permit its proposed class to be certified. *Dorchester*, 407 F. Supp. 3d at 565–66. Despite its attempt to run away to Missouri and abject failure to distinguish *Dorchester*, Ford County cannot evade its constitutional and statutory constraints.

## IV.    **FORD COUNTY'S LACK OF STANDING IS RIPE *NOW*.**

Whether Ford County has standing must be promptly determined at the beginning of

litigation. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154-55 (10th Cir. 2005). And Ford County's lack of standing is most appropriately considered now, *not only* at class certification, because the fundamental issues in Ford County's pleadings require it. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (noting that district courts are permitted to dismiss class allegations "when it is apparent from the complaint that a class action cannot be maintained").

The motion-to-dismiss stage is precisely when the Court should assess the legal sufficiency of Ford County's complaint. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1299 (10th Cir. 2025); *see also Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (noting that Rule 12(b)(6), not Rule 12(f), is the proper vehicle for testing legal sufficiency). Because motions to dismiss and motions to strike are similar, district courts may convert one motion to the other if doing so would be substantively proper. *Cf. Kelley*, 750 F. Supp. 2d at 1146–47. If the Court deems it appropriate to analyze Kansas's motion to dismiss as a motion to strike in line with *Dorchester*, then it should do so because Kansas explicitly made this request and Ford County was on sufficient notice. *Cf. Grogan v. O'Neil*, 292 F. Supp. 2d 1282, 1292 (D. Kan. 2003).

## V.    <u>CONCLUSION</u>

This Court should end Ford County's attempt to usurp Kansas's role as the sole party to represent statewide public interests by dismissing Ford County and its allegations from this suit.

Dated: December 17, 2025

Thomas P. Schult, D. Kan. No. 70463
Jeffrey D. Morris, KS Bar No. 16123
Lauren Tallent, KS Bar No. 28490
Courtney A. Kroeger, KS Bar No. 29324
**BERKOWITZ OLIVER LLP**
2600 Grand Boulevard, Suite
1200 Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
tschult@berkowitzoliver.com
jmorris@berkowitzoliver.com
ltallent@berkowitzoliver.com
ckroeger@berkowitzoliver.com

Joshua D. Dick (admitted *pro hac vice* )
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 393-8200
jdick@gibsondunn.com

Theodore J. Boutrous Jr. (admitted *pro hac vice* )
Christopher D. Dusseault (admitted *pro hac vice* )
Perlette Michèle Jura (admitted *pro hac vice* )
Bradley J. Hamburger (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
tboutrous@gibsondunn.com
cdusseault@gibsondunn.com
pjura@gibsondunn.com
bhamburger@gibsondunn.com

***Attorneys for Defendant, Chevron U.S.A. Inc.***

Kara T. Stubbs (KS #15805)
**BAKER STERCHI COWDEN & RICE, LLC**
2400 Pershing Road, Suite 500
Kansas City, MO 64108

Respectfully submitted,

By: */s/ Richard N. Bien*

Richard N. Bien (D. Kan. #70101)
William F. Ford (D. Kan. #70021)
Emma C. Halling (KS #27924)
Grant A. Harse (KS #24666)
Brody Sabor (D. Kan. #79098)
**LATHROP GPM LLP**
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
Telephone: (816) 292-2000
Telecopier: (816) 292-2000
richard.bien@lathropgpm.com
bill.ford@lathropgpm.com
emma.halling@lathropgpm.com
grant.harse@lathropgpm.com
brody.sabor@lathropgpm.com

David J. Lender (Pro Hac Vice)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007
david.lender@weil.com

David R. Singh (Pro Hac Vice)
Morgan D. MacBride (Pro Hac Vice)
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Telecopier: (650) 802-3100
david.singh@weil.com
morgan.macbride@weil.com

***Attorneys for Defendant, ExxonMobil Corporation***

Robert J. Hoffman (KS #16453)
Robert M. Thompson (KS #14673)
Grace E. Martinez (KS #29120)
**BRYAN CAVE LEIGHTON PAISNER**
One Kansas City Place
1200 Main Street, Suite 3800
Kansas City, MO 64105-2122
Telephone:(816)-374-3229

46

Telephone: 816- 471-2121
Facsimile: 816- 472-0288
stubbs@bakersterchi.com

Nader R. Boulos, P.C. (admitted *pro hac vice*)
Daniel E. Laytin, P.C. (admitted *pro hac vice*)
Jonathan Adair (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: 312-862-2198
Facsimile: 312-862-2000
Nader.boulos@kirkland.com
Daniel.laytin@kirkland.com
Jonathan.adair@kirkland.com

*Attorneys for Defendant, DuPont de Nemours, Inc.*

David L. Anderson (pro hac vice)
Sheila A.G. Armbrust (pro hac vice)
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
dlanderson@sidley.com
sarmbrust@sidley.com

Zachary Parker (SBN 79250)
**SIDLEY AUSTIN LLP**
One S. Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
zparker@sidley.com

*Attorneys for Defendant, American Chemistry Council, Inc.*

Karrie J. Clinkinbeard (KS #19583)
Brian M. Nye (KS #24094)
**ARMSTRONG TEASDALE LLP**
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (Facsimile)
kclinkinbeard@atllp.com
bnye@atllp.com

Telecopier:(816)-374-3300
bob.hoffman@bclplaw.com
rmthompson@bclplaw.com
grace.martinez@bclplaw.com

Nader R. Boulos, P.C. (admitted *pro hac vice*)
Daniel E. Laytin, P.C. (admitted *pro hac vice*)
Jonathan Adair (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: 312-862-2198
Facsimile: 312-862-2000
Nader.boulos@kirkland.com
Daniel.laytin@kirkland.com
Jonathan.adair@kirkland.com

*Attorneys for the Dow Defendants*

Tristan L. Duncan (MO 39525; KS #70481)
Holly Pauling Smith (KS #19984)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Tel: 816-474-6550
Fax: 816-421-5547
Email: tlduncan@shb.com
Email: hpsmith@shb.com

Daniel B. Rogers (FL #0195634)
**SHOOK, HARDY & BACON L.L.P.**
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-5171
Fax: 305-358-7470
Email: drogers@shb.com

*Attorneys for Defendant, Chevron Phillips Chemical Company LP*

David C. Kiernan (admitted pro hac vice)
Craig E. Stewart (admitted pro hac vice)
Emily F. Knox (admitted pro hac vice)
**JONES DAY**
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Telephone: (415) 875-5700
cstewart@jonesday.com

Gregory J. DuBoff (admitted pro hac vice)
**MCGUIREWOODS LLP**
800 E. Canal Street
Richmond, Virginia 23219
(804) 775-1000
gduboff@mcguirewoods.com

Michael E. Scoville (admitted pro hac vice)
**MCGUIREWOODS LLP**
888 16th Street NW
Washington, D.C. 20006
(202) 857-1700
mscoville@mcguirewoods.com

*Attorneys for Defendant, Eastman Chemical Company*

**KRIS W. KOBACH**
**Attorney General of Kansas**

Melanie S. Jack, Kan. Bar No. 13213
  *First Assistant Attorney General*
Nicholas C. Smith, Kan. Bar No. 29742
  *Assistant Attorney General*
Adam T. Steinhilber, Kan. Bar No. 30468
  *Assistant Solicitor General*
**OFFICE OF ATTORNEY GENERAL**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-3751
Fax:    (785) 291-3699
Email: Melanie.Jack@ag.ks.gov
        Nicholas.Smith@ag.ks.gov
        Adam.Steinhilber@ag.ks.gov

*Attorneys for State of Kansas*

dkiernan@jonesday.com
egoldbergknox@jonesday.com

Andrew M. Ryngaert (admitted pro hac vice)
J. Bruce McDonald (admitted pro hac vice)
Nicole M. Perry (admitted pro hac vice)
**JONES DAY**
717 Texas, Suite #3300
Houston, TX 77002
Telephone: (832) 239-3855
aryngaert@jonesday.com
bmcdonald@jonesday.com
nmperry@jonesday.com

G. Edgar James (KS #22407)
James M. Humphrey, IV (KS #29652)
**JAMES SOBBA, LLC**
4435 Main Street, Suite 910
Kansas City, MO 64111
Telephone: (816) 623-0544
ejames@jamessobba.com
jhumphrey@jamessobba.com

*Attorneys for Equistar Chemicals, LP*

Forrest James Robinson, Jr. (KS # 11589)
**HITE, FANNING & HONEYMAN, LLP**
100 N. Broadway, Suite 950
Wichita, KS 67202-2209
Tel: (316) 265-7741
Fax: (316) 267-7803
robinson@hitefanning.com

Richard C. Godfrey (admitted *pro hac vice*)
R. Allan Pixton (admitted *pro hac* vice)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Dr., Ste. 2700
Chicago, IL 60606
P: 312 705 7400
F: 312 705 7401
richardgodfrey@quinnemanuel.com
allanpixton@quinnemanuel.com

*Attorneys for Defendant, Celanese Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing was electronically filed with the Court this 17 day of December, 2025, and

served via the Court's ECF system upon all counsel of record.


*/s/ Richard N. Bien*
An Attorney for Defendant ExxonMobil
Corporation