# EXHIBIT A

Filed
D.C. Superior Court
01/22/2019 15:28PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **THE PRAXIS PROJECT, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE COCA-COLA COMPANY, et al.,**<br><br>**Defendants.** | **Case No.  2017 CA 004801 B**<br>**Judge Elizabeth C. Wingo**<br>**Civil Calendar 14** |

## ORDER

Before the Court is the Motion to Dismiss Pursuant to D.C. Superior Court Rule 12(B),
filed by Defendant American Beverage Association ("Defendant ABA") on October 23, 2017,
the Memorandum of Law Opposing Defendant American Beverage Association's Motion to
Dismiss Pursuant to D.C. Superior Court Rule 12(B) ("Opposition"), filed by Plaintiff The Praxis
Project ("Plaintiff Praxis"), Plaintiff William H. Lamar, IV ("Plaintiff Lamar"), and Plaintiff
Delman L. Coates ("Plaintiff Coates") (hereinafter known together as "Plaintiffs") on January
30, 2017, and the Reply Memorandum in Support of Defendant ABA's Motion to Dismiss
Pursuant to D.C. Superior Court Rule 12(B) ("Reply"), filed by Defendant ABA on February 28,
2018.

For the reasons set forth below, the Court will grant the Motion to Dismiss.[1]

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Lamar and Coates are pastors who promote social justice, community outreach
and health. *See* Compl. ¶¶ 19, 21.  Plaintiff Praxis is a non-profit organization with a mission to
build healthier communities, including through advocacy concerning sugar-sweetened beverages.

---

[1] Defendant ABA also filed, on the same date, a Notice of Special Motion to Dismiss Pursuant to the District of
Columbia Anti-Slapp Act, D.C. Code 16-5501, *et seq.* ("Special Motion to Dismiss"). Because the Court's ruling on
the current Motion renders the Special Motion to Dismiss moot, that motion will also be denied as moot.

*Id.* at ¶ 23.  Defendant Coca-Cola is a manufacturer of nonalcoholic beverage concentrates and syrups, including sugar-sweetened beverages, *id.* at ¶ 26, and Defendant ABA is a trade association in the business of promoting beverages (hereinafter, known together as "Defendants"). *See id.* at ¶ 27.

Between June and July of 2017, Plaintiffs purchased several sugar-sweetened beverages sold by Defendant Coca-Cola, in order to "evaluate and test their purported qualities and characteristics, including but not limited to their sugar content and potential effects on blood sugar levels and Defendants' representations that a calorie of Coke is equivalent nutritionally to a calorie of any other food."  *Id.* at ¶¶ 20; *see also id.* at ¶¶ 22, 25.  Plaintiffs initiated this action on July 13, 2017, by filing their Complaint against Defendants alleging that Defendants' branding and advertising misled consumers about sugar-sweetened beverages violated the District of Columbia Consumer Protection Procedures Act ("DCCPPA" or "CPPA"), codified as D.C. Code § 28-3901 *et seq. Id.* at ¶¶ 18; *see also id.* at ¶¶ 168-186.[2]

On October 23, 2017, Defendants each filed a Motion to Dismiss, seeking to have all claims against them dismissed pursuant to Super. Ct. Civ. R. 12(b)(1) or 12(b)(6).  Each

---

[2] Plaintiff's Complaint specifically outlines Defendants' alleged DCCPPA violations, and states as follows:

"176.    The facts as alleged herein demonstrate that Defendants' acts, misrepresentations, omissions, innuendos, and practices, including republication of deceptive representations, constitutes unlawful trade practices in violation of the following provisions of D.C. Code § 28-3904:

      a.   Section 28-3904(a), which prohibits "represent[ations] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have";

      b.   Section 28-3904(d), which prohibits "represent[ations] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another";

      c.   Section 28-3904(e), which prohibits "mispresent[ations] as to a material fact which has a tendency to mislead";

      d.   Section 28-3904(f), (f-1), which prohibits "fail[ing] to state a material fact if such failure tends to mislead" and the "use of innuendo or ambiguity as to a material fact, which has a tendency to mislead"; and

      e.   Section 28-3904(h), which prohibits "advertis[ing] or offer[ing] goods or services… without the intent to sell them as advertised or offered."

Pl's Compl., ¶ 176.

Defendant also filed a Special Motion to Dismiss pursuant to the District of Columbia Anti-SLAPP Act, codified as D.C. Code § 16-5501 *et seq*. On January 30, 2018, Plaintiffs filed oppositions to all four motions. On February 28, 2018, Defendants' replied to Plaintiffs' oppositions.

The parties appeared before this Court for hearings on their motions on March 15, 2018, and September 17, 2018. Thereafter, on October 5, 2018, Plaintiffs filed their Supplemental Memorandum of Law and related exhibits, which specifically addressed Plaintiffs' standing to sue. On October 15, 2018, Defendant Coca-Cola filed its Response to Plaintiffs' Supplement.

## II.    **LEGAL STANDARD**

A motion to dismiss under Rule 12 (b)(6) tests the legal sufficiency of a complaint. *Luna v. A.E. Eng'g Servs., LLC*, 938 A.2d 744, 748 (D.C. 2007). A complaint must satisfy the pleadings standards set forth in Super. Ct. Civ. R. 8 (a), which states that a complaint must contain a short and plain statement of Plaintiff's claim that "puts the defendant on notice of the claim against him." *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480, 497 (D.C. 2005) (quoting *Scott v. District of Columbia*, 493 A.2d 319, 323 (D.C. 1985)); *Leonard v. District of Columbia*, 794 A.2d 618, 630 (D.C. 2002) (noting that "even under our liberal rules of pleading," a party must adequately allege the elements of a cause of action to avoid dismissal).

In determining whether a complaint sufficiently sets forth a claim, the court must construe the complaint in the light most favorable to the plaintiff and must take the facts alleged in the complaint as true. *Casco Marina Dev., L.L.C., v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 81 (D.C. 2003). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

3

suffice," and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" also are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Rather, "[t]o survive a motion to dismiss [under Rule 12 (b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (quoting *Ashcroft*, 556 U.S. at 678); *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Likewise, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Potomac Dev. Corp.*, 28 A.3d at 544.  To survive a motion to dismiss under Rule 12 (b)(6), the District of Columbia Court of Appeals has made clear that a complaint must provide more than labels and conclusions, and that "a formulaic recitation of the elements of a cause of action will not do." *Grayson v. AT&T Corp.*, 980 A.2d 1137, 1144 (D.C. 2009) ("a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

III.    <u>ANALYSIS</u>

Plaintiffs allege that Defendants have made false, deceptive and misleading representations about the character of sugar-sweetened beverages in violation of the DCCPPA. *See generally* Pl.'s Compl. Specifically, Plaintiffs allege Defendant ABA has directed "numerous deceptive representations" (about the characteristics of sugar-sweetened beverages and high fructose corn syrup) to the public, which Defendant ABA knew or should have known would mislead consumers. *See id.* at ¶¶ 102-107. In the Motion to Dismiss, Defendant ABA argues that: (1) the ABA is not the proper defendant under the CPPA, because the ABA is not a merchant nor are they otherwise involved in the sale of Coca-Cola products; (2) the ABA's speech is not actionable under the CPPA, because it is non-commercial speech supported by the Federal Drug Administration, and the Center for Disease Control; and (3) Plaintiffs lack standing to bring this action against Defendants. ABA Memo at 2-4; *see generally* ABA Reply.[3]

The DCCPPA is a "comprehensive statute designed to provide procedures and remedies for a broad range of practices which injure consumers." *Sundberg v. TTR Realty, LLC*, 109 A.3d

---

[3] Although not Defendant ABA's primary contention, because the ABA explicitly asserted a lack of standing argument by adopting Defendant Coca-Cola's argument, before addressing the ABA's other arguments, the Court must first address Defendants' contention that Plaintiffs lack standing to bring the claims asserted under the DCCPPA in the District of Columbia Superior Court because they have not suffered an "injury-in-fact" as required by Article III of the United States Constitution because it is a threshold jurisdictional issue. *See Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013) (noting that plaintiffs' standing to sue is discussed first, "since that is a threshold, jurisdictional concept") (internal citation omitted). Because the argument was simply based on Defendant ABA's adoption of the arguments made Defendant Coca-Cola's brief, however, the Court will address the issue only briefly here. In short, based on Plaintiffs' Supplemental Memorandum of Law and the attachments filed therewith, the Court is persuaded that at least Plaintiff Lamar has standing, given his allegation that he would not have purchased Defendant Coca-Cola's products, specifically Sprite, had Defendant disclosed the link between the sugar-sweetened products and obesity, type 2 diabetes, and cardiovascular disease. *See* Pl.'s Supp., Ex. F, ¶¶ 9-11; *see also Zuckman v. Monster Beverage Corp.*, Case No. 2012 CA 008653, 2016 WL 4272477 (D.C. Super. Aug. 12, 2016) (holding that a plaintiff suffered an injury-in-fact after purchasing and consuming defendants' energy drinks upon defendants' alleged misrepresentations and omissions). Moreover, because Plaintiff Lamar has standing, the Court need not consider the standing of the other plaintiffs. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("Because we find California had standing, we do not consider the standing of the other plaintiffs."); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996). Given this conclusion, the Court will proceed to address the Defendant ABA's other arguments in its Motion to Dismiss pursuant to Super. Ct. Civ. R. 12(b)(6). The Court notes, however, that because the allegations the Court relies upon for standing are not yet incorporated into the actual Complaint, should Plaintiffs' Complaint survive the additional bases for dismissal asserted by Defendant Coca-Cola in its still pending motions, Plaintiff Lamar will be required to amend the Complaint to reflect the allegations asserted in the Declaration attached to Plaintiff's Supplement as Exhibit F.

1123, 1129 (D.C. 2015) (interal citations omitted). The DCCPPA does not cover all consumer transactions, however, but instead only covers "trade practices arising out of consumer-merchant relationships." *Id.* The DCCPPA defines a "merchant," in relevant part, as a person who, in the ordinary course of business, sells or supplies consumer goods or services." *Id.*; *see also* D.C. Code § 28-3901(a)(3).

In support of its assertion that it is not a merchant, and thus, is not a proper DCCPPA defendant, Defendant ABA cites to *Howard v. Riggs Nat'l Bank,* 432 A.2d 701 (D.C. 1981). In that case, the court held that an individual or entity who recommends another's goods or services, but who is not otherwise connected with the supply side of a consumer transaction, is not a merchant who may be pursued under the DCCPPA. *See id.* at 708-10. Plaintiffs argue in opposition that *Howard*, and others, stand for the proposition that "interested third parties involved directly or indirectly win the supply side of a consumer transaction are merchants, so long as they are not merely disinterested conveyors." Opp. at 22. This Court concludes that the language within the decision that "disinterested third parties are outside the coverage of the CPPA," *Howard*, 432 A.2d at 710, cannot be stretched to support the proposition that Plaintiffs assert; the Court of Appeals in *Howard* court simply does not in any way state that any interested parties may be sued as a "merchant" under the DCCPPA. Instead, *Howard* makes clear that the CPPA was "designed to police trade practices arising only out of consumer-merchant relationships." 432 A.2d at 709. Indeed, the Court's primary conclusion limited, rather than expanded, the scope of the DCCPPA, noting that although the DCCPPA was intended to be a far-reaching law, the law does not "impose liability as a guarantor upon any private individual (or his employer) who recommends the goods or services of a particular merchant to another." *Id.* at 710. Thus, the Court concludes that *Howard* does support the Defendant ABA's position

6

that none of the allegations in this complaint establish a basis for holding the ABA liable as a merchant under the DCCPPA.[4]

Moreover, as noted by the ABA, a very similar issue was raised in another case previously decided in this court, *Dahlgren v. Audiovox Communications Corp.*, 2002 CA 007884 (July 8, 2010). *See* Motion, at 12-13. In that case, in a well-reasoned and thorough opinion, the Honorable Franklin Burgess granted the motion to dismiss of the Cellular Telecommunication & Internet Association ("CTIA"), concluding that the trade association was not a merchant under the Act. The Court in *Dahlren* concluded the CPPA could not be read so broadly as to include, as connected with the supply-side of a consumer transaction, a trade association even though it was alleged to have made statements in the media that materially impacted the point of sale. *Dahlgren*, 2002 CA 007884 B, July 8, 2010 Memorandum at 39. In so finding, after analyzing both relevant caselaw and the statute itself, the Court concluded that because the defendant had

---

[4] The Court also notes that other cases cited in Plaintiffs' Opposition are distinguishable from the case at bar, and in fact support the conclusion that Defendant ABA is not a merchant. In *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1004-05 (D.C. 1989), the court found that the auctioneer was clearly "connected with the 'supply' side" of a transaction, and thus was a merchant within the context of the DCCPPA because he was the final distributor who sold to a purchaser not engaged in regular business of purchasing the types of goods or services sold. Defendant ABA, however, is not alleged to be engaged in the distribution of the products at issue here, that is, sugar-sweetened beverages. Likewise, in *Dist. of Columbia v. Student Aid Center, Inc.*, Case No. 2016 CA 003768 B (D.C. Super. Aug. 17, 2016), the court found that Defendant acted directly as a merchant supplying consumer services by offering for sale or selling student loan debt relief services. In the instant case, however, the ABA has not sold, offered to sell, or distributed any sugar-sweetened beverages. In *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 174-75 (D.D.C. 2003), the court addressed whether pharmaceutical manufacturers who sold to wholesalers could be held liable to consumers under the DCCPPA as "merchants" in a consumer-merchant relationship. Although the Court in that case did rely on the manufacturer's advertisements (e.g. brochures, videotapes) directed at consumers to determine that there were significant allegations to suggest a consumer-merchant relationship between the manufacturer and the consumer, there was in fact no question that the manufacturer was a merchant; the question was whether it engaged in merchant to consumer transactions, not just merchant to merchant transactions. 297 F. Supp. 2d at 74-75. In *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 104-06 (D.D.C. 2004), the court found that a defendant who recommended services, agreed to obtain supplies and contracts with vendors through his own company, and agreed to oversee and monitor the services, was not exempt from potential CPPA liability as a "merchant." Similarly, in *Hall v. South River Restoration, Inc.*, 270 F. Supp. 3d 117, 123-24 (D.D.C. 2017), an insurance company that *required* plaintiff to use a third-party service provider, and oversaw the services, were found to be merchant for "insert[ing] itself into the 'supply side'" of the consumer transaction. Unlike the defendants in these cases, Plaintiffs here do not allege that the ABA oversees sugar-sweetened beverage transactions or supplies sugar-sweetened beverages directly to consumers. Therefore, again as noted by Defendant ABA in its Reply, Plaintiffs cases all involve parties who have either sold a good or service, or have been directly involved in the supply chain for a good or service. *Reply*, at 4.

not manufactured or sold the product at issue, or in any way controlled any sale of the products, to find that the DCCPPA applied to such a defendant would be "unduly stretching the reach of the CPPA." *Id.* at 42. Plaintiffs attempt to distinguish and/or undermine the persuasiveness of that case with two separate arguments, that is, that there is a significant difference in the number of statements at issue in that case relative to the number challenged here, and the court in *Dahlgren* failed to address the body of law finding that trade associations can and do engage in commercial speech. *See* Opposition at 24-25. For the reasons stated in Defendant ABA's Reply, *see* Reply at 3-4 (correctly asserting that the decision in *Dahlgren* in no way rested on the number of statements at issue, but rather on the fact that CTIA was not a merchant, and further that "Plaintiffs identify nothing in the CPPA suggesting that a defendant's merchant status depends on the commercial or noncommercial nature of the speech at issue"), this Court finds those attempts to distinguish the case wholly unpersuasive. In this case, similar to CTIA in *Dahlgren*, Defendant ABA is not alleged to have manufactured or sold the products at issue here, or to have controlled the sale of the products in any way, or indeed to have been "connected to the supply side" in a way that has ever been recognized under the statute. Although not controlling, this Court finds the analysis in *Dahlgren* both persuasive and directly applicable to the facts here.

Finally, a more recent case, *Sundberg*, lends further support to this conclusion. In that case, a third-party non-merchant was sued for allegedly conspiring with a realty company and realtor to violate the DCCPPA. The court declined to find that the non-merchant could be held liable under the DCCPPA. *See id.* at 1129-30. Specifically, the court stated that,

> if we were to allow a non-merchant to be held liable under the CPPA either as an aider and abettor or as a co-conspirator, we would be extending the liability specifically authorized by the CPPA to cover the actions of a wide variety of people or entities… who are not within the category of people or entities covered

by the Act. Although the CPPA 'was intended to be a far-reaching consumer protection law,' there is no provision in the Act that either explicitly or implicitly authorizes aider and abettor liability or civil conspiracy liability to be imposed upon a non-merchant.

*Id.* at 1130 (internal citations omitted). Similarly, here, the Court concludes that Plaintiffs are asking this court to extend the liability of the DCCPPA to an entity that is "not within the category or people or entities covered by the Act." *Id.* In this case, Plaintiffs have not alleged that Defendant ABA has manufactured or sold sugar-sweetened beverages, or is "connected with the supply side" in a way that renders it a merchant under the statute. Therefore, because Plaintiffs have not sufficiently alleged that Defendant ABA is a merchant under the statute, the Motion will be granted.[5]

## IV.   CONCLUSION

Upon consideration the Motion, and responsive pleadings, the Court finds that Plaintiffs have not alleged facts that would establish that Defendant ABA is a merchant as required by the DCCPPA. Thus, the Motion to Dismiss will be granted, and Defendant ABA will be dismissed

---

[5]   Defendant ABA asserted a second, related, argument that it argues would serve as an independent basis for dismissal, based on D.C. Code § 28-3905(k)(5). Mot. at 13-14; *see also* D.C. Code § 28-3905(k)(5); *id.* § 28-3901(a)(3). In *Dahlgren*, the Court treated a similar argument as further evidence supporting its conclusions regarding the impropriety of extending the reach of the DCCPPA to the trade association there. *See Dahlgren*, July 8, 2010 Memorandum at 42-45. This Court is inclined to the do the same, and similarly concludes that the additional section, as well as the Maryland cases cited by the *Dahlgren* court, do provide further support for the conclusion that the DCCPPA does not apply to Defendant ABA based on the allegations in this case; the Court does not view the section as an independent basis for dismissal, however, as it amounts to essentially the same argument, that is, that the ABA does not engage in the sale of goods and thus does not qualify as a merchant. Specifically, D.C. Code § 28-3905(k)(5) makes clear that non-profit organizations may be sued under the DCCPPA as merchants, provided the action is not "based on membership in such organization, membership services, training or credentialing activities, sale of publications of the nonprofit organization, medical or legal malpractice, or any other transaction, interaction, or dispute not arising from the purchase or sale of consumer goods or services in the ordinary course of business." *See* D.C. Code § 28-3905(k)(5); *see also id.* at § 28-3901(a)(3). The 2007 Nonprofit Amendment Committee Report states that the bill adds non-profit organizations to the definition of "merchant," *see* Mot., Ex. L at 5, and does not explicitly amend the requirement that the merchant must sell consumer goods or services in the ordinary course of business to be held liable. Furthermore, as Defendant ABA notes in its Motion, the Chief of the Consumer and Trade Protection Section of the Office of the Attorney General testified that the bill would permit suits against non-profit organizations to "provide consumers who *purchase from nonprofit* businesses with the same legal protections as consumers who purchase from for-profit businesses." *See* Mot. at 14; *see also* Mot., Ex. L at 26 (emphasis added). When construed together, it is clear from the text of the statute and the legislative history that the legislature intended to hold only those non-profit organizations engaged in selling goods or services, i.e. merchants, accountable for alleged DCCPPA violations.

from the Complaint.[6] Consequently, as noted above, *supra,* note 1, Defendant ABA's Special Motion to Dismiss Pursuant to the District of Columbia Anti-Slapp Act, D.C. Code § 16-5501, *et. seq.,* will be denied as moot.

Accordingly, it is this 22nd day of January, 2019, hereby

**ORDERED** the Motion to Dismiss Pursuant to D.C. Superior Court Rule 12(B), filed by Defendant American Beverage Association on October 23, 2017, is **GRANTED**; and it is further

**ORDERED** that the Notice of Special Motion to Dismiss Pursuant to the District of Columbia Anti-SLAPP Act, D.C. Code § 16-5501, *et seq.*, filed by Defendant American Beverage Association is **DENIED AS MOOT**; and it is further

**ORDERED** that Defendant American Beverage Association is **DISMISSED** as a defendant in the instant matter; and it is further

**ORDERED** that the remaining parties shall appear for a Motion Hearing on February 5, 2019, at 10:00 a.m., in Courtroom 518.

**SO ORDERED.**

_____
Judge Elizabeth C. Wingo
District of Columbia Superior Court

Copies via CaseFileXpress to:
Maia C. Kats, Esq.
Matthew Simon, Esq.
Mark Goettlieb, Esq.
Andrew Rainer, Esq.
*Counsel for Plaintiffs*

Michael E. Bern, Esq.
Richard P. Bress, Esq.
Melissa D. Chastang, Esq.

---

[6] Because the Motion to Dismiss will be granted on this basis, the Court need not address the ABA's argument regarding non-commercial speech.

10

Kevin A. Chambers, Esq.
George C. Chipev, Esq.
Jane M. Metcalf, Esq.
Anthony T. Pierce, Esq.
Kathryn H. Ruemmler, Esq.
Travis J. Tu, Esq.
Stanley E. Woodward Jr., Esq.
Steven A. Zalesin, Esq.
*Counsel for Defendants*